C21-8209 WHO

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
(626) 229-7220

<div style="border:1px solid">

**FILED**

Oct 21 2021

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

</div>

**In Re:** EVANDER FRANK KANE                    **BAP No.:** NC-21-1167

**Bk. Ct. No.:** 21-50028                        **ADV. NO.:**

## NOTICE OF TRANSFER OF APPEAL TO DISTRICT COURT

A party to the appeal has timely filed an objection to the disposition of this matter by the Bankruptcy Appellate Panel. See 28 USC Section 158. Consequently, this appeal is herewith transferred to District Court, San Jose.

Please acknowledge receipt of the case file listed above by signing and returning a copy of this transmittal form.

Susan M Spraul, BAP Clerk

By: Cecil Lizandro Silva, Deputy Clerk
Date: August 23, 2021

Please acknowledge receipt of
the case file listed above.
Dated:___10/21/2021_____

Signed:__Anna Sprinkles_____
          District Court Deputy

Assigned District Court No.
___C21-8209WHO_____

cc: Bankruptcy Court
    All Parties



Office of the Clerk
United States Bankruptcy Court, Northern District of California

Edward J. Emmons, Clerk of Court
450 Golden Gate Avenue
Mail Box 36099
San Francisco, CA 94102
Phone: (415) 268-2300

**August 20, 2021**

BAP Appeal Case Number(s):

NC-21-1167

Bankruptcy Appellate Panel
of the Ninth Circuit
125 S. Grand Avenue
Pasadena, CA 91105

**Re: Transmission of Document(s) on Appeal:**

**Evander Frank Kane/ Bankruptcy Case  #1-50028/ Judge Stephen L. Johnson**

Dear Clerk:

We are transferring the following document(s) to your Court for the above referenced appeal(s):

Appellee Zion's Bancorporation, N.A.'S Statement of Election To Proceed In The United States Disstrict Court On Appeal

If you have any questions, please contact me at **408-278-7569**          .

Edward Emmons, Clerk
United States Bankruptcy Court

By: _/s/ Angela Wong_____

Angela Wong    Deputy Clerk

1  Michael Gerard Fletcher (State Bar No. 070849)
     mfletcher@frandzel.com
2  Gerrick M. Warrington (State Bar No. 294890)
     gwarrington@frandzel.com
3  FRANDZEL ROBINS BLOOM & CSATO, L.C.
   1000 Wilshire Boulevard, Nineteenth Floor
4  Los Angeles, California 90017-2427
   Telephone: (323) 852-1000
5  Facsimile: (323) 651-2577

6  Attorneys for Appellee ZIONS
   BANCORPORATION, N.A., dba
7  California Bank & Trust

8

9              **UNITED STATES BANKRUPTCY COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11                   **SAN JOSE DIVISION**

12

13 In re                                 Case No. 21-50028-SLJ

   EVANDER FRANK KANE,                    Chapter 7
14
              Debtor.                     Ninth Circuit BAP No. NC-21-1167
15

16 EVANDER FRANK KANE,                    **APPELLEE ZIONS BANCORPORATION,**
                                          **N.A.'S STATEMENT OF ELECTION TO**
17            Appellant,                  **PROCEED IN THE UNITED STATES**
                                          **DISTRICT COURT ON APPEAL**
18 v.
                                          Notice of Appeal Filed: 7/23/2021
19 ZIONS BANCORPORATION, N.A., dba
   California Bank & Trust, et al.
20
              Appellees.
21

22

23

24

25

26

27

28

*Sidebar (rotated text):* FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

4328217v1 | 031205-0132                                                    1

**TO ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that Evander Frank Kane ("Kane") filed a Notice of Appeal and Statement of Election (Dkt. 182) on July 23, 2021, appealing the Bankruptcy Court's *Order On Zions Bancorporation's Objection To Debtor's Homestead Exemption* (Dkt. 178), and electing to proceed before the Bankruptcy Appellate Panel for the Ninth Circuit.

**PLEASE TAKE FURTHER NOTICE** that (a) this appeal is pending in a district served by a Bankruptcy Appellate Panel, and (b) no other appellee has filed a statement of election to proceed in the United States District Court.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 8005 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(c)(1), Appellee Zions Bancorporation, N.A., a creditor in Kane's underlying chapter 7 bankruptcy case, hereby elects to have this appeal heard by the United States District Court, rather than by the Bankruptcy Appellate Panel.

DATED:  August 19, 2021

FRANDZEL ROBINS BLOOM & CSATO, L.C.
MICHAEL GERARD FLETCHER
GERRICK M. WARRINGTON


By:  /s/ Michael Gerard Fletcher
MICHAEL GERARD FLETCHER
Attorneys for Appellee ZIONS
BANCORPORATION, N.A., dba
California Bank & Trust

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**CERTIFICATE OF SERVICE**

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On August 19, 2021, I served true copy(ies) of the:

**APPELLEE ZIONS BANCORPORATION, N.A.'S STATEMENT OF ELECTION TO PROCEED IN THE UNITED STATES DISTRICT COURT ON APPEAL**

to the party(ies) on the attached service list.

**SEE ATTACHED SERVICE LIST**

☒     **BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on August 19, 2021, at Los Angeles, California.


                                        /s/ David T. Moore
                                        _____
                                        David T. Moore
                                        dmoore@frandzel.com

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

## CERTIFICATE OF SERVICE

I, the undersigned, declare and certify as follows:

I am over the age of eighteen years, not a party to the within action and employed in the County of Los Angeles, State of California. I am employed in the office of Frandzel Robins Bloom & Csato, L.C., members of the Bar of the above-entitled Court, and I made the service referred to below at their direction. My business address is 1000 Wilshire Boulevard, Nineteenth Floor, Los Angeles, CA 90017-2427.

On August 19, 2021, I served true copy(ies) of the:

**APPELLEE ZIONS BANCORPORATION, N.A.'S STATEMENT OF ELECTION TO PROCEED IN THE UNITED STATES DISTRICT COURT ON APPEAL**

to the party(ies) on the attached service list.

### SEE ATTACHED SERVICE LIST

☒ **BY MAIL:** I placed the envelope for collection and mailing at Los Angeles, California. The envelope was mailed with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed on August 19, 2021, at Los Angeles, California.

/s/ Michelle Campbell

Michelle Campbell
mcampbell@frandzel.com

FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 WILSHIRE BOULEVARD, NINETEENTH FLOOR
LOS ANGELES, CALIFORNIA 90017-2427
(323) 852-1000

**SERVICE LIST**

**(Kane v. Zions Bancorporation, N.A.) In re Evander Frank Kane**

| | |
|---|---|
| Stephen D. Finestone<br>Ryan A. Witthans<br>Finestone Hayes LLP<br>456 Montgomery St. 20th Fl.<br>San Francisco, CA 94104 | Attorney for Debtor / Appellant |
| Evander Frank Kane<br>2301 Richland Ave.<br>San Jose, CA 95125 | Debtor / Appellant |
| Gregg Steven Kleiner<br>Rincon Law LLP<br>268 Bush Street, Suite 3335<br>San Francisco, CA 94104 | Attorney for Chapter 7 Trustee |
| Marta Elena Villacorta<br>United States Department of Justice<br>Office of the U.S. Trustee<br>450 Golden Gate Avenue<br>Suite 05-0153<br>San Francisco, CA 94102 | Office of the U.S. Trustee |
| David B. Rao<br>Wendy W. Smith<br>Binder & Malter, LLP<br>2775 Park Avenue<br>Santa Clara, CA 95050<br>Tel: 408-295-1700 | Attorneys for South River Capital, LLC |
| Stephen G. Opperwall<br>Law Offices of Stephen G. Opperwall<br>Suite 100<br>4900 Hopyard Road<br>Pleasanton, CA 94588<br>Tel: 925-417-0300 | Attorneys for Professional Bank |
| Peter C. Califano<br>COOPER, WHITE & COOPER LLP<br>17th Floor<br>201 California Street<br>San Francisco, CA 94111<br>Tel: 415-433-1900 | Attorneys for Centennial Bank |

Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:    (415) 616-0466
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Debtor,
Evander Frank Kane

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re | Case No. 21-50028-SLJ |
| | Chapter 7 |
| EVANDER FRANK KANE, | |
| | **NOTICE OF APPEAL AND** |
| Debtor. | **STATEMENT OF ELECTION**[1] |

Evander Frank Kane ("Kane," the "Debtor," or the "Appellant"), the debtor in the above-captioned Chapter 7 bankruptcy case, hereby appeals from the Bankruptcy Court's decision finding that Kane's exemption in real property located at 2301 Richland Avenue, San Jose, CA 95125 (the "San Jose Property"), is limited to $170,350.

## I.  APPEALED DECISION

The appealed decision is as follows: *Order on Zions Bancorporation's Objection to Debtor's Homestead Exemption*, attached hereto as **Exhibit A** and entered on the docket at ECF 178 on July 9, 2021.

## II. PARTIES TO THE APPEAL

The parties to the appeal are as follows:

//

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned proceeding.

NOTICE OF APPEAL AND STATEMENT OF ELECTION                                    1

Evander Frank Kane (Debtor and Appellant), represented by:

> Stephen D. Finestone (125675)
> Ryan A. Witthans (301432)
> FINESTONE HAYES LLP
> 456 Montgomery Street, Floor 20
> San Francisco, CA 94104
> Tel.:   (415) 616-0466
> Fax:   (415) 398-2820
> Email: sfinestone@fhlawllp.com
> Email: rwitthans@fhlawllp.com

Zions Bancorporation, N.A., *dba* California Bank & Trust, represented by:

> Michael Gerard Fletcher (State Bar No. 070849)
> mfletcher@frandzel.com
> Gerrick M. Warrington (State Bar No. 294890)
> gwarrington@frandzel.com
> FRANDZEL ROBINS BLOOM & CSATO, L.C.
> 1000 Wilshire Boulevard, Nineteenth Floor
> Los Angeles, California 90017-2427
> Telephone: (323) 852-1000
> Facsimile: (323) 651-2577

Professional Bank (joinder at ECF 85, 86), represented by:

> Stephen G. Opperwall (SBN 100057)
> LAW OFFICES OF STEPHEN G. OPPERWALL
> 4900 Hopyard Road, Suite 100
> Pleasanton, California 94588
> Telephone: (925) 417-0300
> Facsimile: (925) 417-0301
> E-mail: steve.opperwall@comcast.net

South River Capital, LLC (joinder at ECF 89), represented by:

> Heinz Binder, Esq. (SBN 87908)
> David B. Rao (SN#103147))
> BINDER & MALTER, LLP
> 2775 Park Avenue
> Santa Clara, CA 95050
> T: (408) 295-1700
> F: (408) 295-1531
> Email: heinz@bindermalter.com
> Email: david@bindermalter.com

Centennial Bank (*see* ECF 82, 103, 132),[2] represented by:

---

[2] Centennial Bank did not expressly join Zions' objection which underlies the presently appealed order, but it did join Professional Bank's similar objection to Kane's homestead

NOTICE OF APPEAL AND STATEMENT OF ELECTION                                      2

ANTHONY & PARTNERS, LLC
JOHN A. ANTHONY (SBN0731013)
janthony@anthonyandpartners.com
ANDREW J. GHEKAS (SBN 0119169)
aghekas@anthonyandpartners.com
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813.273.5616
Facsimile: 813.221.4113

COOPER, WHITE & COOPER LLP
PETER C. CALIFANO (SBN 129043)
pcalifano@cwclaw.com
201 California Street, 17th Floor
San Francisco, California 94111
Telephone: 415.433.1900
Facsimile: 415.433.5530

## III. STATEMENT OF ELECTION

Kane elects to have the appeal heard by the Bankruptcy Appellate Panel.


Dated July 23, 2021                    FINESTONE HAYES LLP


                                       /s/ Stephen D. Finestone
                                       Stephen D. Finestone
                                       Attorneys for Debtor, Evander Frank Kane

---

exemption. ECF 82, 103, 132. Centennial Bank is listed as a party to this appeal because it appeared at the hearing on Zions' objection. Docket text dated June 9, 2021 ("Hearing Held . . . Peter Califano appearing for Centennial Bank.").

NOTICE OF APPEAL AND STATEMENT OF ELECTION                    3

# Exhibit A

**Entered on Docket**
**July 09, 2021**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**The following constitutes the order of the Court.**
**Signed: July 9, 2021**

_Stephen Johnson_
_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

In re **EVANDER FRANK KANE**,

                         Debtor.

Case No. 21-50028 SLJ
Chapter 7

**ORDER ON ZIONS BANCORPORATION'S OBJECTION**
**TO DEBTOR'S HOMESTEAD EXEMPTION**

      Zions Bancorporation, N.A. ("Zions") has filed an Objection to Homestead

Exemption. ECF 74. Zions objects to Debtor claiming a homestead exemption in real

property he owns in San Jose, California, contending the property was purchased with non-

exempt assets shortly before this bankruptcy case was filed. Zions contends that Debtor's

homestead exemption must be reduced to account for conversions of non-exempt property

to exempt property on the eve of the bankruptcy filing. Debtor filed an Opposition to

Objection to Homestead Exemption, ECF 147, as well as a Declaration of Evander Kane in

support of that opposition. ECF 148. Debtor argues Zions' objection is procedurally

improper because he was not personally served within the filing deadline; that he did not

dispose of non-exempt property with intent to hinder, delay, or defraud creditors; and that

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                       1/29

1    other limitations on claiming homestead exemptions do not apply in California, and in any

2    event the property's pre-petition appreciation is not subject to such provisions.

3         I conclude the objection was timely and served in a way that was materially consistent

4    with the Bankruptcy Code and Rules. I then conclude § 522(p)[1] applies in California and

5    operates to limit Debtor's homestead exemption to $170,350. Finally, I find Debtor is not

6    denied his homestead claim in its entirety because he did not dispose of property, as § 522(o)

7    requires. Accordingly, Zions' objection will be sustained in part and overruled in part.

8   **I.**   **BACKGROUND**

9         Zions filed its objection on March 25, 2021. Zions served the objection and notice of

10   hearing on Debtor's attorney through first class mail and ECF. ECF 74-2, 73.

11         The essence of Zions' objection is that Debtor is not entitled to a homestead

12   exemption he claims in real property located at 2301 Richland Avenue, San Jose, California

13   95125 ("San Jose Property"). This is so because he obtained the funds for the down payment

14   on the San Jose Property in August 2020 by taking out a $600,000[2] loan that was cross-

15   collateralized and secured by two properties he already owned in Canada ("Canadian

16   Properties").[3] Rather than Debtor and his wife taking title, the San Jose Property was

17   purchased in the name of Lions Properties, LLC ("Lions Properties"), a Florida entity wholly

18   owned by Debtor and his wife that Debtor formed on May 26, 2020. ECF 74-1, p. 5–8. The

19   San Jose Property was later transferred from Lions Properties to Debtor and his wife by

20

21         [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy

22   Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil
    Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy

23   Procedure. All "Civil L.R." and "B.L.R." references are to the applicable Civil Local Rules
    and Bankruptcy Local Rules. And all "C.C.P." references are to the California Code of Civil

24   Procedure.

25         [2] The record is not precisely clear about one thing: Debtor's opposition states the
    correct amount is $435,000, though his schedules state the loan was for $600,000. ECF 18,

26   p. 2. Given the nature of the transaction, I find this unexplained difference is not controlling.

27         [3] Those properties are located at 3457 West 35th Avenue, Vancouver British
    Columbia, Canada and 8447 Isabel Place, Vancouver, British Columbia, Canada.

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION           2/29

<div style="writing-mode: vertical-rl">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  quitclaim deed on January 8, 2021, one day prior to his filing this bankruptcy case.[4] *Id.* at 20–

2  22. Zions argues this shows Debtor used nonexempt property – his equity in the Canadian

3  Properties – to purchase a homestead exemption with the intent to hinder, delay, or defraud

4  creditors, in violation of § 522(o).

5      Zions points to other pre-petition conduct to advance its assertion of Debtor's

6  fraudulent intent. For instance, as early as October 2019 Debtor was concerned that he

7  would not be able to continue making his debt payments and so hired restructuring counsel

8  at Pachulski Stang Ziehl & Jones to assist in negotiating with his creditors. ECF 65-1, p. 2–3.

9  Zions also notes Debtor's admission that he incurred $1,500,000 in gambling losses within

10  one year of the petition. ECF 19. Coupled with Debtor's balance sheet insolvency, *see*

11  ECF 1, p. 8, Zions argues this shows Debtor structuring his estate to hinder creditors, even

12  as his conduct continued to deplete his estate.

13  **II.   DISCUSSION**

14      A.   Zions' Evidentiary Objections

15      Zions raises several evidentiary objections in its reply. These pertain to statements set

16  out in Debtor's declaration. I conclude that one of these objections should be sustained and

17  the balance overruled.

18      First, Zions argues two of Debtor's statements are not relevant: (1) Debtor stating he

19  did not move to California to avoid creditors or because of its exemption laws; and

20  (2) Debtor stating the funds for the San Jose Property down payment came from his salary

21  bonus and from a loan secured by the Canadian Properties. Relevance is defined by Federal

22  Rule of Evidence 401: "Evidence is admissible if: (a) it has any tendency to make a fact more

23  or less probable than it would be without the evidence; and (b) the fact is of consequence in

24  determining the action." "Relevance is established by any showing, however slight, which

25  makes it more likely than it was before the admission of the evidence that the" fact in

---

26      [4] Zions also notes that, when asked at the § 341(a) meeting why Lions Properties

27  transferred title to him and his wife just prior to his filing this case, Debtor declined to

28  answer, citing attorney-client privilege. ECF 74, p. 66.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    3/29

1    question is true or false. *United States v. Federico*, 658 F.2d 1337, 1343 (9th Cir. 1981), *overruled*

2    *on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259–60 (9th Cir. 1984) (en banc).

3        Debtor's statements are not irrelevant; quite the contrary, they contest Zions'

4    contentions. Zions claims in its objection that Debtor's conduct is fraudulent or dilatory in

5    relation to his claimed homestead exemption. Debtor contests this in his declaration,

6    indicating he had motives other than evasion of creditors when he purchased the San Jose

7    Property. Debtor's first statement says he had no such intent when he came to California,

8    which in turn makes it at least somewhat more likely that he also did not have that intent

9    when he bought the San Jose Property. As for the second statement, part of Debtor's

10   opposition argues he did not "dispose of" non-exempt property to pay for the San Jose

11   Property because pledging equity as security for a loan is not a "disposal." This statement

12   makes it more likely he in fact pledged equity as security for the loan proceeds that partially

13   paid for the San Jose Property, and that fact is of consequence for Zions' § 522(o) claim.

14       Zions next argues certain statements lack foundation: (1) Debtor's statement that he

15   purchased the San Jose Property in August 2020 for $3,030,000[5]; (2) Debtor statement that

16   the funds for the San Jose Property down payment came from his salary bonus and from a

17   loan secured by the Canadian Properties; (3) Debtor's statement that he used part of his

18   salary bonus to pay off a junior lien on the Canadian Properties which had become due;

19   (4) Debtor's statement that he obtained a new loan of $435,000 on the Canadian Properties

20   after paying off the junior lien; (5) Debtor's statement that he combined loan proceeds with

21   the rest of his salary bonus to make the $705,000 down payment on the San Jose Property;

22   and (6) Debtor's statement that he and the trustee reached the Exemption Settlement after

23   the trustee got a $3,275,000 valuation opinion for the San Jose Property from a local realtor.

24       Foundation is defined by Federal Rule of Evidence 602, which says: "A witness may

25   testify to a matter only if evidence is introduced sufficient to support a finding that the

---

[5] Zions also argues this misstates the record, as the San Jose Property was originally titled in Lions Properties' name. It is unclear how this is relevant to a lack of foundation evidentiary objection.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    4/29

witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

The statements do not lack foundation in the main. Debtor has personal knowledge of the events described in the first four statements because, as his own testimony makes clear, he was the one who caused those events to occur. Zions appears to argue the fifth statement lacks foundation because it was actually Lions Properties who bought the San Jose Property, not Debtor. Assuming that is true, Debtor, along with his wife, are 100% owners of Lions Properties; I can infer from this that Debtor acted as Lions Properties' agent in this transaction, giving him personal knowledge of the events. *See United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977) (holding a witness restaurant manager had personal knowledge of company procedures on account of such witness's position in the company).

I agree with Zions that Debtor has not shown he has personal knowledge of the events described in the sixth statement. Accordingly, this statement must be excluded, and I decline to rule on the other objections to that statement.

Finally, Zions makes best evidence objections to: (1) Debtor's statement that he used part of his salary bonus to pay off a junior lien on the Canadian Properties that had become due; (2) Debtor's statement that he obtained a new loan of $435,000[6] on the Canadian Properties after paying off the junior lien; and (3) Debtor's statement that he combined loan proceeds with the rest of his salary bonus to make the $705,000 down payment on the San Jose Property.

People often think the best evidence rule is aptly named. I would argue that is not necessarily so. The rule does not require, as its name suggests, that a party must produce the best *quality* evidence of a fact. Rather, "The best evidence rule provides that the original of a writing, recording, or photograph is required to prove the contents thereof." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (quoting Fed. R. Evid. 1002). "The rule's

---

[6] This statement arguably tries to prove the contents of the loan documents, as the actual amount borrowed may be in dispute. But that is at best ancillary to Debtor's main purpose, which is describing *why the timing of this loan is not fraudulent.*

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                    5/29

1  application turns on 'whether contents are sought to be proved.' Fed. R. Evid. 1002

2  Advisory Committee's note. '[A]n event may be proved by nondocumentary evidence, even

3  though a written record of it was made.'" *Id.* Documentary evidence likely exists for each of

4  the events described in these statements.

5       Debtor is not required to produce documentary evidence in this situation. He is not

6  seeking to prove the contents of documents. The purpose of these statements is to show

7  that he paid off the Canadian Properties' junior lien as it became due; that the timing of the

8  new loan he took out on the Canadian Properties was based on the old loan becoming due,

9  not because of an impending bankruptcy; and that he used certain specific property to make

10 the down payment on the San Jose Property. These are simply statements by Debtor

11 pertaining to a transaction he participated in. He may not have the facts and figures right, a

12 point that Zions can establish with relative ease. But none of these statements are meant to

13 prove the contents of the documents used to record each of these events, so Zions'

14 objections to them must be overruled.

15       B.    Zions' Objection was Timely

16       Debtor's opposition first argues that, because Zions failed to deliver or mail its

17 objection to Debtor's homestead exemption to Debtor personally within the 30-day period

18 set by Bankruptcy Rule 4003, the objection is untimely and must be overruled. Although a

19 close question, I disagree with Debtor and conclude Zions' objection was timely.

20       The first meeting of creditors in this case was concluded on February 23, 2021. Thirty

21 days from that date is March 25, 2021, when Zions filed its objection to Debtor's homestead

22 exemption. ECF 74. Zions' certificate of service states the objection was served on Debtor's

23 counsel, but not Debtor. ECF 74-2. Zions set that objection for hearing on May 4, 2021,

24 giving due notice. On April 27, 2021, Debtor filed his Response to Objection to Homestead

25 Exemption filed by Zions Bancorporation, N.A. ECF-106. He argued that Bankruptcy Rule

26 4003(b)(4) requires that an objection be served on both debtor and debtor's counsel and it

27 was not served Debtor. Zions immediately sought a continuance of the May 4, 2021 hearing,

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                    6/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  ECF-109, which the court granted on April 29, 2021. ECF-110. Zions served a copy of the

2  objection on Debtor the same day that order was docketed.

3      Like much of this case, this dispute is complicated. Section 522(l) requires a debtor

4  "file a list of property that the debtor claims as exempt under subsection (b) of this section."

5  In turn, Bankruptcy Rule 4003(b)(1) allows a party in interest to "file an objection to the list

6  of property claimed as exempt within 30 days after the meeting of creditors held under

7  § 341(a) is concluded or within 30 days after any amendment to the list or supplemental

8  schedules is filed, whichever is later." Bankruptcy courts may extend that deadline for cause

9  "if, before the time to object expires, a party in interest files a request for an extension." *Id.*

10  The means of service are also stated: "A copy of any objection shall be delivered or mailed

11  to the trustee, the debtor and the debtor's attorney, and the person filing the list and that

12  person's attorney." Bankruptcy Rule 4003(b)(4).

13      The deadline for exemption objections is also found in this rule. "Rule 4003(b) gives

14  the trustee and creditors 30 days from the initial creditors' meeting to object. By negative

15  implication, the Rule indicates that creditors may not object after 30 days 'unless, within such

16  period, further time is granted by the court.'" *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643

17  (1992). If no one timely objects to an exemption, and the bankruptcy court does not extend

18  the objection period, § 522(l) makes the claimed property exempt, even if the debtor has no

19  "colorable statutory basis for claiming it." *Freeland & Kronz*, 503 U.S. at 643–44.

20      Debtor cites *In re Bush*, 346 B.R. 523 (Bankr. E.D. Wash. 2006), in support of his

21  timeliness argument. In *Bush*, the bankruptcy court admitted that Bankruptcy Rule 4003(b)

22  does not explicitly set a deadline for serving the objection on Debtor personally. The *Bush*

23  court then reasoned that there were two ways to resolve this issue: (1) require the objector to

24  deliver or mail a copy of the objection "within a reasonable period of time"; or (2) require

25  the objector deliver or mail a copy of the objection within the same period required for filing

26  it. *Bush*, 346 B.R. at 526. The court concluded the second resolution better served the Rule's

27  purpose of "provid[ing] the debtor with timely notice that the trustee or other interested

28

<div style="writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                          7/29

1  party objects to the debtor's claimed exemption." *Id.* (quoting *In re Spenler*, 212 B.R. 625, 630

2  (B.A.P. 9th Cir. 1997)). Allowing a flexible deadline would in fact hinder the timeliness of

3  notice, as such "notice is accomplished by serving the objection, not by filing it." *Bush*, 346

4  B.R. at 526. Also relevant were cases holding that a court cannot extend the 30-day period

5  for filing objections when "the court failed to rule on a timely motion to extend before the

6  expiration of the period," *id.* at 528 (citing *In re Laurain*, 113 F.3d 595 (6th Cir. 1997); *Matter*

7  *of Stoulig*, 45 F.3d 957 (5th Cir. 1995))[7], and the Supreme Court's decision in *Freeland &*

8  *Kronz*, 503 U.S. at 644, which held the effect of failing to timely object to a claim of

9  exemptions is such exemptions are upheld, even if there is "no colorable statutory basis for

10  claiming" them. *Bush* concluded these cases supported a strict construction of Bankruptcy

11  Rule 4003, "based upon the policy of finality for the parties with respect to the property

12  claimed as exempt." *Bush*, 346 B.R. at 528.

13          Zions points to *In re Fisher*, 63 B.R. 649 (Bankr. W.D. Ky. 1986), as providing a better

14  interpretation of Bankruptcy Rule 4003. In *Fisher*, the bankruptcy court rejected part of the

15  argument Debtor makes here – that an exemption objection must be delivered or mailed to

16  both the debtor and his attorney – this way: "Service on the debtor's attorney was obviously

17  sufficient to give the debtor notice of the objections. [Bankruptcy] Rule 4003(b) states that

18  copies of the objections shall be delivered or mailed to the trustee and to the person filing

19  the list and his attorney. Reading this language literally and carried to the extreme, one could

20  conclude that 'the person filing the list' means someone from the attorney's office who

21  *physically* filed the same. We decline to read the Rule so literally as to mandatorily require

22  service on both the debtor and his attorney." The *Fisher* court seems to have concluded that

23  interpreting Bankruptcy Rule 4003(d)(4) to mean what it says – that both the debtor and the

24

25          [7] These cases were later superseded by amendments to Bankruptcy Rule 4003 in

26  2000, allowing courts to "to grant a timely request for an extension of time to file objections
    to the list of claimed exemptions, whether the court rules on the request before or after the

27  expiration of the 30-day period." The Advisory Committee made clear this amendment was
    in response to the holdings of cases like *Laurain* and *Stoulig*.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                          8/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  debtor's counsel must receive a copy of the objection by mail or delivery – would be an

2  overly literal construction of the Rule.

3      While *Bush* is well-considered, I will not follow it.[8] Critically, the rule itself does not

4  command me to disregard the objection, as the *Bush* court did. Bankruptcy Rule 4003(b)(3)

5  specifies that an objection must be filed within 30 days. If it is not filed, it is untimely. Thus,

6  the deadline for filing an objection is found in paragraph (3). The rule further specifies that

7  "a copy of any objection shall be delivered or mailed to the trustee, the debtor, and the

8  debtor's attorney . . . ." Bankruptcy Rule 4003(b)(4). The service of an objection is addressed

9  in paragraph (4), and there is no stated deadline. *Bush* is right that a natural inference is that

10  the filing and service of the objection should be coincident, as paragraph (3) states. But

11  paragraph (4) does not say so explicitly and I do not see a reason to establish a hard and fast

12  rule as *Bush* did in the absence of such language.

13      Moreover, I find two more general principles to be worthy of consideration. First,

14  generally speaking, notice in bankruptcy is a flexible concept properly tailored to the

15  circumstances presented. *In re Tennant,* 318 B.R. 860, 871-72 (B.A.P. 9th Cir. 2004); *In re

16  Krueger*, 88 B.R. 23, 241 (B.A.P. 9th Cir. 1988). Looking at the docket, it appears a timely

17  objection was filed to Debtor's claimed homestead exemption and that Debtor's counsel was

18  notified. Debtor later filed an objection to the initial hearing date stating that he was not

19  personally served, presumably because he received that notice. Realizing the oversight,

20  Zions' counsel immediately sought a continuance of the hearing and served Debtor with the

21  objection. I find nothing untoward about that process because, in the end, Debtor had due

24      [8] As an aside, I reject Zions' argument that Bush rule, even if correct, cannot allow
25  me to summarily overrule its objection, calling this result "arbitrary and bizarrely
    draconian[.]" ECF 153, p. 20. In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992), the
26  Supreme Court held that a party in interest cannot object to debtor's claim of exemption
    after Bankruptcy Rule 4003(b)(1)'s deadline has passed, even if the debtor has no "colorable
27  statutory basis for claiming it." The Supreme Court's holding in *Freeland & Kronz* creates
    results that are at least as arbitrary as those urged here.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                    9/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   notice of the objection and hearing date and filed a timely and comprehensive response.

2   More is not necessary, at least under the current version of Bankruptcy Rule 4003.

3         I also conclude that getting to the substance of a dispute is preferable to reaching a

4   decision by default, which is one reading of Debtor's argument. As the Ninth Circuit said in

5   affirming a district judge's refusal to enter a default judgment: "Our starting point is the

6   general rule that default judgments are ordinarily disfavored. Cases should be decided upon

7   their merits whenever reasonably possible." *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir.

8   1986) (citing *Pena v. Seguaros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985)). In this

9   matter, the parties contest Debtor's right to a homestead exemption and have filed extensive

10  briefing on the point. Getting to the bottom of those disputes is the right thing to do.

11        C.   <u>Burden of Proof</u>

12        The burden of proof in an exemption objection is on the party objecting to the

13  claimed exemption under Bankruptcy Rule 4003(c), which says the party bringing a claim

14  objection bears "the burden of proving that the exemptions are not properly claimed." But I

15  note that in *In re Diaz,* 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016), the BAP reasoned that the

16  Supreme Court's decision in *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000),

17  requires that "where a state law exemption statute specifically allocates the burden of proof

18  to the debtor, Bankruptcy Rule 4003(c) does not change that allocation." C.C.P. § 703.580(b)

19  allocates the burden of proof at a hearing on a claim of exemption to the exemption

20  claimant. In turn, C.C.P. § 704.780(a)(1) allocates the burden of proof at a hearing on a

21  homestead exemption claim on the claimant unless "the records of the county tax assessor

22  indicate that there is a current homeowner's exemption . . . for the dwelling claimed by the"

23  debtor; in that instance, "the judgment creditor has the burden of proof that the dwelling is

24  not a homestead." The BAP in *Diaz* held these provisions showed that "California has

25  mandated the use of state exemptions in bankruptcy and has placed the burden of proof on

26  the party claiming the exemption." 547 B.R. at 337 (citations omitted).

27

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION           10/29

<div style="writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

1    I conclude *Diaz* does not apply to Zions' objections. The trustee's objection in *Diaz*

2  was that the debtor's homestead exemption was improper because he did not reside in the

3  property on the date he filed his bankruptcy case. That is, the objection argued the debtor

4  was not entitled to his claimed exemption under State law. But the objections here do not

5  challenge Debtor's entitlement to a homestead under State law. They argue such exemption

6  should be limited or barred entirely under §§ 522(o) and (p). Since Zions' objections arise

7  from Federal limitations on State exemptions, Bankruptcy Rule 4003(c) provides the relevant

8  burden of proof here, not State law. *See In re Fehmel*, 372 Fed. App'x. 507, 511 (5th Cir. 2010)

9  (Applying Bankruptcy Rule 4003(c) to a § 522(p) objection); *In re Wilcut*, 472 B.R. 88, 92

10  (B.A.P. 10th Cir. 2012) (applying Bankruptcy Rule 4003(c) to a § 522(o) objection).

11    In the Ninth Circuit, Bankruptcy Rule 4003(c)'s burden of proof works as follows:

12  "A claimed exemption is presumptively valid . . . . Once an exemption has been claimed, it is

13  the objecting party's burden . . . to prove that the exemption is not properly claimed.

14  Initially, this means that the objecting party has the burden of production and the burden of

15  persuasion. The objecting party must produce evidence to rebut the presumptively valid

16  exemption. If the objecting party can produce evidence to rebut the exemption, the burden

17  of production then shifts to the debtor to come forward with unequivocal evidence to

18  demonstrate that the exemption is proper. The burden of persuasion, however, always

19  remains with the objecting party." *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)

20  (internal citations and quotation marks omitted). I will apply this framework to Zions'

21  objections under both § 522(o) and (p).

22    D.    Zions' § 522(p) Objection Must be Sustained

23      1.    *Section 522(p) Applies Here*

24    Section 522(p)(1)(A) says that, "as a result of electing under subsection (b)(3)(A) to

25  exempt property under State or local law, a debtor may not exempt any amount of interest

26  that was acquired by the debtor during the 1215-day period preceding the date of the filing

27  of the petition that exceeds in the aggregate $125,000 in value in real [] property that the

28
ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    11/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    debtor . . . uses as a residence[.]" Understanding this provision requires some discussion of

2    how exemptions work under the Code.

3         The Code's exemption framework is as follows: Section 522(l) requires a debtor "file

4    a list of property that the debtor claims as exempt under subsection (b) of this section."

5    Section 522(b)(1) allows an individual debtor to "exempt from property of the estate the

6    property listed in either paragraph (2) or, in the alternative, paragraph (3) of" § 522(b).

7    Section 522(b)(2) says "property listed in" that subsection means the property exemptions

8    provided in § 522(d), "unless the State law that is applicable to the debtor under paragraph

9    (3)(A) specifically does not so authorize."[9] And § 522(b)(3), subject to §§ 522(o) and (p),

10   defines "property listed in" that subsection to mean "any property that is exempt under

11   Federal law, other than subsection (d) of this section, or State or local law that is applicable

12   on the date of the filing of the petition[.]" To summarize: a debtor is required to file a list of

13   property he claims as exempt. A debtor can claim the exemptions described in either

14   §§ 522(b)(2) or (3). But if applicable State law explicitly disallows the exemptions provided in

15   § 522(d), then § 522(b)(2) essentially provides the debtor no valid exemptions.

16        Courts are split on the meaning of § 522(p) limiting a debtor's claim of exemption "as

17   a result of electing under subsection (b)(3)(A) to exempt property under State or local law"

18   when a State has opted out of the federal exemption scheme. One interpretation is that "the

19   bankruptcy exemptions of § 522(d) may not be elected by a debtor if the applicable state law

20   specifically does not so authorize. This effectively permits states to 'opt out' of the

21   Bankruptcy Code's exemptions, and as noted above [California] is an opt-out state.

22   Consequently in [California], a debtor does not get to 'elect' state exemptions. Rather, they

23   are the only exemptions available to a debtor, so there is no election to be made." *In re*

24   *Mcnabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005). Because § 522(p) only applies "as a result

25   of electing under subsection (b)(3)(A) to exempt property under State or local law," and a

26

27       [9] C.C.P. § 703.130 makes clear that the exemptions in § 522(d) "are not authorized

28   in" California.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION          12/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  state's decision to opt out of § 522(d) prohibits a debtor from electing such exemptions, a

2  debtor in such a state cannot make an election, so § 522(p) does not apply. *Mcnabb* also

3  pointed to § 522(o) which, instead of using § 522(p)'s election language, states it applies

4  "[f]or purposes of subsection (b)(3)(A)[.]" "If Congress had similarly intended the $125,000

5  cap found in § 522(p) to apply across the board, it would presumably have used the identical

6  language: 'For purposes of subsection (b)(3)(A), a debtor may not exempt any amount' that

7  was acquired during 1,215 days prepetition. There would have been no need to refer to an

8  election at all. This striking difference between the language of § 522(o) and § 522(p) must

9  have been intended to effect a difference in result. The somewhat convoluted language of

10  § 522(p) must have been intended to impose a condition beyond that of the far simpler

11  language of § 522(o)." *Mcnabb*, 326 B.R. at 790 (citations and footnote omitted).

12      *Mcnabb* also pointed to § 522(q)(1), which also applies "[a]s a result of electing under

13  subsection (b)(3)(A) to exempt property under State or local law[.]" That subsection bars a

14  debtor from exempting more than $125,000 "if he has been convicted of a felony or owes a

15  debt arising from securities fraud, breach of fiduciary duty, etc." *Mcnabb*, 326 B.R. at 790.

16  The court found "special significance" in how this provision interacts with § 727(a)(12). That

17  provision requires a court deny a discharge if "finds that there is reasonable cause to believe

18  that § 522(q)(1) may be applicable to the debtor; and there is pending any proceeding in

19  which the debtor may be found guilty of a felony of the kind described in section

20  522(q)(1)(A)[.]" § 727(a)(12)(A)–(B). In the court's view, "[s]ubparagraph A of § 727(a)(12)

21  necessarily implies that § 522(q)(1) 'may be applicable' to some debtors and not to others,

22  because such applicability is a discrete finding the court is required to make. Subparagraph B

23  of § 727(a)(12) necessarily implies that the determination under (A)—whether § 522(q)(1)

24  may be applicable to the debtor—is something separate and distinct from the finding that

25  there is pending a proceeding in which the debtor may be found guilty of a felony or liable

26  for a debt of the kind described there. What would make § 522(q)(1) applicable, or not

27  applicable, to a debtor *other than* the pendency of such a proceeding? Other the pendency of

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                    13/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    such a proceeding, the only other factor that could determine whether § 522(q)(1) 'may be

2    applicable' to a debtor is whether a debtor elects to claim state exemptions. A court would

3    not need a hearing to find reasonable cause to believe that a debtor has elected state

4    exemptions in states where no such election is available." *Mcnabb*, 326 B.R. at 790.

5         The other approach concludes that, while an "election may become ineffective if the

6    debtor chooses a federal exemption in an opt-out state, [] the debtor nonetheless makes an

7    'election' within the meaning of the statute." *In re Virissimo*, 332 B.R. 201, 205 (Bankr. D.

8    Nev. 2005). The court reasoned as follows: "Under [] § 541 all property is property of the

9    estate. If the debtor wishes to exempt property he must engage in an act to do so. [] § 522(l).

10   Pursuant to § 522(b)(1), he may elect to choose property listed in [] § 522(b)(2) or (b)(3)."

11   *Virissimo*, 332 B.R. at 205. "Given the language of the statute, the debtor makes an election

12   as to whether to exempt property and whether to use paragraph (b)(2) or paragraph (b)(3). If

13   he 'elects' paragraph (b)(2) in [California], or any other opt-out state, and if a party timely

14   objects, then he is denied the exemption. But conversely, as the United States Supreme

15   Court has held in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), if a party does not timely

16   object to a claimed objection, the property is exempt even if there is no basis for the

17   claiming of that exemption. Similarly, if the debtor fails to choose any exemptions, no

18   property is exempted." *Virissimo*, 33 B.R. at 205–06. The court also noted that Congress

19   could have avoided this result by rewording § 522(p) to say: "'A debtor shall receive

20   exemptions set forth under subsection (d) unless the state law does not permit such

21   exemptions to be used. If a state does not permit a debtor to use such exemptions, the

22   debtor shall receive the exemptions provided under the laws of that state.' With that

23   language there is no election and a debtor automatically receives state exemptions but not

24   the exemptions under § 522(d)." *Virissimo*, 33 B.R. at 206.

25        *Virissimo* alternatively concluded that, if one considered § 522(p) to be ambiguous, the

26   legislative history of this provision supports applying it to states that have opted out of the

27   § 522(d) exemption scheme. In its own words: "Nowhere is there a suggestion that the

28
ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                               14/29

$125,000 homestead limitation is applicable to debtors in some states but not to debtors in other states. Rather, it is obvious that Congress intended to eliminate some of anomalies created by the use of state homestead exemptions and create a more uniform, predictable set of exemptions. Congress wanted to close what it perceived was the abuse of exemptions caused, in part, by the varying state laws and overly generous homesteads." 332 B.R. at 207. The Bankruptcy Appellate Panel appears to have adopted the *Virissimo* court's view, though the Panel did not explain its reasoning for doing so. *See In re Caldwell*, 545 B.R. 605, 609 (B.A.P. 9th Cir. 2016) ("Section 522(p)(1) imposes a limitation on the homestead exemption a debtor can claim regardless of the applicable state law exemptions.") (citing *In re Kane*, 336 B.R. 477, 481 (Bankr. D. Nev. 2006); *Virissimo*, 332 B.R. at 207).

I conclude § 522(p)(1) applies even where State law opts out of the exemptions given in § 522(d). Section 522(l) requires the debtor to list the exemptions he claims. Another way of saying this is that a debtor is required to state in writing which exemptions he is electing to claim. It is true that California, by opting out of § 522(d), causes § 522(b)(2) to list no property as exempt. But as *Virissimo* noted, a debtor could still claim exemptions under § 522(d), and such exemptions would be allowed unless someone timely objected. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (holding that invalid claims of exemption still result in such property being exempt unless someone timely object under Bankruptcy Rule 4003(b)). *Mcnabb*'s reasoning is essentially that a state opting out of § 522(d) precludes a debtor from electing those exemptions, and the resulting choice between State exemptions under § 522(b)(3) or no exemptions cannot be construed as an election at all. The first problem with this reasoning is it adds an additional question – not just whether an election happened, but whether it was effective – into a provision that does not expressly ask for it. But more importantly, the Supreme Court's decision in *Freeland & Kronz* makes clear that a debtor *could* make an effective election of § 522(d)'s exemptions in a state that has opted out of them, unless someone timely objects. So even if the effectiveness of a debtor's election

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                15/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   matters under § 522(p), a state opting out of federal exemptions does not necessarily bar a

2   debtor-resident of such a state from electing such exemptions.

3           The majority of courts that have decided this issue have done so in accordance with

4   *Virissimo*, not *Mcnabb*, including the BAP. And my own analysis of § 522(p) leads me to

5   conclude that *Virissimo* provides the correct rule. Accordingly, § 522(p) applies to Debtor's

6   homestead exemption. I determine the effect of § 522(p) on Debtor's exemption next.

7           2.     *§ 522(p) Limits Debtor's Homestead Exemption to $170,350*

8           Again, § 522(p)(1)(D) says "a debtor may not exempt any amount of interest that was

9   acquired by the debtor during the 1215-day period preceding the date of the filing of the

10  petition that exceeds in the aggregate $125,000[10] in value in real [] property that the debtor

11  or a dependent of the debtor claims as a homestead." Courts look to state law first to decide

12  what property interests a debtor acquired in a given transaction, "and then to [§] 522(p)(1) to

13  determine whether that [interest] qualifies as an 'any amount of interest that was acquired'

14  within the compass of [§] 522(p). *In re Greene*, 583 F.3d 614, 620 (9th Cir. 2009).

15          "California defines a homestead as a dwelling where a person resides." *In re Schaefers*,

16  623 B.R. 777, 782 (B.A.P. 9th Cir. 2020) (citing Cal. Code Civ. Proc. §§ 704.710(a), (c)).

17  "Californians may, therefore, claim a homestead exemption without holding a fee simple

18  interest in the subject real property. Even so, they must have *some* legal or equitable interest

19  in the real property." *Schaefers*, 623 B.R. at 782–83 (citations omitted). "[U]nder California

20  law a limited liability company is a separate and distinct legal entity from its owners or

21  members." *Id.* at 783 (citing *Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 220–21 (2017)).

22  "Consequently, limited liability company members have no interest in the company's assets." 

23  *Schaefers*, 623 B.R. at 783 (citing *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958,

24  963 & n.21 (9th Cir. 2002)). In *Schaefers*, the BAP held that a debtor who failed to identify a

25

26

27          [10] This amount is regularly adjusted to reflect changing economics. Currently the
    amount is $170,350.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                              16/29

1    beneficial or equitable interest in real property held by an LLC could not claim a homestead

2    exemption in such property because his interest in the LLC was not a homestead.

3         In *Greene*, the Ninth Circuit used the Black's Law Dictionary definition of "acquire"

4    to interpret § 522(p): "[t]o gain possession or control of; to get or obtain." 583 F.3d 614, 623

5    (9th Cir. 2009). Because Debtor and Lions Properties are separate entities, Debtor did not

6    gain possession or control of the San Jose Property until it was quitclaimed to Debtor the

7    day before he filed this bankruptcy case. So to the extent the San Jose Property appreciated

8    in value between the date of purchase and the date Lions Properties transferred it to Debtor,

9    he "acquired" such appreciation in the transfer, making that appreciation subject to § 522(p).

10        As for any post-petition appreciation: "A debtor's exemptions have long been fixed

11   at the date of the filing of the bankruptcy petition. This rule determines not only what

12   exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her

13   exemptions." *Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018) (cleaned up). So assuming

14   that trustee's valuation of the San Jose Property is correct, that post-petition appreciation

15   accrues to the bankruptcy estate, and cannot be claimed as exempt by Debtor. *See* § 541(a)(1)

16   ("The commencement of a [bankruptcy case] . . . creates an estate. Such estate is comprised

17   of," among other things, "all legal or equitable interests of the debtor in property as of the

18   commencement of the case.").

19        Debtor fails to show what interest he had in the San Jose Property when it was held

20   by Lions Properties, so I find he had none. As Lions Properties did not transfer the San Jose

21   Property to Debtor until the day before he filed this bankruptcy case, he acquired any pre-

22   petition appreciation on that date, making such appreciation subject to § 522(p). And any

23   post-petition appreciation is the property of the bankruptcy estate. I conclude that Zions is

24   correct, and § 522(p) requires that Debtor's homestead exemption in the San Jose Property

25   must be limited to $170,350.

26

27

28

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                              17/29

E.    § 522(o) Limits Exemptions Otherwise Available but does not Apply on the Facts of this Case

1.    *Exemption Planning is Permitted in General but § 522(o) Changes Things*

In this circuit, debtors like Kane are permitted to maximize their exemptions when contemplating a bankruptcy filing. The courts more or less uniformly conclude that the conversion by a consumer of non-exempt property into exempt property on the eve of bankruptcy alone does not mean a debtor must be denied such exemptions. *In re Stern*, 345 F.3d 1036, 1044-45 (9th Cir. 2003); *Wudrick v. Clements*, 451 F.2d 988, 989-90 (9th Cir. 1971); *In re Beverly*, 374 B.R. 221, 241 (B.A.P. 9th Cir. 2007). But courts have acknowledged that Congress has the power to legislate otherwise and change that result. *In re Lacounte,* 342 B.R. 809, 814 (Bankr. D. Mont. 2005). One such provision is § 522(o). It states:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in--
>
> (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
> (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
>
> (3) a burial plot for the debtor or a dependent of the debtor; or
>
> (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

Courts have developed a standard to use when evaluating claims a debtor has violated § 522(o): "To prevail, a creditor or trustee must show: (a) an increase in the value of the debtor's homestead; (b) that the increase was 'attributable' to the disposition of nonexempt assets; (c) that the disposition of the nonexempt assets was made with the intent to hinder, delay, or defraud a creditor; and (d) that the disposition occurred during the ten-year period

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    ending on the date the debtor's bankruptcy petition was filed." *In re Stanton*, 457 B.R. 80, 91

2    (Bankr. D. Nev. 2011).[11] Some courts use a variant of this test, but they are not materially

3    different. *In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007) (citing *In re Sissom*, 366 B.R.

4    677, 688 (Bankr. S.D. Tex. 2007)); *In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012).

5            The dispute in this case centers on whether Debtor "disposed of" property in his

6    acquisition of the San Jose Property. Zions contends that Debtor "disposed of" nonexempt

7    assets to purchase a homestead by taking a $600,000 loan secured by junior liens on the

8    Canadian Properties, and by using the proceed from that loan as a partial down payment on

9    the San Jose Property. Debtor disagrees and argues he had no equity in the Canadian

10   Properties until he paid off a second deed of trust with some of his 2020 salary bonus, which

11   he only did because the loan became due, requiring a balloon payment. More critically, in

12   Debtor's view, that borrowing did not involve disposing of non-exempt assets.

13           2.    *Decisions Interpreting "Dispose of" Under § 522(o)*

14           Case law addressing precisely whether property has been "disposed of" within the

15   meaning of the statute is hard to come by. Reviewing the case law, I find several types of

16   cases. The first involves actual dispositions of assets – including real property, *In re Craig*,

17   2012 WL 6645692 (Bankr. D. Mont. Dec. 20, 2012), construction equipment, *In re Wilmoth*,

18   397 B.R. 915, 917 (B.A.P. 8th Cir. 2008), stock in a small company, *In re Sissom*, 366 B.R.

19   677, 689 (Bankr. S.D. Tex. 2007), coin collections, *In re Crabtree*, 562 B.R. 749, 751 (B.A.P.

20   8th Cir. 2017), trucks and trailers, *In re Maronde*, 332 B.R. 593, 597 (Bankr. D. Minn. 2005),

21

22           [11] Debtor argues this test is in conflict with *In re Stern*, 345 F.3d 1036, 1043 (9th Cir.
23   2003), which reiterated that "'that the purposeful conversion of nonexempt assets to exempt
     assets on the eve of bankruptcy is not fraudulent per se.'" (quoting *Wudrick v. Clements*, 451
24   F.2d 988 (9th Cir. 1971)). Assuming that is true, the problem for Debtor is that § 522(o) was
     added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection
25   Act, which was passed in 2005, after *Stern* was decided. At least one bankruptcy court in this
     circuit has concluded that § 522(o) "was obviously added to the Bankruptcy Code by
26   Congress to curb a perceived abuse by debtors of" *Stern*'s allowance of pre-bankruptcy
     planning. *In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005). I decline to decide this
27   issue, as I conclude there are other grounds for denying Zions' § 522(o) claim.

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
     TO DEBTOR'S HOMESTEAD EXEMPTION                                    19/29

1  boats, *In re Roberts*, 527 B.R. 461, 471 (Bankr. N.D. Fla. 2015), liquor licenses and a business

2  enterprise, *In re Halinga*, 2013 WL 6199152 (Bankr. D. Id. Nov. 27, 2013).

3       A second type of case involves, as here, a borrowing against property and use of

4  funds to acquire exempt property. Here, one might argue that the borrowing against the

5  Canadian Property was a sale of Debtor's equity in the property for cash, and later use of

6  cash to purchase the Residence. The Fifth Circuit faced similar facts in *In re Cipolla*, 476 Fed.

7  App'x. 301, 305 (5th Cir. 2012). Cipolla, the debtor, borrowed against non-exempt real

8  property and used the funds to purchase an exempt homestead in Texas, much like Debtor

9  did. But the *Cipolla* court never actually analyzed whether this qualified as a disposition,

10 apparently because the parties did not contest it. The Fifth Circuit referred to the transaction

11 using varying nomenclature, including sometimes referring to it as a "transfer."

12      Some courts have determined that the use of borrowed funds to acquire exempt

13 property or pay down a debt on exempt property may be barred by § 522(o). *See In re Keck*,

14 363 B.R. 193, 208-09 (Bankr. D. Kan. 2007) (cash advances used to pay home equity line); *In*

15 *re Wallwork*, 616 B.R. 395, 406 (Bankr. D. Idaho 2020)(credit card advances used to improve

16 home, but not applying § 522(o) due to lack of intent to defraud). The trouble is the courts

17 that have so held did not fully analyze the first part of the statute, which requires a

18 disposition. In these cases, the courts either assume the existence of a disposition without

19 any real analysis or the parties have not argued the point. The absence of analysis on what a

20 "disposition" precisely is leads me to find their conclusions unpersuasive.

21      Somewhat surprisingly, some cases have held that the use of non-exempt cash

22 reserves to acquire exempt assets can run afoul of § 522(o). These seem to be the facts in *In*

23 *re Addison*, 540 F.3d 805, 813-14 (8th Cir. 2008) (concluding use of funds in brokerage and

24 savings account to pay down mortgage balance qualified under § 522(o) as "conversion" but

25 finding no extrinsic evidence of fraudulent intent). But we know that in the Ninth Circuit,

26 absent § 522(o), exemption planning is not categorically barred. We also know that the statute

27 requires a disposition. If this line of thinking is correct and every use of non-exempt cash to

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION               20/29

1 acquire exempt assets is barred, I would have to conclude that § 522(o) overrules all Ninth

2 Circuit authority on exemption planning.

3        One could make a case that Congress itself, in enacting § 522(o) meant to catch a

4 broad range of transactions under that provision. The Report of the Committee on the

5 Judiciary House of Representatives described BAPCPA's addition to § 522 in this fashion:

6            Sec. 308. Reduction of Homestead Exemption for Fraud.

7            Section 308 amends section 522 of the Bankruptcy Code to
             reduce the value of a debtor's interest in the following property
8            that may be claimed as exempt under certain circumstances: (i)
             real or personal property that the debtor or a dependent of the
9            debtor uses as a residence, (ii) a cooperative that owns property
             that the debtor or a dependent of the debtor uses as a residence,
10           (iii) a burial plot, or (iv) real or personal property that the debtor
             or dependent of the debtor claims as a homestead. Where
11           nonexempt property is converted to the above-specified exempt
             property within the ten-year period preceding the filing of the
12           bankruptcy case, the exemption must be reduced to the extent
             such value was acquired with the intent to hinder, delay or
13           defraud a creditor.

14 H.R. Report No. 109-31, pt. 1, at p. 72 (2005). The trouble is, the statute as proposed and

15 enacted consistently used the term "disposed of." It never strayed into other terms like

16 "converted" or "transferred" or any other such term. In my view, this means I must find the

17 challenged transaction was actually a disposition, and not any number of other transactions

18 that fall under the broad umbrella of "transfer."

19        3.    *The Bankruptcy Code Refers to the Term "Disposed of" and this Uniformly*

20              *Means Divestment of Ownership or the Rights of Ownership*

21        Finding little concrete guidance in the case law, it is worth looking harder at the

22 Bankruptcy Code itself to tease out a definition for "disposing of" property. The Ninth

23 Circuit has held under ordinary statutory interpretation rules, statutes are interpreted "as a

24 whole, giving effect to each word and making every effort not to interpret a provision in a

25 manner that renders other provisions of the same statute inconsistent, meaningless or

26 superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (citing

27 Sutherland Stat. Const. §§ 46.05, 46.06 (4th ed.1984); *Aluminum Co. of Am. v. Bonneville Power*

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                            21/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

*Admin.*, 891 F.2d 748, 755 (9th Cir.1989)). The Ninth Circuit has also held that "[w]e must presume that words used more than once in the same statute have the same meaning." *Boise Cascade*, 942 F.3d at 1432 (citing Sutherland Stat Const. § 46.06). So, where do these words appear in the Bankruptcy Code and what does that tell us?

Section 559, which addresses the liquidation of repo participations, provides in part:

> In the event that a repo participant or financial participant liquidates one or more repurchase agreements with a debtor and under the terms of one or more such agreements has agreed to deliver assets subject to repurchase agreements to the debtor, any excess of the market prices received on liquidation of such assets (or if any such assets are not <u>disposed of</u> on the date of liquidation of such repurchase agreements, at the prices available at the time of liquidation of such repurchase agreements from a generally recognized source or the most recent closing bid quotation from such a source) over the sum of the stated repurchase prices and all expenses in connection with the liquidation of such repurchase agreements shall be deemed property of the estate, subject to the available rights of setoff.

§ 559 (emphasis added). In discussion this section, Collier makes clear it is intended to allow non-breaching parties to close out or liquidate their investments by terminating the agreement and fixing damage claims based on market prices at the time of liquidation. 5 Collier on Bankruptcy ¶ 559.04[1] (16th ed. 2021).

Section 725 also makes a reference to these words:

> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall <u>dispose of</u> any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

§ 725 (emphasis added). This also suggests a final winding up and termination of rights.

Finally, a provision addressing unclaimed property, § 347, contains a reference to these words:

> (a) Ninety days after the final distribution under section 726, 1194, 1226, or 1326 of this title in a case under chapter 7, subchapter V of chapter 11, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and <u>disposed of</u> under chapter 129 of title 28.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                          22/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

§ 347 (emphasis added). Here, the statute is referring to a final payment and close out of the estate's asset base. Obviously, none of these statutes has anything to do with exemptions and exemption planning. But each refers to a final resolution or termination of ownership interests and none even vaguely suggests a party would have a continuing relationship or ownership with the affected property.

The cases sometimes describe transactions subject to § 522(o) as involving transfers or conversions, but their usage is imprecise. The definitional section of the Code, § 101, makes clear that a "disposition" is narrower than other similar terms. "Transfer," by example, is defined this way:

> The term "transfer" means--
>
> (A) the creation of a lien;
>
> (B) the retention of title as a security interest;
>
> (C) the foreclosure of a debtor's equity of redemption; or
>
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
>
> > (i) property; or
> >
> > (ii) an interest in property.

11 U.S.C. § 101(54) (emphasis added). This section may not say exactly what a "disposition" is, but it at least implies that one cannot use "disposition" as an equivalent word for any other type of transfer. It is in some way distinct.

4.   *Lacking Concrete Guidance, I Resort to the Dictionary*

That leaves us with common understandings of the words "disposed of." The Dictionary definitions of "dispose" include "to get rid of," "to deal with conclusively," and "to transfer to the control of another." *Dispose*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/dispose. From this definition, Congress appears to define a disposition narrowly by comparing it to a "parting with" property or

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                          23/29

1  interests in property. By contrast, the § 101(54) definition seems to distinguish a disposition

2  from the creation of encumbrances like liens and the foreclosure of equitable rights.

3      It is useful to consider whether there are better definitions for the transaction here

4  than disposition. One that comes immediately to mind is hypothecation: "The pledging of

5  something as security without delivery of title or possession." *Hypothecation*, Black's Law

6  Dictionary (11th ed. 2019). Debtor here borrowed against an asset and used the proceeds of

7  the loan to pay for a new house (which is now his claimed homestead).

8      5.  *Conclusion: Debtor did not Dispose of Assets Within the Meaning of § 522(o)*

9      I find no disposition of assets on the facts.

10      This case does not involve a sale of part or all of the Canadian Property. Instead,

11  Debtor leveraged the Canadian Properties to purchase an exempt residence. This is not a

12  disposition because the property used to buy the San Jose Property – his equity in the

13  Canadian Properties – never left Debtor's ownership and to this day remains titled in his

14  name. To find this series of transactions a disposition, I would have to conclude that any use

15  of non-exempt cash to buy property capable of exemption is a disposition, regardless of

16  whether that cash was obtained by selling property. I do not think § 522(o) works that way.

17      What matters is not whether cash was used to buy exempt property, but how the

18  debtor obtained the cash to do so. If a debtor obtained the cash by selling non-exempt

19  property, or even just a partial interest in such property, then the transaction is a disposition

20  and thus subject to § 522(o). But if a debtor obtains cash using non-exempt property in a

21  manner that does not result in the debtor giving up such property, in whole or in part, the

22  transaction is not a disposition, and § 522(o) does not apply. The latter more accurately

23  describes Debtor's conduct here. Zions' § 522(o) objection must therefore be denied.

24      6.  *I Cannot Determine Whether Debtor Intended  to Hinder, Delay or Defraud his*

25      *Creditors Without an Evidentiary Hearing*

26      Debtor also argues he had no intend to hinder, delay, or defraud his creditors. He

27  contends that he borrowed against the Canadian Properties to buy the San Jose Property

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                    24/29

because a loan became due in the ordinary course. He paid off that prior loan and took out another to further his and his wife's desire to own a home. Debtor also notes that he only borrowed "approximately $435,000 USD." ECF 147, p. 2.

The point may be moot given my conclusion that no disposition occurred within the meaning of § 522(o). But I could not make a final determination about whether Debtor acted with the intent to hinder, delay, or defraud creditors on the existing record. "[A] plain reading of the statutory language reveals that hinder, delay, or defraud is stated in the disjunctive, so intent to hinder or delay is sufficient." *Wallwork*, 616 B.R. at 406; *see In re Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996) (applying the same reasoning to similar language in § 727(a)(2)). "[I]ntent may be inferred from the facts and circumstances of a case, because it is unlikely a debtor will testify directly that his intent was fraudulent." (citation omitted). When deciding whether to make such an inference, courts look to the badges of fraud, which "include (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer." *In re Retz*, 606 F.3d 1189, 1200 (9th Cir. 2010).

Beginning with the relationship between transferor and transferee, the transfer Zions argues is subject to § 522(o) is the loan Debtor obtained by encumbering his equity in the Canadian Properties, so the relevant transferee is the lender. Not, as Zions contends, Lions Properties.[12] *See* ECF 74, p. 16 ("Here, the analysis centers on the facts and circumstances in

---

[12] To the extent Zions meant to use § 522(o) to attack the transfer of the San Jose Property from Lions Properties to Debtor, I would still deny the motion. Section 522(o) only applies to property that *the debtor* disposed of. In the Lions Properties to Debtor transaction, it was Lions Properties, not Debtor, who disposed of the San Jose Property. Zions' motion can be read to implicitly request I treat these separate transactions as linked,

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    25/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

the time period leading up to the 'transfer'—i.e., the August 2020 Loan."). Nothing in the record allows me to infer there was a close relationship between Debtor and the lender. This badge of fraud is not present here.

The next badge of fraud asks whether the transfer was made in anticipation of a pending suit. As Zions notes, there were multiple lawsuits pending against Debtor at the time of the transfer. And Debtor has admitted that the increasing number of those lawsuits, and his inability to resolve those actions through his pre-bankruptcy restructuring, caused him to file this petition. This badge of fraud is present.

Third, Debtor's schedules show he was balance sheet insolvent as of the petition date, ECF 1, p. 8, and in October 2019 he was in poor financial condition, as his concerns over ability to meet debt obligations caused him to hire restructuring counsel. I have no evidence that in between October 2019 and the petition date Debtor's financial situation improved, and given that Debtor also admitted to incurring significant gambling losses during that period, I conclude it appropriate to infer he was either insolvent or in serious financial distress on the transfer date.

Fourth, I conclude that Debtor did not transfer substantially all of his non-exempt property. True, the $600,000 in question represents over 86% of Debtor's claimed exemptions. *See* ECF 1, p. 17–18. But from the standpoint of Debtor's total unencumbered property, the $600,000 represents just under 22%. *See* ECF 17, p. 9. I do not think that less than a quarter of non-exempt assets qualifies as substantially all.

Fifth, I conclude Zions has not been hindered in collecting on its judgment, because it does not currently have one.

Finally, Debtor did receive adequate consideration for the disposition, assuming it was one: in exchange for granting a security interest in his equity in the Canadian Properties, he received $435,000. Zions again argues the wrong transfer: while it is true Lions Properties

---

but to do so I would have to find that Debtor and Lions Properties are alter egos. No one has asked me to make such a finding, and I decline to do so.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    26/29

1 received nothing for transferring the San Jose Property to Debtor, that transfer did not

2 involve a disposition *by Debtor* of non-exempt assets.

3         Two badges of fraud are present here. But Debtor presents an alternative explanation

4 for this transfer: "The paying off of the maturing second deed on the Canadian Properties

5 and the subsequent refinance were very close in time. The series of transactions was not

6 designed to effect creditors but was done to retire matured debt and then purchase a home

7 for Kane, his wife and their newborn daughter." ECF 146, p. 9. At a minimum, the fact that

8 the second deed on the Canadian Properties came due of its own accord is some evidence

9 that this transaction was not made with ill intent. It provides an alternate explanation for the

10 timing of this transaction that is not rooted in Debtor planning for his bankruptcy case.

11         I also note that Debtor originally vested title to the San Jose Property in Lions

12 Properties. Zions points out that they are statutory insiders, and says I should infer from this

13 that the entire transaction was an effort to hide assets from creditors. But this is a motion to

14 deny Debtor the homestead exemption he claims. If Zions is correct that Debtor planned

15 this transaction from the outset to defraud his creditors by obtaining a homestead on the eve

16 of bankruptcy, why did he have Lions Properties hold title to the San Jose Property? That

17 choice could arguably support a finding that Debtor intended to hinder, delay, or defraud

18 creditors, but it cannot be used to show that Debtor planned from the outset to claim a

19 homestead exemption in the San Jose Property. If anything, Debtor's decision to vest title in

20 Lions Properties at first supports an inference that he did not intend to file bankruptcy at

21 that time, as that decision, absent the subsequent transfer, would have prevented Debtor

22 from claiming a homestead exemption in the San Jose Property.

23         Zions is correct that some badges of fraud are present here. But Debtor's alternative

24 explanation for the timing of the transaction could allow a reasonable trier of fact to find he

25 lacked the necessary intent, despite the presence of such badges. Moreover, Debtor's choice

26 to vest title to the San Jose Property in Lions Properties could only frustrate what Debtor is

27 trying to do now: exempt the equity he holds in the San Jose Property in this bankruptcy

28

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION         27/29

case. To resolve the factual contentions presented here I would need to weigh evidence and make credibility determinations. Because it would be improper to do so on the papers, which is a summary judgment-like procedure, I conclude that, to the extent I must reach Debtor's intent to decide Zions' § 522(o) objection, an evidentiary hearing is necessary.

### III. CONCLUSION

Debtor's exemption in the San Jose Property is not barred by § 522(o) but it is limited by § 522(p) to $170,350.

IT IS SO ORDERED.

**END OF ORDER**

# COURT SERVICE LIST

[ECF recipients only]

Stephen D. Finestone (125675)
Ryan A. Witthans (301432)
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
Tel.:    (415) 616-0466
Fax:    (415) 398-2820
Email: sfinestone@fhlawllp.com
Email: rwitthans@fhlawllp.com

Attorneys for Debtor,
Evander Frank Kane

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

In re

EVANDER FRANK KANE,

Debtor.

Case No. 21-50028-SLJ
Chapter 7

**NOTICE OF APPEAL AND STATEMENT OF ELECTION**[1]

Evander Frank Kane ("Kane," the "Debtor," or the "Appellant"), the debtor in the above-caption Chapter 7 bankruptcy case, hereby appeals from the Bankruptcy Court's decision finding that Kane's exemption in real property located at 2301 Richland Avenue, San Jose, CA 95125 (the "San Jose Property"), is limited to $170,350.

### I.  APPEALED DECISION

The appealed decision is as follows: *Order on Zions Bancorporation's Objection to Debtor's Homestead Exemption*, attached hereto as **Exhibit A** and entered on the docket at ECF 178 on July 9, 2021.

### II.  PARTIES TO THE APPEAL

The parties to the appeal are as follows:

//

---

[1] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532. "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy Procedure and "B.L.R." references are to the Bankruptcy Local Rules for the Northern District of California. "ECF" references are to the docket in the above-captioned proceeding.

NOTICE OF APPEAL AND STATEMENT OF ELECTION                                                    1

Evander Frank Kane (Debtor and Appellant), represented by:

> Stephen D. Finestone (125675)
> Ryan A. Witthans (301432)
> FINESTONE HAYES LLP
> 456 Montgomery Street, Floor 20
> San Francisco, CA 94104
> Tel.:    (415) 616-0466
> Fax:    (415) 398-2820
> Email: sfinestone@fhlawllp.com
> Email: rwitthans@fhlawllp.com

Zions Bancorporation, N.A., *dba* California Bank & Trust, represented by:

> Michael Gerard Fletcher (State Bar No. 070849)
> mfletcher@frandzel.com
> Gerrick M. Warrington (State Bar No. 294890)
> gwarrington@frandzel.com
> FRANDZEL ROBINS BLOOM & CSATO, L.C.
> 1000 Wilshire Boulevard, Nineteenth Floor
> Los Angeles, California 90017-2427
> Telephone: (323) 852-1000
> Facsimile: (323) 651-2577

Professional Bank (joinder at ECF 85, 86), represented by:

> Stephen G. Opperwall (SBN 100057)
> LAW OFFICES OF STEPHEN G. OPPERWALL
> 4900 Hopyard Road, Suite 100
> Pleasanton, California 94588
> Telephone: (925) 417-0300
> Facsimile: (925) 417-0301
> E-mail: steve.opperwall@comcast.net

South River Capital, LLC (joinder at ECF 89), represented by:

> Heinz Binder, Esq. (SBN 87908)
> David B. Rao (SN#103147))
> BINDER & MALTER, LLP
> 2775 Park Avenue
> Santa Clara, CA 95050
> T: (408) 295-1700
> F: (408) 295-1531
> Email: heinz@bindermalter.com
> Email: david@bindermalter.com

Centennial Bank (*see* ECF 82, 103, 132),[2] represented by:

---

[2] Centennial Bank did not expressly join Zions' objection which underlies the presently appealed order, but it did join Professional Bank's similar objection to Kane's homestead

NOTICE OF APPEAL AND STATEMENT OF ELECTION                                    2

1
2
3
4
5

ANTHONY & PARTNERS, LLC
JOHN A. ANTHONY (SBN0731013)
janthony@anthonyandpartners.com
ANDREW J. GHEKAS (SBN 0119169)
aghekas@anthonyandpartners.com
100 S. Ashley Drive, Suite 1600
Tampa, Florida 33602
Telephone: 813.273.5616
Facsimile: 813.221.4113

6
7
8
9

COOPER, WHITE & COOPER LLP
PETER C. CALIFANO (SBN 129043)
pcalifano@cwclaw.com
201 California Street, 17th Floor
San Francisco, California 94111
Telephone: 415.433.1900
Facsimile: 415.433.5530

10

### III. STATEMENT OF ELECTION

11

12

Kane elects to have the appeal heard by the Bankruptcy Appellate Panel.

13

Dated July 23, 2021                    FINESTONE HAYES LLP

14

15                                     /s/ Stephen D. Finestone

16                                     Stephen D. Finestone
                                       Attorneys for Debtor, Evander Frank Kane

17

18

19

20

21

22

23

24

25

26

27   exemption. ECF 82, 103, 132. Centennial Bank is listed as a party to this appeal because it
     appeared at the hearing on Zions' objection. Docket text dated June 9, 2021 ("Hearing Held . . .
28   Peter Califano appearing for Centennial Bank.").

NOTICE OF APPEAL AND STATEMENT OF ELECTION                                      3

# Exhibit A

**Entered on Docket**
**July 09, 2021**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the Court.
Signed: July 9, 2021

_Stephen Johnson_
_____
**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **EVANDER FRANK KANE**,

                Debtor.

Case No. 21-50028 SLJ
Chapter 7

## ORDER ON ZIONS BANCORPORATION'S OBJECTION
## TO DEBTOR'S HOMESTEAD EXEMPTION

Zions Bancorporation, N.A. ("Zions") has filed an Objection to Homestead Exemption. ECF 74. Zions objects to Debtor claiming a homestead exemption in real property he owns in San Jose, California, contending the property was purchased with non-exempt assets shortly before this bankruptcy case was filed. Zions contends that Debtor's homestead exemption must be reduced to account for conversions of non-exempt property to exempt property on the eve of the bankruptcy filing. Debtor filed an Opposition to Objection to Homestead Exemption, ECF 147, as well as a Declaration of Evander Kane in support of that opposition. ECF 148. Debtor argues Zions' objection is procedurally improper because he was not personally served within the filing deadline; that he did not dispose of non-exempt property with intent to hinder, delay, or defraud creditors; and that

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   other limitations on claiming homestead exemptions do not apply in California, and in any

2   event the property's pre-petition appreciation is not subject to such provisions.

3           I conclude the objection was timely and served in a way that was materially consistent

4   with the Bankruptcy Code and Rules. I then conclude § 522(p)[1] applies in California and

5   operates to limit Debtor's homestead exemption to $170,350. Finally, I find Debtor is not

6   denied his homestead claim in its entirety because he did not dispose of property, as § 522(o)

7   requires. Accordingly, Zions' objection will be sustained in part and overruled in part.

8   **I.   BACKGROUND**

9           Zions filed its objection on March 25, 2021. Zions served the objection and notice of

10  hearing on Debtor's attorney through first class mail and ECF. ECF 74-2, 73.

11          The essence of Zions' objection is that Debtor is not entitled to a homestead

12  exemption he claims in real property located at 2301 Richland Avenue, San Jose, California

13  95125 ("San Jose Property"). This is so because he obtained the funds for the down payment

14  on the San Jose Property in August 2020 by taking out a $600,000[2] loan that was cross-

15  collateralized and secured by two properties he already owned in Canada ("Canadian

16  Properties").[3] Rather than Debtor and his wife taking title, the San Jose Property was

17  purchased in the name of Lions Properties, LLC ("Lions Properties"), a Florida entity wholly

18  owned by Debtor and his wife that Debtor formed on May 26, 2020. ECF 74-1, p. 5–8. The

19  San Jose Property was later transferred from Lions Properties to Debtor and his wife by

20

21          [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy
22  Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil
    Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy
23  Procedure. All "Civil L.R." and "B.L.R." references are to the applicable Civil Local Rules
    and Bankruptcy Local Rules. And all "C.C.P." references are to the California Code of Civil
24  Procedure.
25          [2] The record is not precisely clear about one thing: Debtor's opposition states the
    correct amount is $435,000, though his schedules state the loan was for $600,000. ECF 18,
26  p. 2. Given the nature of the transaction, I find this unexplained difference is not controlling.
27          [3] Those properties are located at 3457 West 35th Avenue, Vancouver British
    Columbia, Canada and 8447 Isabel Place, Vancouver, British Columbia, Canada.
28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                    2/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  quitclaim deed on January 8, 2021, one day prior to his filing this bankruptcy case.[4] *Id.* at 20–

2  22. Zions argues this shows Debtor used nonexempt property – his equity in the Canadian

3  Properties – to purchase a homestead exemption with the intent to hinder, delay, or defraud

4  creditors, in violation of § 522(o).

5      Zions points to other pre-petition conduct to advance its assertion of Debtor's

6  fraudulent intent. For instance, as early as October 2019 Debtor was concerned that he

7  would not be able to continue making his debt payments and so hired restructuring counsel

8  at Pachulski Stang Ziehl & Jones to assist in negotiating with his creditors. ECF 65-1, p. 2–3.

9  Zions also notes Debtor's admission that he incurred $1,500,000 in gambling losses within

10 one year of the petition. ECF 19. Coupled with Debtor's balance sheet insolvency, *see*

11 ECF 1, p. 8, Zions argues this shows Debtor structuring his estate to hinder creditors, even

12 as his conduct continued to deplete his estate.

13 **II.   DISCUSSION**

14     A.     Zions' Evidentiary Objections

15     Zions raises several evidentiary objections in its reply. These pertain to statements set

16 out in Debtor's declaration. I conclude that one of these objections should be sustained and

17 the balance overruled.

18     First, Zions argues two of Debtor's statements are not relevant: (1) Debtor stating he

19 did not move to California to avoid creditors or because of its exemption laws; and

20 (2) Debtor stating the funds for the San Jose Property down payment came from his salary

21 bonus and from a loan secured by the Canadian Properties. Relevance is defined by Federal

22 Rule of Evidence 401: "Evidence is admissible if: (a) it has any tendency to make a fact more

23 or less probable than it would be without the evidence; and (b) the fact is of consequence in

24 determining the action." "Relevance is established by any showing, however slight, which

25 makes it more likely than it was before the admission of the evidence that the" fact in

26  ───────────────

27     [4] Zions also notes that, when asked at the § 341(a) meeting why Lions Properties transferred title to him and his wife just prior to his filing this case, Debtor declined to answer, citing attorney-client privilege. ECF 74, p. 66.

28 ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    3/29

1    question is true or false. *United States v. Federico*, 658 F.2d 1337, 1343 (9th Cir. 1981), *overruled*

2    *on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259–60 (9th Cir. 1984) (en banc).

3          Debtor's statements are not irrelevant; quite the contrary, they contest Zions'

4    contentions. Zions claims in its objection that Debtor's conduct is fraudulent or dilatory in

5    relation to his claimed homestead exemption. Debtor contests this in his declaration,

6    indicating he had motives other than evasion of creditors when he purchased the San Jose

7    Property. Debtor's first statement says he had no such intent when he came to California,

8    which in turn makes it at least somewhat more likely that he also did not have that intent

9    when he bought the San Jose Property. As for the second statement, part of Debtor's

10    opposition argues he did not "dispose of" non-exempt property to pay for the San Jose

11    Property because pledging equity as security for a loan is not a "disposal." This statement

12    makes it more likely he in fact pledged equity as security for the loan proceeds that partially

13    paid for the San Jose Property, and that fact is of consequence for Zions' § 522(o) claim.

14          Zions next argues certain statements lack foundation: (1) Debtor's statement that he

15    purchased the San Jose Property in August 2020 for $3,030,000[5]; (2) Debtor statement that

16    the funds for the San Jose Property down payment came from his salary bonus and from a

17    loan secured by the Canadian Properties; (3) Debtor's statement that he used part of his

18    salary bonus to pay off a junior lien on the Canadian Properties which had become due;

19    (4) Debtor's statement that he obtained a new loan of $435,000 on the Canadian Properties

20    after paying off the junior lien; (5) Debtor's statement that he combined loan proceeds with

21    the rest of his salary bonus to make the $705,000 down payment on the San Jose Property;

22    and (6) Debtor's statement that he and the trustee reached the Exemption Settlement after

23    the trustee got a $3,275,000 valuation opinion for the San Jose Property from a local realtor.

24          Foundation is defined by Federal Rule of Evidence 602, which says: "A witness may

25    testify to a matter only if evidence is introduced sufficient to support a finding that the

---

[5] Zions also argues this misstates the record, as the San Jose Property was originally titled in Lions Properties' name. It is unclear how this is relevant to a lack of foundation evidentiary objection.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION          4/29

*(left margin, rotated)* UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    witness has personal knowledge of the matter. Evidence to prove personal knowledge may

2    consist of the witness's own testimony."

3        The statements do not lack foundation in the main. Debtor has personal knowledge

4    of the events described in the first four statements because, as his own testimony makes

5    clear, he was the one who caused those events to occur. Zions appears to argue the fifth

6    statement lacks foundation because it was actually Lions Properties who bought the San Jose

7    Property, not Debtor. Assuming that is true, Debtor, along with his wife, are 100% owners

8    of Lions Properties; I can infer from this that Debtor acted as Lions Properties' agent in this

9    transaction, giving him personal knowledge of the events. *See United States v. Thompson*, 559

10   F.2d 552, 554 (9th Cir. 1977) (holding a witness restaurant manager had personal knowledge

11   of company procedures on account of such witness's position in the company).

12       I agree with Zions that Debtor has not shown he has personal knowledge of the

13   events described in the sixth statement. Accordingly, this statement must be excluded, and I

14   decline to rule on the other objections to that statement.

15       Finally, Zions makes best evidence objections to: (1) Debtor's statement that he used

16   part of his salary bonus to pay off a junior lien on the Canadian Properties that had become

17   due; (2) Debtor's statement that he obtained a new loan of $435,000[6] on the Canadian

18   Properties after paying off the junior lien; and (3) Debtor's statement that he combined loan

19   proceeds with the rest of his salary bonus to make the $705,000 down payment on the San

20   Jose Property.

21       People often think the best evidence rule is aptly named. I would argue that is not

22   necessarily so. The rule does not require, as its name suggests, that a party must produce the

23   best *quality* evidence of a fact. Rather, "The best evidence rule provides that the original of a

24   writing, recording, or photograph is required to prove the contents thereof." *United States v.*

25   *Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (quoting Fed. R. Evid. 1002). "The rule's

26   ─────────────

27       [6] This statement arguably tries to prove the contents of the loan documents, as the
     actual amount borrowed may be in dispute. But that is at best ancillary to Debtor's main

28   purpose, which is describing *why the timing of this loan is not fraudulent.*

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    5/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1 application turns on 'whether contents are sought to be proved.' Fed. R. Evid. 1002
2 Advisory Committee's note. '[A]n event may be proved by nondocumentary evidence, even
3 though a written record of it was made.'" *Id.* Documentary evidence likely exists for each of
4 the events described in these statements.

5     Debtor is not required to produce documentary evidence in this situation. He is not
6 seeking to prove the contents of documents. The purpose of these statements is to show
7 that he paid off the Canadian Properties' junior lien as it became due; that the timing of the
8 new loan he took out on the Canadian Properties was based on the old loan becoming due,
9 not because of an impending bankruptcy; and that he used certain specific property to make
10 the down payment on the San Jose Property. These are simply statements by Debtor
11 pertaining to a transaction he participated in. He may not have the facts and figures right, a
12 point that Zions can establish with relative ease. But none of these statements are meant to
13 prove the contents of the documents used to record each of these events, so Zions'
14 objections to them must be overruled.

15     B.    Zions' Objection was Timely

16     Debtor's opposition first argues that, because Zions failed to deliver or mail its
17 objection to Debtor's homestead exemption to Debtor personally within the 30-day period
18 set by Bankruptcy Rule 4003, the objection is untimely and must be overruled. Although a
19 close question, I disagree with Debtor and conclude Zions' objection was timely.

20     The first meeting of creditors in this case was concluded on February 23, 2021. Thirty
21 days from that date is March 25, 2021, when Zions filed its objection to Debtor's homestead
22 exemption. ECF 74. Zions' certificate of service states the objection was served on Debtor's
23 counsel, but not Debtor. ECF 74-2. Zions set that objection for hearing on May 4, 2021,
24 giving due notice. On April 27, 2021, Debtor filed his Response to Objection to Homestead
25 Exemption filed by Zions Bancorporation, N.A. ECF-106. He argued that Bankruptcy Rule
26 4003(b)(4) requires that an objection be served on both debtor and debtor's counsel and it
27 was not served Debtor. Zions immediately sought a continuance of the May 4, 2021 hearing,

28

1    ECF-109, which the court granted on April 29, 2021. ECF-110. Zions served a copy of the

2    objection on Debtor the same day that order was docketed.

3        Like much of this case, this dispute is complicated. Section 522(l) requires a debtor

4    "file a list of property that the debtor claims as exempt under subsection (b) of this section."

5    In turn, Bankruptcy Rule 4003(b)(1) allows a party in interest to "file an objection to the list

6    of property claimed as exempt within 30 days after the meeting of creditors held under

7    § 341(a) is concluded or within 30 days after any amendment to the list or supplemental

8    schedules is filed, whichever is later." Bankruptcy courts may extend that deadline for cause

9    "if, before the time to object expires, a party in interest files a request for an extension." *Id.*

10    The means of service are also stated: "A copy of any objection shall be delivered or mailed

11    to the trustee, the debtor and the debtor's attorney, and the person filing the list and that

12    person's attorney." Bankruptcy Rule 4003(b)(4).

13        The deadline for exemption objections is also found in this rule. "Rule 4003(b) gives

14    the trustee and creditors 30 days from the initial creditors' meeting to object. By negative

15    implication, the Rule indicates that creditors may not object after 30 days 'unless, within such

16    period, further time is granted by the court.'" *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643

17    (1992). If no one timely objects to an exemption, and the bankruptcy court does not extend

18    the objection period, § 522(l) makes the claimed property exempt, even if the debtor has no

19    "colorable statutory basis for claiming it." *Freeland & Kronz,* 503 U.S. at 643–44.

20        Debtor cites *In re Bush,* 346 B.R. 523 (Bankr. E.D. Wash. 2006), in support of his

21    timeliness argument. In *Bush,* the bankruptcy court admitted that Bankruptcy Rule 4003(b)

22    does not explicitly set a deadline for serving the objection on Debtor personally. The *Bush*

23    court then reasoned that there were two ways to resolve this issue: (1) require the objector to

24    deliver or mail a copy of the objection "within a reasonable period of time"; or (2) require

25    the objector deliver or mail a copy of the objection within the same period required for filing

26    it. *Bush,* 346 B.R. at 526. The court concluded the second resolution better served the Rule's

27    purpose of "provid[ing] the debtor with timely notice that the trustee or other interested

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                  7/29

1    party objects to the debtor's claimed exemption." *Id.* (quoting *In re Spenler*, 212 B.R. 625, 630

2    (B.A.P. 9th Cir. 1997)). Allowing a flexible deadline would in fact hinder the timeliness of

3    notice, as such "notice is accomplished by serving the objection, not by filing it." *Bush*, 346

4    B.R. at 526. Also relevant were cases holding that a court cannot extend the 30-day period

5    for filing objections when "the court failed to rule on a timely motion to extend before the

6    expiration of the period," *id.* at 528 (citing *In re Laurain*, 113 F.3d 595 (6th Cir. 1997); *Matter*

7    *of Stoulig*, 45 F.3d 957 (5th Cir. 1995))[7], and the Supreme Court's decision in *Freeland &*

8    *Kronz*, 503 U.S. at 644, which held the effect of failing to timely object to a claim of

9    exemptions is such exemptions are upheld, even if there is "no colorable statutory basis for

10   claiming" them. *Bush* concluded these cases supported a strict construction of Bankruptcy

11   Rule 4003, "based upon the policy of finality for the parties with respect to the property

12   claimed as exempt." *Bush*, 346 B.R. at 528.

13        Zions points to *In re Fisher*, 63 B.R. 649 (Bankr. W.D. Ky. 1986), as providing a better

14   interpretation of Bankruptcy Rule 4003. In *Fisher*, the bankruptcy court rejected part of the

15   argument Debtor makes here – that an exemption objection must be delivered or mailed to

16   both the debtor and his attorney – this way: "Service on the debtor's attorney was obviously

17   sufficient to give the debtor notice of the objections. [Bankruptcy] Rule 4003(b) states that

18   copies of the objections shall be delivered or mailed to the trustee and to the person filing

19   the list and his attorney. Reading this language literally and carried to the extreme, one could

20   conclude that 'the person filing the list' means someone from the attorney's office who

21   *physically* filed the same. We decline to read the Rule so literally as to mandatorily require

22   service on both the debtor and his attorney." The *Fisher* court seems to have concluded that

23   interpreting Bankruptcy Rule 4003(d)(4) to mean what it says – that both the debtor and the

24

25        [7] These cases were later superseded by amendments to Bankruptcy Rule 4003 in

26   2000, allowing courts to "to grant a timely request for an extension of time to file objections
     to the list of claimed exemptions, whether the court rules on the request before or after the

27   expiration of the 30-day period." The Advisory Committee made clear this amendment was
     in response to the holdings of cases like *Laurain* and *Stoulig*.

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
     TO DEBTOR'S HOMESTEAD EXEMPTION                                        8/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   debtor's counsel must receive a copy of the objection by mail or delivery – would be an

2   overly literal construction of the Rule.

3          While *Bush* is well-considered, I will not follow it.[8] Critically, the rule itself does not

4   command me to disregard the objection, as the *Bush* court did. Bankruptcy Rule 4003(b)(3)

5   specifies that an objection must be filed within 30 days. If it is not filed, it is untimely. Thus,

6   the deadline for filing an objection is found in paragraph (3). The rule further specifies that

7   "a copy of any objection shall be delivered or mailed to the trustee, the debtor, and the

8   debtor's attorney . . . ." Bankruptcy Rule 4003(b)(4). The service of an objection is addressed

9   in paragraph (4), and there is no stated deadline. *Bush* is right that a natural inference is that

10  the filing and service of the objection should be coincident, as paragraph (3) states. But

11  paragraph (4) does not say so explicitly and I do not see a reason to establish a hard and fast

12  rule as *Bush* did in the absence of such language.

13         Moreover, I find two more general principles to be worthy of consideration. First,

14  generally speaking, notice in bankruptcy is a flexible concept properly tailored to the

15  circumstances presented. *In re Tennant,* 318 B.R. 860, 871-72 (B.A.P. 9th Cir. 2004); *In re*

16  *Krueger,* 88 B.R. 23, 241 (B.A.P. 9th Cir. 1988). Looking at the docket, it appears a timely

17  objection was filed to Debtor's claimed homestead exemption and that Debtor's counsel was

18  notified. Debtor later filed an objection to the initial hearing date stating that he was not

19  personally served, presumably because he received that notice. Realizing the oversight,

20  Zions' counsel immediately sought a continuance of the hearing and served Debtor with the

21  objection. I find nothing untoward about that process because, in the end, Debtor had due

22

23  _____

24         [8] As an aside, I reject Zions' argument that Bush rule, even if correct, cannot allow
    me to summarily overrule its objection, calling this result "arbitrary and bizarrely
25  draconian[.]" ECF 153, p. 20. In *Taylor v. Freeland & Kronz,* 503 U.S. 638, 643–44 (1992), the
    Supreme Court held that a party in interest cannot object to debtor's claim of exemption
26  after Bankruptcy Rule 4003(b)(1)'s deadline has passed, even if the debtor has no "colorable
    statutory basis for claiming it." The Supreme Court's holding in *Freeland & Kronz* creates
27  results that are at least as arbitrary as those urged here.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                   9/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  notice of the objection and hearing date and filed a timely and comprehensive response.

2  More is not necessary, at least under the current version of Bankruptcy Rule 4003.

3        I also conclude that getting to the substance of a dispute is preferable to reaching a

4  decision by default, which is one reading of Debtor's argument. As the Ninth Circuit said in

5  affirming a district judge's refusal to enter a default judgment: "Our starting point is the

6  general rule that default judgments are ordinarily disfavored. Cases should be decided upon

7  their merits whenever reasonably possible." *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir.

8  1986) (citing *Pena v. Seguaros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985)). In this

9  matter, the parties contest Debtor's right to a homestead exemption and have filed extensive

10  briefing on the point. Getting to the bottom of those disputes is the right thing to do.

11        C.        Burden of Proof

12        The burden of proof in an exemption objection is on the party objecting to the

13  claimed exemption under Bankruptcy Rule 4003(c), which says the party bringing a claim

14  objection bears "the burden of proving that the exemptions are not properly claimed." But I

15  note that in *In re Diaz,* 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016), the BAP reasoned that the

16  Supreme Court's decision in *Raleigh v. Illinois Department of Revenue,* 530 U.S. 15 (2000),

17  requires that "where a state law exemption statute specifically allocates the burden of proof

18  to the debtor, Bankruptcy Rule 4003(c) does not change that allocation." C.C.P. § 703.580(b)

19  allocates the burden of proof at a hearing on a claim of exemption to the exemption

20  claimant. In turn, C.C.P. § 704.780(a)(1) allocates the burden of proof at a hearing on a

21  homestead exemption claim on the claimant unless "the records of the county tax assessor

22  indicate that there is a current homeowner's exemption . . . for the dwelling claimed by the"

23  debtor; in that instance, "the judgment creditor has the burden of proof that the dwelling is

24  not a homestead." The BAP in *Diaz* held these provisions showed that "California has

25  mandated the use of state exemptions in bankruptcy and has placed the burden of proof on

26  the party claiming the exemption." 547 B.R. at 337 (citations omitted).

27

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                    10/29

1     I conclude *Diaz* does not apply to Zions' objections. The trustee's objection in *Diaz*

2   was that the debtor's homestead exemption was improper because he did not reside in the

3   property on the date he filed his bankruptcy case. That is, the objection argued the debtor

4   was not entitled to his claimed exemption under State law. But the objections here do not

5   challenge Debtor's entitlement to a homestead under State law. They argue such exemption

6   should be limited or barred entirely under §§ 522(o) and (p). Since Zions' objections arise

7   from Federal limitations on State exemptions, Bankruptcy Rule 4003(c) provides the relevant

8   burden of proof here, not State law. *See In re Fehmel*, 372 Fed. App'x. 507, 511 (5th Cir. 2010)

9   (Applying Bankruptcy Rule 4003(c) to a § 522(p) objection); *In re Wilcut*, 472 B.R. 88, 92

10   (B.A.P. 10th Cir. 2012) (applying Bankruptcy Rule 4003(c) to a § 522(o) objection).

11     In the Ninth Circuit, Bankruptcy Rule 4003(c)'s burden of proof works as follows:

12   "A claimed exemption is presumptively valid . . . . Once an exemption has been claimed, it is

13   the objecting party's burden . . . to prove that the exemption is not properly claimed.

14   Initially, this means that the objecting party has the burden of production and the burden of

15   persuasion. The objecting party must produce evidence to rebut the presumptively valid

16   exemption. If the objecting party can produce evidence to rebut the exemption, the burden

17   of production then shifts to the debtor to come forward with unequivocal evidence to

18   demonstrate that the exemption is proper. The burden of persuasion, however, always

19   remains with the objecting party." *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)

20   (internal citations and quotation marks omitted). I will apply this framework to Zions'

21   objections under both § 522(o) and (p).

22          D.    Zions' § 522(p) Objection Must be Sustained

23                1.    *Section 522(p) Applies Here*

24     Section 522(p)(1)(A) says that, "as a result of electing under subsection (b)(3)(A) to

25   exempt property under State or local law, a debtor may not exempt any amount of interest

26   that was acquired by the debtor during the 1215-day period preceding the date of the filing

27   of the petition that exceeds in the aggregate $125,000 in value in real [] property that the

28
ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                          11/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  debtor . . . uses as a residence[.]" Understanding this provision requires some discussion of

2  how exemptions work under the Code.

3        The Code's exemption framework is as follows: Section 522(l) requires a debtor "file

4  a list of property that the debtor claims as exempt under subsection (b) of this section."

5  Section 522(b)(1) allows an individual debtor to "exempt from property of the estate the

6  property listed in either paragraph (2) or, in the alternative, paragraph (3) of" § 522(b).

7  Section 522(b)(2) says "property listed in" that subsection means the property exemptions

8  provided in § 522(d), "unless the State law that is applicable to the debtor under paragraph

9  (3)(A) specifically does not so authorize."[9] And § 522(b)(3), subject to §§ 522(o) and (p),

10  defines "property listed in" that subsection to mean "any property that is exempt under

11  Federal law, other than subsection (d) of this section, or State or local law that is applicable

12  on the date of the filing of the petition[.]" To summarize: a debtor is required to file a list of

13  property he claims as exempt. A debtor can claim the exemptions described in either

14  §§ 522(b)(2) or (3). But if applicable State law explicitly disallows the exemptions provided in

15  § 522(d), then § 522(b)(2) essentially provides the debtor no valid exemptions.

16        Courts are split on the meaning of § 522(p) limiting a debtor's claim of exemption "as

17  a result of electing under subsection (b)(3)(A) to exempt property under State or local law"

18  when a State has opted out of the federal exemption scheme. One interpretation is that "the

19  bankruptcy exemptions of § 522(d) may not be elected by a debtor if the applicable state law

20  specifically does not so authorize. This effectively permits states to 'opt out' of the

21  Bankruptcy Code's exemptions, and as noted above [California] is an opt-out state.

22  Consequently in [California], a debtor does not get to 'elect' state exemptions. Rather, they

23  are the only exemptions available to a debtor, so there is no election to be made." *In re*

24  *Mcnabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005). Because § 522(p) only applies "as a result

25  of electing under subsection (b)(3)(A) to exempt property under State or local law," and a

26  

27       [9] C.C.P. § 703.130 makes clear that the exemptions in § 522(d) "are not authorized

28  in" California.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION             12/29

state's decision to opt out of § 522(d) prohibits a debtor from electing such exemptions, a debtor in such a state cannot make an election, so § 522(p) does not apply. *Mcnabb* also pointed to § 522(o) which, instead of using § 522(p)'s election language, states it applies "[f]or purposes of subsection (b)(3)(A)[.]" "If Congress had similarly intended the $125,000 cap found in § 522(p) to apply across the board, it would presumably have used the identical language: 'For purposes of subsection (b)(3)(A), a debtor may not exempt any amount' that was acquired during 1,215 days prepetition. There would have been no need to refer to an election at all. This striking difference between the language of § 522(o) and § 522(p) must have been intended to effect a difference in result. The somewhat convoluted language of § 522(p) must have been intended to impose a condition beyond that of the far simpler language of § 522(o)." *Mcnabb*, 326 B.R. at 790 (citations and footnote omitted).

*Mcnabb* also pointed to § 522(q)(1), which also applies "[a]s a result of electing under subsection (b)(3)(A) to exempt property under State or local law[.]" That subsection bars a debtor from exempting more than $125,000 "if he has been convicted of a felony or owes a debt arising from securities fraud, breach of fiduciary duty, etc." *Mcnabb*, 326 B.R. at 790. The court found "special significance" in how this provision interacts with § 727(a)(12). That provision requires a court deny a discharge if "finds that there is reasonable cause to believe that § 522(q)(1) may be applicable to the debtor; and there is pending any proceeding in which the debtor may be found guilty of a felony of the kind described in section 522(q)(1)(A)[.]" § 727(a)(12)(A)–(B). In the court's view, "[s]ubparagraph A of § 727(a)(12) necessarily implies that § 522(q)(1) 'may be applicable' to some debtors and not to others, because such applicability is a discrete finding the court is required to make. Subparagraph B of § 727(a)(12) necessarily implies that the determination under (A)—whether § 522(q)(1) may be applicable to the debtor—is something separate and distinct from the finding that there is pending a proceeding in which the debtor may be found guilty of a felony or liable for a debt of the kind described there. What would make § 522(q)(1) applicable, or not applicable, to a debtor *other than* the pendency of such a proceeding? Other the pendency of

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1 such a proceeding, the only other factor that could determine whether § 522(q)(1) 'may be

2 applicable' to a debtor is whether a debtor elects to claim state exemptions. A court would

3 not need a hearing to find reasonable cause to believe that a debtor has elected state

4 exemptions in states where no such election is available." *Mcnabb*, 326 B.R. at 790.

5       The other approach concludes that, while an "election may become ineffective if the

6 debtor chooses a federal exemption in an opt-out state, [] the debtor nonetheless makes an

7 'election' within the meaning of the statute." *In re Virissimo*, 332 B.R. 201, 205 (Bankr. D.

8 Nev. 2005). The court reasoned as follows: "Under [] § 541 all property is property of the

9 estate. If the debtor wishes to exempt property he must engage in an act to do so. [] § 522(l).

10 Pursuant to § 522(b)(1), he may elect to choose property listed in [] § 522(b)(2) or (b)(3)."

11 *Virissimo*, 332 B.R. at 205. "Given the language of the statute, the debtor makes an election

12 as to whether to exempt property and whether to use paragraph (b)(2) or paragraph (b)(3). If

13 he 'elects' paragraph (b)(2) in [California], or any other opt-out state, and if a party timely

14 objects, then he is denied the exemption. But conversely, as the United States Supreme

15 Court has held in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), if a party does not timely

16 object to a claimed objection, the property is exempt even if there is no basis for the

17 claiming of that exemption. Similarly, if the debtor fails to choose any exemptions, no

18 property is exempted." *Virissimo*, 33 B.R. at 205–06. The court also noted that Congress

19 could have avoided this result by rewording § 522(p) to say: "'A debtor shall receive

20 exemptions set forth under subsection (d) unless the state law does not permit such

21 exemptions to be used. If a state does not permit a debtor to use such exemptions, the

22 debtor shall receive the exemptions provided under the laws of that state.' With that

23 language there is no election and a debtor automatically receives state exemptions but not

24 the exemptions under § 522(d)." *Virissimo*, 33 B.R. at 206.

25       *Virissimo* alternatively concluded that, if one considered § 522(p) to be ambiguous, the

26 legislative history of this provision supports applying it to states that have opted out of the

27 § 522(d) exemption scheme. In its own words: "Nowhere is there a suggestion that the

28

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION          14/29

1   $125,000 homestead limitation is applicable to debtors in some states but not to debtors in

2   other states. Rather, it is obvious that Congress intended to eliminate some of anomalies

3   created by the use of state homestead exemptions and create a more uniform, predictable set

4   of exemptions. Congress wanted to close what it perceived was the abuse of exemptions

5   caused, in part, by the varying state laws and overly generous homesteads." 332 B.R. at 207.

6   The Bankruptcy Appellate Panel appears to have adopted the *Virissimo* court's view, though

7   the Panel did not explain its reasoning for doing so. *See In re Caldwell*, 545 B.R. 605, 609

8   (B.A.P. 9th Cir. 2016) ("Section 522(p)(1) imposes a limitation on the homestead exemption

9   a debtor can claim regardless of the applicable state law exemptions.") (citing *In re Kane*, 336

10  B.R. 477, 481 (Bankr. D. Nev. 2006); *Virissimo*, 332 B.R. at 207).

11          I conclude § 522(p)(1) applies even where State law opts out of the exemptions given

12  in § 522(d). Section 522(l) requires the debtor to list the exemptions he claims. Another way

13  of saying this is that a debtor is required to state in writing which exemptions he is electing

14  to claim. It is true that California, by opting out of § 522(d), causes § 522(b)(2) to list no

15  property as exempt. But as *Virissimo* noted, a debtor could still claim exemptions under

16  § 522(d), and such exemptions would be allowed unless someone timely objected. *See Taylor*

17  *v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (holding that invalid claims of exemption

18  still result in such property being exempt unless someone timely object under Bankruptcy

19  Rule 4003(b)). *Mcnabb*'s reasoning is essentially that a state opting out of § 522(d) precludes a

20  debtor from electing those exemptions, and the resulting choice between State exemptions

21  under § 522(b)(3) or no exemptions cannot be construed as an election at all. The first

22  problem with this reasoning is it adds an additional question – not just whether an election

23  happened, but whether it was effective – into a provision that does not expressly ask for it.

24  But more importantly, the Supreme Court's decision in *Freeland & Kronz* makes clear that a

25  debtor *could* make an effective election of § 522(d)'s exemptions in a state that has opted out

26  of them, unless someone timely objects. So even if the effectiveness of a debtor's election

27

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                          15/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1 matters under § 522(p), a state opting out of federal exemptions does not necessarily bar a

2 debtor-resident of such a state from electing such exemptions.

3     The majority of courts that have decided this issue have done so in accordance with

4 *Virissimo*, not *Mcnabb*, including the BAP. And my own analysis of § 522(p) leads me to

5 conclude that *Virissimo* provides the correct rule. Accordingly, § 522(p) applies to Debtor's

6 homestead exemption. I determine the effect of § 522(p) on Debtor's exemption next.

7          2.    *§ 522(p) Limits Debtor's Homestead Exemption to $170,350*

8     Again, § 522(p)(1)(D) says "a debtor may not exempt any amount of interest that was

9 acquired by the debtor during the 1215-day period preceding the date of the filing of the

10 petition that exceeds in the aggregate $125,000[10] in value in real [] property that the debtor

11 or a dependent of the debtor claims as a homestead." Courts look to state law first to decide

12 what property interests a debtor acquired in a given transaction, "and then to [§] 522(p)(1) to

13 determine whether that [interest] qualifies as an 'any amount of interest that was acquired'

14 within the compass of [§] 522(p). *In re Greene*, 583 F.3d 614, 620 (9th Cir. 2009).

15     "California defines a homestead as a dwelling where a person resides." *In re Schaefers*,

16 623 B.R. 777, 782 (B.A.P. 9th Cir. 2020) (citing Cal. Code Civ. Proc. §§ 704.710(a), (c)).

17 "Californians may, therefore, claim a homestead exemption without holding a fee simple

18 interest in the subject real property. Even so, they must have *some* legal or equitable interest

19 in the real property." *Schaefers*, 623 B.R. at 782–83 (citations omitted). "[U]nder California

20 law a limited liability company is a separate and distinct legal entity from its owners or

21 members." *Id.* at 783 (citing *Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 220–21 (2017)).

22 "Consequently, limited liability company members have no interest in the company's assets."

23 *Schaefers*, 623 B.R. at 783 (citing *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958,

24 963 & n.21 (9th Cir. 2002)). In *Schaefers*, the BAP held that a debtor who failed to identify a

25

26

27     [10] This amount is regularly adjusted to reflect changing economics. Currently the

28 amount is $170,350.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION           16/29

beneficial or equitable interest in real property held by an LLC could not claim a homestead exemption in such property because his interest in the LLC was not a homestead.

In *Greene*, the Ninth Circuit used the Black's Law Dictionary definition of "acquire" to interpret § 522(p): "[t]o gain possession or control of; to get or obtain." 583 F.3d 614, 623 (9th Cir. 2009). Because Debtor and Lions Properties are separate entities, Debtor did not gain possession or control of the San Jose Property until it was quitclaimed to Debtor the day before he filed this bankruptcy case. So to the extent the San Jose Property appreciated in value between the date of purchase and the date Lions Properties transferred it to Debtor, he "acquired" such appreciation in the transfer, making that appreciation subject to § 522(p).

As for any post-petition appreciation: "A debtor's exemptions have long been fixed at the date of the filing of the bankruptcy petition. This rule determines not only what exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her exemptions." *Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018) (cleaned up). So assuming that trustee's valuation of the San Jose Property is correct, that post-petition appreciation accrues to the bankruptcy estate, and cannot be claimed as exempt by Debtor. *See* § 541(a)(1) ("The commencement of a [bankruptcy case] . . . creates an estate. Such estate is comprised of," among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case.").

Debtor fails to show what interest he had in the San Jose Property when it was held by Lions Properties, so I find he had none. As Lions Properties did not transfer the San Jose Property to Debtor until the day before he filed this bankruptcy case, he acquired any pre-petition appreciation on that date, making such appreciation subject to § 522(p). And any post-petition appreciation is the property of the bankruptcy estate. I conclude that Zions is correct, and § 522(p) requires that Debtor's homestead exemption in the San Jose Property must be limited to $170,350.

<div style="writing-mode: vertical-rl">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

<p style="text-align: center; writing-mode: vertical-rl;">UNITED STATES BANKRUPTCY COURT<br>NORTHERN DISTRICT OF CALIFORNIA</p>

E.   § 522(o) Limits Exemptions Otherwise Available but does not Apply on the Facts of this Case

1.   *Exemption Planning is Permitted in General but § 522(o) Changes Things*

In this circuit, debtors like Kane are permitted to maximize their exemptions when contemplating a bankruptcy filing. The courts more or less uniformly conclude that the conversion by a consumer of non-exempt property into exempt property on the eve of bankruptcy alone does not mean a debtor must be denied such exemptions. *In re Stern*, 345 F.3d 1036, 1044-45 (9th Cir. 2003); *Wudrick v. Clements*, 451 F.2d 988, 989-90 (9th Cir. 1971); *In re Beverly*, 374 B.R. 221, 241 (B.A.P. 9th Cir. 2007). But courts have acknowledged that Congress has the power to legislate otherwise and change that result. *In re Lacounte,* 342 B.R. 809, 814 (Bankr. D. Mont. 2005). One such provision is § 522(o). It states:

>  (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in--
>
>   (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
>
>   (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
>
>   (3) a burial plot for the debtor or a dependent of the debtor; or
>
>   (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

Courts have developed a standard to use when evaluating claims a debtor has violated § 522(o): "To prevail, a creditor or trustee must show: (a) an increase in the value of the debtor's homestead; (b) that the increase was 'attributable' to the disposition of nonexempt assets; (c) that the disposition of the nonexempt assets was made with the intent to hinder, delay, or defraud a creditor; and (d) that the disposition occurred during the ten-year period

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                    18/29

1    ending on the date the debtor's bankruptcy petition was filed." *In re Stanton*, 457 B.R. 80, 91

2    (Bankr. D. Nev. 2011).[11] Some courts use a variant of this test, but they are not materially

3    different. *In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007) (citing *In re Sissom*, 366 B.R.

4    677, 688 (Bankr. S.D. Tex. 2007)); *In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012).

5        The dispute in this case centers on whether Debtor "disposed of" property in his

6    acquisition of the San Jose Property. Zions contends that Debtor "disposed of" nonexempt

7    assets to purchase a homestead by taking a $600,000 loan secured by junior liens on the

8    Canadian Properties, and by using the proceed from that loan as a partial down payment on

9    the San Jose Property. Debtor disagrees and argues he had no equity in the Canadian

10    Properties until he paid off a second deed of trust with some of his 2020 salary bonus, which

11    he only did because the loan became due, requiring a balloon payment. More critically, in

12    Debtor's view, that borrowing did not involve disposing of non-exempt assets.

13        2.      *Decisions Interpreting "Dispose of" Under § 522(o)*

14        Case law addressing precisely whether property has been "disposed of" within the

15    meaning of the statute is hard to come by. Reviewing the case law, I find several types of

16    cases. The first involves actual dispositions of assets – including real property, *In re Craig*,

17    2012 WL 6645692 (Bankr. D. Mont. Dec. 20, 2012), construction equipment, *In re Wilmoth*,

18    397 B.R. 915, 917 (B.A.P. 8th Cir. 2008), stock in a small company, *In re Sissom*, 366 B.R.

19    677, 689 (Bankr. S.D. Tex. 2007), coin collections, *In re Crabtree*, 562 B.R. 749, 751 (B.A.P.

20    8th Cir. 2017), trucks and trailers, *In re Maronde*, 332 B.R. 593, 597 (Bankr. D. Minn. 2005),

21

22       [11] Debtor argues this test is in conflict with *In re Stern*, 345 F.3d 1036, 1043 (9th Cir.

23    2003), which reiterated that "'that the purposeful conversion of nonexempt assets to exempt assets on the eve of bankruptcy is not fraudulent per se.'" (quoting *Wudrick v. Clements*, 451

24    F.2d 988 (9th Cir. 1971)). Assuming that is true, the problem for Debtor is that § 522(o) was added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection

25    Act, which was passed in 2005, after *Stern* was decided. At least one bankruptcy court in this

26    circuit has concluded that § 522(o) "was obviously added to the Bankruptcy Code by Congress to curb a perceived abuse by debtors of" *Stern*'s allowance of pre-bankruptcy

27    planning. *In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005). I decline to decide this issue, as I conclude there are other grounds for denying Zions' § 522(o) claim.

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION           19/29

boats, *In re Roberts*, 527 B.R. 461, 471 (Bankr. N.D. Fla. 2015), liquor licenses and a business enterprise, *In re Halinga*, 2013 WL 6199152 (Bankr. D. Id. Nov. 27, 2013).

A second type of case involves, as here, a borrowing against property and use of funds to acquire exempt property. Here, one might argue that the borrowing against the Canadian Property was a sale of Debtor's equity in the property for cash, and later use of cash to purchase the Residence. The Fifth Circuit faced similar facts in *In re Cipolla*, 476 Fed. App'x. 301, 305 (5th Cir. 2012). Cipolla, the debtor, borrowed against non-exempt real property and used the funds to purchase an exempt homestead in Texas, much like Debtor did. But the *Cipolla* court never actually analyzed whether this qualified as a disposition, apparently because the parties did not contest it. The Fifth Circuit referred to the transaction using varying nomenclature, including sometimes referring to it as a "transfer."

Some courts have determined that the use of borrowed funds to acquire exempt property or pay down a debt on exempt property may be barred by § 522(o). *See In re Keck*, 363 B.R. 193, 208-09 (Bankr. D. Kan. 2007) (cash advances used to pay home equity line); *In re Wallwork*, 616 B.R. 395, 406 (Bankr. D. Idaho 2020)(credit card advances used to improve home, but not applying § 522(o) due to lack of intent to defraud). The trouble is the courts that have so held did not fully analyze the first part of the statute, which requires a disposition. In these cases, the courts either assume the existence of a disposition without any real analysis or the parties have not argued the point. The absence of analysis on what a "disposition" precisely is leads me to find their conclusions unpersuasive.

Somewhat surprisingly, some cases have held that the use of non-exempt cash reserves to acquire exempt assets can run afoul of § 522(o). These seem to be the facts in *In re Addison*, 540 F.3d 805, 813-14 (8th Cir. 2008) (concluding use of funds in brokerage and savings account to pay down mortgage balance qualified under § 522(o) as "conversion" but finding no extrinsic evidence of fraudulent intent). But we know that in the Ninth Circuit, absent § 522(o), exemption planning is not categorically barred. We also know that the statute requires a disposition. If this line of thinking is correct and every use of non-exempt cash to

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

<div style="float:left; writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

1  acquire exempt assets is barred, I would have to conclude that § 522(o) overrules all Ninth

2  Circuit authority on exemption planning.

3       One could make a case that Congress itself, in enacting § 522(o) meant to catch a

4  broad range of transactions under that provision. The Report of the Committee on the

5  Judiciary House of Representatives described BAPCPA's addition to § 522 in this fashion:

6       Sec. 308. Reduction of Homestead Exemption for Fraud.

7       Section 308 amends section 522 of the Bankruptcy Code to
   reduce the value of a debtor's interest in the following property
8       that may be claimed as exempt under certain circumstances: (i)
   real or personal property that the debtor or a dependent of the
9       debtor uses as a residence, (ii) a cooperative that owns property
   that the debtor or a dependent of the debtor uses as a residence,
10      (iii) a burial plot, or (iv) real or personal property that the debtor
   or dependent of the debtor claims as a homestead. Where
11      nonexempt property is converted to the above-specified exempt
   property within the ten-year period preceding the filing of the
12      bankruptcy case, the exemption must be reduced to the extent
   such value was acquired with the intent to hinder, delay or
13      defraud a creditor.

14 H.R. Report No. 109-31, pt. 1, at p. 72 (2005). The trouble is, the statute as proposed and

15 enacted consistently used the term "disposed of." It never strayed into other terms like

16 "converted" or "transferred" or any other such term. In my view, this means I must find the

17 challenged transaction was actually a disposition, and not any number of other transactions

18 that fall under the broad umbrella of "transfer."

19      3.    *The Bankruptcy Code Refers to the Term "Disposed of" and this Uniformly*

20               *Means Divestment of Ownership or the Rights of Ownership*

21      Finding little concrete guidance in the case law, it is worth looking harder at the

22 Bankruptcy Code itself to tease out a definition for "disposing of" property. The Ninth

23 Circuit has held under ordinary statutory interpretation rules, statutes are interpreted "as a

24 whole, giving effect to each word and making every effort not to interpret a provision in a

25 manner that renders other provisions of the same statute inconsistent, meaningless or

26 superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (citing

27 Sutherland Stat. Const. §§ 46.05, 46.06 (4th ed.1984); *Aluminum Co. of Am. v. Bonneville Power*

28 ORDER ON ZIONS BANCORPORATION'S OBJECTION
   TO DEBTOR'S HOMESTEAD EXEMPTION      21/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  *Admin.*, 891 F.2d 748, 755 (9th Cir.1989)). The Ninth Circuit has also held that "[w]e must

2  presume that words used more than once in the same statute have the same meaning." *Boise*

3  *Cascade*, 942 F.3d at 1432 (citing Sutherland Stat Const. § 46.06). So, where do these words

4  appear in the Bankruptcy Code and what does that tell us?

5      Section 559, which addresses the liquidation of repo participations, provides in part:

6           In the event that a repo participant or financial participant
7           liquidates one or more repurchase agreements with a debtor and
            under the terms of one or more such agreements has agreed to
8           deliver assets subject to repurchase agreements to the debtor,
            any excess of the market prices received on liquidation of such
9           assets (or if any such assets are not <u>disposed of</u> on the date of
            liquidation of such repurchase agreements, at the prices
10          available at the time of liquidation of such repurchase
            agreements from a generally recognized source or the most
11          recent closing bid quotation from such a source) over the sum
            of the stated repurchase prices and all expenses in connection
12          with the liquidation of such repurchase agreements shall be
            deemed property of the estate, subject to the available rights of
            setoff.

13  § 559 (emphasis added). In discussion this section, Collier makes clear it is intended to allow

14  non-breaching parties to close out or liquidate their investments by terminating the

15  agreement and fixing damage claims based on market prices at the time of liquidation.

16  5 Collier on Bankruptcy ¶ 559.04[1] (16th ed. 2021).

17      Section 725 also makes a reference to these words:

18          After the commencement of a case under this chapter, but
19          before final distribution of property of the estate under section
            726 of this title, the trustee, after notice and a hearing, shall
20          <u>dispose of</u> any property in which an entity other than the estate
            has an interest, such as a lien, and that has not been disposed of
21          under another section of this title.

22  § 725 (emphasis added). This also suggests a final winding up and termination of rights.

23      Finally, a provision addressing unclaimed property, § 347, contains a reference to

24  these words:

25          (a) Ninety days after the final distribution under section 726,
26          1194, 1226, or 1326 of this title in a case under chapter 7,
            subchapter V of chapter 11, 12, or 13 of this title, as the case
            may be, the trustee shall stop payment on any check remaining
27          unpaid, and any remaining property of the estate shall be paid
            into the court and <u>disposed of</u> under chapter 129 of title 28.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                    22/29

§ 347 (emphasis added). Here, the statute is referring to a final payment and close out of the estate's asset base. Obviously, none of these statutes has anything to do with exemptions and exemption planning. But each refers to a final resolution or termination of ownership interests and none even vaguely suggests a party would have a continuing relationship or ownership with the affected property.

The cases sometimes describe transactions subject to § 522(o) as involving transfers or conversions, but their usage is imprecise. The definitional section of the Code, § 101, makes clear that a "disposition" is narrower than other similar terms. "Transfer," by example, is defined this way:

> The term "transfer" means--
>
> > (A) the creation of a lien;
> >
> > (B) the retention of title as a security interest;
> >
> > (C) the foreclosure of a debtor's equity of redemption; or
> >
> > (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with--
> >
> > > (i) property; or
> > >
> > > (ii) an interest in property.

11 U.S.C. § 101(54) (emphasis added). This section may not say exactly what a "disposition" is, but it at least implies that one cannot use "disposition" as an equivalent word for any other type of transfer. It is in some way distinct.

4.    *Lacking Concrete Guidance, I Resort to the Dictionary*

That leaves us with common understandings of the words "disposed of." The Dictionary definitions of "dispose" include "to get rid of," "to deal with conclusively," and "to transfer to the control of another." *Dispose*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/dispose. From this definition, Congress appears to define a disposition narrowly by comparing it to a "parting with" property or

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    23/29

1    interests in property. By contrast, the § 101(54) definition seems to distinguish a disposition
2    from the creation of encumbrances like liens and the foreclosure of equitable rights.

3         It is useful to consider whether there are better definitions for the transaction here
4    than disposition. One that comes immediately to mind is hypothecation: "The pledging of
5    something as security without delivery of title or possession." *Hypothecation*, Black's Law
6    Dictionary (11th ed. 2019). Debtor here borrowed against an asset and used the proceeds of
7    the loan to pay for a new house (which is now his claimed homestead).

8              5.    *Conclusion: Debtor did not Dispose of Assets Within the Meaning of § 522(o)*
9         I find no disposition of assets on the facts.

10        This case does not involve a sale of part or all of the Canadian Property. Instead,
11   Debtor leveraged the Canadian Properties to purchase an exempt residence. This is not a
12   disposition because the property used to buy the San Jose Property – his equity in the
13   Canadian Properties – never left Debtor's ownership and to this day remains titled in his
14   name. To find this series of transactions a disposition, I would have to conclude that any use
15   of non-exempt cash to buy property capable of exemption is a disposition, regardless of
16   whether that cash was obtained by selling property. I do not think § 522(o) works that way.

17        What matters is not whether cash was used to buy exempt property, but how the
18   debtor obtained the cash to do so. If a debtor obtained the cash by selling non-exempt
19   property, or even just a partial interest in such property, then the transaction is a disposition
20   and thus subject to § 522(o). But if a debtor obtains cash using non-exempt property in a
21   manner that does not result in the debtor giving up such property, in whole or in part, the
22   transaction is not a disposition, and § 522(o) does not apply. The latter more accurately
23   describes Debtor's conduct here. Zions' § 522(o) objection must therefore be denied.

24             6.    *I Cannot Determine Whether Debtor Intended  to Hinder, Delay or Defraud his*
25                   *Creditors Without an Evidentiary Hearing*

26        Debtor also argues he had no intend to hinder, delay, or defraud his creditors. He
27   contends that he borrowed against the Canadian Properties to buy the San Jose Property

28

*(left margin, vertical)* UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    because a loan became due in the ordinary course. He paid off that prior loan and took out

2    another to further his and his wife's desire to own a home. Debtor also notes that he only

3    borrowed "approximately $435,000 USD." ECF 147, p. 2.

4            The point may be moot given my conclusion that no disposition occurred within the

5    meaning of § 522(o). But I could not make a final determination about whether Debtor

6    acted with the intent to hinder, delay, or defraud creditors on the existing record. "[A] plain

7    reading of the statutory language reveals that hinder, delay, or defraud is stated in the

8    disjunctive, so intent to hinder or delay is sufficient." *Wallwork*, 616 B.R. at 406; *see In re*

9    *Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996) (applying the same reasoning to similar language

10   in § 727(a)(2)). "[I]ntent may be inferred from the facts and circumstances of a case, because

11   it is unlikely a debtor will testify directly that his intent was fraudulent." (citation omitted).

12   When deciding whether to make such an inference, courts look to the badges of fraud,

13   which "include (1) a close relationship between the transferor and the transferee; (2) that the

14   transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or

15   in poor financial condition at the time; (4) that all or substantially all of the Debtor's

16   property was transferred; (5) that the transfer so completely depleted the Debtor's assets that

17   the creditor has been hindered or delayed in recovering any part of the judgment; and (6)

18   that the Debtor received inadequate consideration for the transfer." *In re Retz*, 606 F.3d

19   1189, 1200 (9th Cir. 2010).

20           Beginning with the relationship between transferor and transferee, the transfer Zions

21   argues is subject to § 522(o) is the loan Debtor obtained by encumbering his equity in the

22   Canadian Properties, so the relevant transferee is the lender. Not, as Zions contends, Lions

23   Properties.[12] *See* ECF 74, p. 16 ("Here, the analysis centers on the facts and circumstances in

24

25           [12] To the extent Zions meant to use § 522(o) to attack the transfer of the San Jose
     Property from Lions Properties to Debtor, I would still deny the motion. Section 522(o)
26   only applies to property that *the debtor* disposed of. In the Lions Properties to Debtor
     transaction, it was Lions Properties, not Debtor, who disposed of the San Jose Property.
27   Zions' motion can be read to implicitly request I treat these separate transactions as linked,

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
     TO DEBTOR'S HOMESTEAD EXEMPTION                                          25/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  the time period leading up to the 'transfer'—i.e., the August 2020 Loan."). Nothing in the

2  record allows me to infer there was a close relationship between Debtor and the lender. This

3  badge of fraud is not present here.

4      The next badge of fraud asks whether the transfer was made in anticipation of a

5  pending suit. As Zions notes, there were multiple lawsuits pending against Debtor at the

6  time of the transfer. And Debtor has admitted that the increasing number of those lawsuits,

7  and his inability to resolve those actions through his pre-bankruptcy restructuring, caused

8  him to file this petition. This badge of fraud is present.

9      Third, Debtor's schedules show he was balance sheet insolvent as of the petition

10 date, ECF 1, p. 8, and in October 2019 he was in poor financial condition, as his concerns

11 over ability to meet debt obligations caused him to hire restructuring counsel. I have no

12 evidence that in between October 2019 and the petition date Debtor's financial situation

13 improved, and given that Debtor also admitted to incurring significant gambling losses

14 during that period, I conclude it appropriate to infer he was either insolvent or in serious

15 financial distress on the transfer date.

16     Fourth, I conclude that Debtor did not transfer substantially all of his non-exempt

17 property. True, the $600,000 in question represents over 86% of Debtor's claimed

18 exemptions. *See* ECF 1, p. 17–18. But from the standpoint of Debtor's total unencumbered

19 property, the $600,000 represents just under 22%. *See* ECF 17, p. 9. I do not think that less

20 than a quarter of non-exempt assets qualifies as substantially all.

21     Fifth, I conclude Zions has not been hindered in collecting on its judgment, because

22 it does not currently have one.

23     Finally, Debtor did receive adequate consideration for the disposition, assuming it

24 was one: in exchange for granting a security interest in his equity in the Canadian Properties,

25 he received $435,000. Zions again argues the wrong transfer: while it is true Lions Properties

27 but to do so I would have to find that Debtor and Lions Properties are alter egos. No one

28 has asked me to make such a finding, and I decline to do so.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                    26/29

1    received nothing for transferring the San Jose Property to Debtor, that transfer did not

2    involve a disposition *by Debtor* of non-exempt assets.

3          Two badges of fraud are present here. But Debtor presents an alternative explanation

4    for this transfer: "The paying off of the maturing second deed on the Canadian Properties

5    and the subsequent refinance were very close in time. The series of transactions was not

6    designed to effect creditors but was done to retire matured debt and then purchase a home

7    for Kane, his wife and their newborn daughter." ECF 146, p. 9. At a minimum, the fact that

8    the second deed on the Canadian Properties came due of its own accord is some evidence

9    that this transaction was not made with ill intent. It provides an alternate explanation for the

10   timing of this transaction that is not rooted in Debtor planning for his bankruptcy case.

11         I also note that Debtor originally vested title to the San Jose Property in Lions

12   Properties. Zions points out that they are statutory insiders, and says I should infer from this

13   that the entire transaction was an effort to hide assets from creditors. But this is a motion to

14   deny Debtor the homestead exemption he claims. If Zions is correct that Debtor planned

15   this transaction from the outset to defraud his creditors by obtaining a homestead on the eve

16   of bankruptcy, why did he have Lions Properties hold title to the San Jose Property? That

17   choice could arguably support a finding that Debtor intended to hinder, delay, or defraud

18   creditors, but it cannot be used to show that Debtor planned from the outset to claim a

19   homestead exemption in the San Jose Property. If anything, Debtor's decision to vest title in

20   Lions Properties at first supports an inference that he did not intend to file bankruptcy at

21   that time, as that decision, absent the subsequent transfer, would have prevented Debtor

22   from claiming a homestead exemption in the San Jose Property.

23         Zions is correct that some badges of fraud are present here. But Debtor's alternative

24   explanation for the timing of the transaction could allow a reasonable trier of fact to find he

25   lacked the necessary intent, despite the presence of such badges. Moreover, Debtor's choice

26   to vest title to the San Jose Property in Lions Properties could only frustrate what Debtor is

27   trying to do now: exempt the equity he holds in the San Jose Property in this bankruptcy

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                        27/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

case. To resolve the factual contentions presented here I would need to weigh evidence and make credibility determinations. Because it would be improper to do so on the papers, which is a summary judgment-like procedure, I conclude that, to the extent I must reach Debtor's intent to decide Zions' § 522(o) objection, an evidentiary hearing is necessary.

**III.   CONCLUSION**

Debtor's exemption in the San Jose Property is not barred by § 522(o) but it is limited by § 522(p) to $170,350.

IT IS SO ORDERED.

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    **COURT SERVICE LIST**

2    [ECF recipients only]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    29/29

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA**

# Notice Recipients

District/Off: 0971−5          User: admin                      Date Created: 7/26/2021
Case: 21−50028               Form ID: pdfnoa                  Total: 12

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | Office of the U.S. Trustee / SJ | USTPRegion17.SJ.ECF@usdoj.gov |
| aty | Andrew J. Ghekas | aghekas@anthonyandpartners.com |
| aty | David B. Rao | David@bindermalter.com |
| aty | Gerrick Warrington | gwarrington@frandzel.com |
| aty | John A. Anthony | janthony@anthonyandpartners.com |
| aty | Marta Villacorta | marta.villacorta@usdoj.gov |
| aty | Michael Gerard Fletcher | mfletcher@frandzel.com |
| aty | Peter C. Califano | pcalifano@cwclaw.com |
| aty | Ryan A. Witthans | rwitthans@fhlawllp.com |
| aty | Stephen D. Finestone | sfinestone@fhlawllp.com |
| aty | Stephen G. Opperwall | steve.opperwall@comcast.net |

TOTAL: 11

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

Heinz Binder, Esq.          Binder & Malter, LLP          2775 Park Avenue          Santa Clara, CA 95050

TOTAL: 1



Office of the Clerk
United States Bankruptcy Court, Northern District of California

Edward J. Emmons, Clerk of Court
450 Golden Gate Avenue
Mail Box 36099
San Francisco, CA 94102
Phone: (415) 268-2300

**July 29, 2021**

Bankruptcy Appellate Panel
of the Ninth Circuit
125 S. Grand Avenue
Pasadena, CA 91105

**Re:     Transmittal of Notice of Appeal to the Bankruptcy Appellate Panel**

Bankruptcy Case:     **#21-50028-Evander Frank Kane**

Adv. Proceeding:

Bankruptcy Judge:     **Stephen L. Johnson**

Date Bankruptcy Case Filed:     **January 9, 2021**

Appellant:     **Evander Frank Kane**

Appellee:     Zions Bancorporation, N.A., dba California Bank & Trust, Professional BankSouth River Capital, LLC,Centennial Bank

Date Notice of Appeal Filed:     **July 23, 2021**

Date of Entry of Order on Appeal: **July 9, 2021**

Filing Fee: ☒ Paid $ **298.00**     ☐ Not Paid     ☐ Fee Waived     ☐ Fee Waiver Pending

Dear Clerk:

The following documents are electronically transmitted to your court for the above referenced matter:

Docket Report

Notice of Appeal
Notice Referral of Appeal to BAP
Order On Zions Bancorporation's Objection To Debtor's Homestead Exemption

If you have any questions, please contact me at  **408-278-7569**          .

Edward Emmons, Clerk
United States Bankruptcy Court

By: */s/ Angela Wong*

Angela Wong,          Deputy Clerk

United States Bankruptcy Court
Northern District of California

In re:                                                              Case No. 21-50028-SLJ
Evander Frank Kane                                                  Chapter 7
    Debtor

# CERTIFICATE OF NOTICE

District/off: 0971-5                    User: admin                              Page 1 of 2
Date Rcvd: Jul 26, 2021                 Form ID: NTCRFBK                          Total Noticed: 1

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 28, 2021:**

| Recip ID | Recipient Name and Address |
|---|---|
| + | Heinz Binder, Esq., Binder & Malter, LLP, 2775 Park Avenue, Santa Clara, CA 95050-6004 |

TOTAL: 1

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 28, 2021                  Signature:        /s/Joseph Speetjens

---

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 26, 2021 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Andrew J. Ghekas | on behalf of Creditor Centennial Bank  N.A. aghekas@anthonyandpartners.com, crodriguez@anthonyandpartners.com |
| Christopher O. Rivas | on behalf of Creditor Loan Shark Holdings  LLC crivas@reedsmith.com, chris-rivas-8658@ecf.pacerpro.com |
| David B. Rao | on behalf of Plaintiff South River Capital LLC David@bindermalter.com |
| Fred Hjelmeset | fhtrustee@gmail.com  CA90@ecfcbis.com |
| Gerrick Warrington | on behalf of Creditor Zions Bancorporation  N.A. gwarrington@frandzel.com, sking@frandzel.com |
| Gregg S. Kleiner | on behalf of Trustee Fred Hjelmeset gkleiner@rinconlawllp.com, aworthing@rinconlawllp.com |

District/off: 0971-5                        User: admin                          Page 2 of 2
Date Rcvd: Jul 26, 2021                  Form ID: NTCRFBK                    Total Noticed: 1

John A. Anthony
                    on behalf of Creditor Centennial Bank  N.A. janthony@anthonyandpartners.com, sdavis@anthonyandpartners.com

Jonathan Lewis
                    on behalf of Plaintiff Hope Parker jonlewis@jlewislaw.com

Marta Villacorta
                    on behalf of U.S. Trustee Office of the U.S. Trustee / SJ marta.villacorta@usdoj.gov

Michael Gerard Fletcher
                    on behalf of Creditor Zions Bancorporation  N.A. mfletcher@frandzel.com, sking@frandzel.com

Office of the U.S. Trustee / SJ
                    USTPRegion17.SJ.ECF@usdoj.gov

Peter C. Califano
                    on behalf of Creditor Centennial Bank  N.A. pcalifano@cwclaw.com

Reed S. Waddell
                    on behalf of Creditor Zions Bancorporation  N.A. rwaddell@frandzel.com, sking@frandzel.com

Richard L. Pierotti
                    Rpierotti@kpmd.com

Robert B. Kaplan
                    on behalf of Creditor Sure Sports  LLC rbk@jmbm.com

Ryan A. Witthans
                    on behalf of Debtor Evander Frank Kane rwitthans@fhlawllp.com

Stephen D. Finestone
                    on behalf of Debtor Evander Frank Kane sfinestone@fhlawllp.com

Stephen G. Opperwall
                    on behalf of Creditor Professional Bank steve.opperwall@comcast.net

Thomas M. Geher
                    on behalf of Creditor Sure Sports  LLC tmg@jmbm.com, tmg@ecf.inforuptcy.com

Wendy W. Smith
                    on behalf of Requestor South River Capital LLC Wendy@bindermalter.com


TOTAL: 20

Form NTCRFBK

## UNITED STATES BANKRUPTCY COURT
### California Northern Bankruptcy Court

| In re Debtor(s): | Case No.: 21−50028 SLJ 7 |
|---|---|
| Evander Frank Kane | Chapter: 7 |

### NOTICE OF REFERRAL OF APPEAL TO BANKRUPTCY APPELLATE PANEL

**To All Parties:**

You are hereby notified the enclosed Notice of Appeal has been filed by <u>Evander Frank Kane</u> with the Clerk of the Bankruptcy Court. Pursuant to orders of the Judicial Council of the Ninth Circuit and the United States District Court for this district, this appeal is referred to the United States Bankruptcy Appellate Panel of the Ninth Circuit (BAP).

Dated: <u>7/26/21</u>

Edward J. Emmons
Clerk of Court
United States Bankruptcy Court

By: <u>/s/ Lydia Menendez</u>
Deputy Clerk

**NOTICE FROM CLERK OF 9TH CIRCUIT BAP:** For all cases opened at the BAP beginning February 1, 2015, all excerpts of record must be filed electronically and no paper copies will be necessary. In all other cases effective immediately any attorney or other electronic filer may file the excerpts electronically without submitting paper copies. Please see Rule 3 of the Administrative Order Regarding Electronic Filing in BAP Cases available on the BAP website at www.ca9.uscourts.gov/bap/.

Form NTCRFBK

# UNITED STATES BANKRUPTCY COURT
## California Northern Bankruptcy Court

| In re Debtor(s):<br><br>Evander Frank Kane | Case No.: 21−50028 SLJ 7<br>Chapter: 7 |
|---|---|

## NOTICE OF REFERRAL OF APPEAL TO BANKRUPTCY APPELLATE PANEL

**To All Parties:**

You are hereby notified the enclosed Notice of Appeal has been filed by <u>Evander Frank Kane</u> with the Clerk of the Bankruptcy Court. Pursuant to orders of the Judicial Council of the Ninth Circuit and the United States District Court for this district, this appeal is referred to the United States Bankruptcy Appellate Panel of the Ninth Circuit (BAP).

Dated: <u>7/26/21</u>

Edward J. Emmons
Clerk of Court
United States Bankruptcy Court

By: <u>/s/ Lydia Menendez</u>
Deputy Clerk

**NOTICE FROM CLERK OF 9TH CIRCUIT BAP:** For all cases opened at the BAP beginning February 1, 2015, all excerpts of record must be filed electronically and no paper copies will be necessary. In all other cases effective immediately any attorney or other electronic filer may file the excerpts electronically without submitting paper copies. Please see Rule 3 of the Administrative Order Regarding Electronic Filing in BAP Cases available on the BAP website at www.ca9.uscourts.gov/bap/.

# Notice Recipients

| District/Off: 0971−5 | User: admin | Date Created: 7/26/2021 |
|---|---|---|
| Case: 21−50028 | Form ID: NTCRFBK | Total: 12 |

**Recipients of Notice of Electronic Filing:**

| | | |
|---|---|---|
| ust | Office of the U.S. Trustee / SJ | USTPRegion17.SJ.ECF@usdoj.gov |
| aty | Andrew J. Ghekas | aghekas@anthonyandpartners.com |
| aty | David B. Rao | David@bindermalter.com |
| aty | Gerrick Warrington | gwarrington@frandzel.com |
| aty | John A. Anthony | janthony@anthonyandpartners.com |
| aty | Marta Villacorta | marta.villacorta@usdoj.gov |
| aty | Michael Gerard Fletcher | mfletcher@frandzel.com |
| aty | Peter C. Califano | pcalifano@cwclaw.com |
| aty | Ryan A. Witthans | rwitthans@fhlawllp.com |
| aty | Stephen D. Finestone | sfinestone@fhlawllp.com |
| aty | Stephen G. Opperwall | steve.opperwall@comcast.net |

TOTAL: 11

**Recipients submitted to the BNC (Bankruptcy Noticing Center):**

| | | | |
|---|---|---|---|
| Heinz Binder, Esq. | Binder & Malter, LLP | 2775 Park Avenue | Santa Clara, CA 95050 |

TOTAL: 1

**NoAutoDisch, 727OBJ, APPEAL, MEANSU**

## U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Jose)
## Bankruptcy Petition #: 21-50028

|  |  |
|---|---|
| Assigned to: Judge Stephen L. Johnson | Date filed: 01/09/2021 |
| Chapter 7 | 341 meeting: 02/23/2021 |
| Voluntary | Deadline for filing claims: 04/15/2021 |
| Asset | Deadline for objecting to discharge: 04/05/2021 |
|  | Deadline for financial mgmt. course: 02/23/2021 |

| | |
|---|---|
| **Debtor** | represented by **Stephen D. Finestone** |
| **Evander Frank Kane** | Finestone Hayes LLP |
| 2301 Richland Ave. | 456 Montgomery St. 20th Fl. |
| San Jose, CA 95125 | San Francisco, CA 94104 |
| SANTA CLARA-CA | (415) 421-2624 |
| SSN / ITIN: xxx-xx-7617 | Email: sfinestone@fhlawllp.com |
| | |
| | **Ryan A. Witthans** |
| | Finestone Hayes LLP |
| | 456 Montgomery St. Fl. 20 |
| | San Francisco, CA 94104 |
| | (415) 481-5481 |
| | Email: rwitthans@fhlawllp.com |
| | |
| **Trustee** | represented by **Gregg S. Kleiner** |
| **Fred Hjelmeset** | Rincon Law LLP |
| P.O.Box 4188 | 268 Bush St. #3335 |
| Mountain View, CA 94040 | San Francisco, CA 94104 |
| (650)386-5634 | (415) 996-8180 |
| | Fax : (415) 680-1712 |
| | Email: gkleiner@rinconlawllp.com |
| | |
| **U.S. Trustee** | represented by **Marta Villacorta** |
| **Office of the U.S. Trustee / SJ** | Office of the U. S. Trustee |
| U.S. Federal Bldg. | 280 South 1st Street, Suite 268 |
| 280 S 1st St. #268 | San Jose, CA 95113 |
| San Jose, CA 95113-3004 | 408-535-5525 |
| ( ) | Email: marta.villacorta@usdoj.gov |

| Filing Date | # | Docket Text |
|---|---|---|
| 07/08/2021 | 177 | Order Granting Application for Admission of Attorney Pro Hac Vice (Related Doc # 167). (al) (Entered: 07/08/2021) |
| 07/09/2021 | 178 | Order on Zion's Bancorporation's Objection to Debtor's Homestead Exemption (RE: related document(s)74 Objection to Homestead Exemption filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). (al) (Entered: 07/09/2021) |
| 07/10/2021 | 179 | Certificate of Record Re: (RE: related document(s)161 Notice of Appeal and Statement of Election Filed by Creditor Centennial Bank, N.A. ). (ds) (Entered: 07/10/2021) |
| 07/10/2021 | 180 | Transmission of Record on Appeal to District Court (RE: related document(s)161 Notice of Appeal and Statement of Election). (Attachments: # 1 Certificate of Record # 2 Record on Appeal Documents) (ds) (Entered: 07/10/2021) |
| 07/19/2021 | 181 | Application to Employ Scott Chase of Intero Real Estate Services Los Altos as Real Estate Broker for Trustee Filed by Trustee Fred Hjelmeset (Attachments: # 1 Declaration of Proposed Broker (Scott Chase / Intero Real Estate Services - Los Altos)) (Kleiner, Gregg) (Entered: 07/19/2021) |

| | | |
|---|---|---|
| 07/23/2021 | 182 | Notice of Appeal and Statement of Election , Fee Amount $ 298. (RE: related document(s)178 Order). Appellant Designation due by 08/9/2021. Statement of Issues due by 08/9/2021. Service of Notice of Referral due by 07/30/2021. Transmission of Record on Appeal to BAP due by 08/25/2021. (Attachments: # 1 Exhibit A - Appealed Order) Filed by Debtor Evander Frank Kane (Witthans, Ryan) (Entered: 07/23/2021) |
| 07/23/2021 | | Receipt of filing fee for Notice of Appeal and Statement of Election( 21-50028) [appeal,ntcaplel] ( 298.00). Receipt number A31434606, amount $ 298.00 (re: Doc# 182 Notice of Appeal and Statement of Election) (U.S. Treasury) (Entered: 07/23/2021) |
| 07/23/2021 | 183 | Stipulation to Continue Hearing Filed by Debtor Evander Frank Kane (RE: related document(s)172 Motion to Dismiss Case filed by Creditor Centennial Bank, N.A.). (Finestone, Stephen) (Entered: 07/23/2021) |
| 07/26/2021 | 184 | Service of Notice of Referral to Michael Gerard Fletcher, Gerrick M. Warrington, Stephen G. Opperwall, Heinz Binder, Esq., David B. Rao, John A. Anthony, Andrew J. Ghekas, Peter C. Califano: Attorney for Appellee(s), Stephen D. Finestone, Ryan A. Witthans: Attorney for Appellant(s), and United States Trustee via the Bankruptcy Noticing Center. (RE: related document(s)182 Notice of Appeal and Statement of Election). (lm) (Entered: 07/26/2021) |
| 07/26/2021 | 185 | Order Approving Stipulation to Continue Hearing on Centennial Bank's Motion to Case as Bad Faith Filing Pursuant to Section 707(a) (RE: related document(s)172 Motion to Dismiss Case filed by Creditor Centennial Bank, N.A., 183 Stipulation to Continue Hearing filed by Debtor Evander Frank Kane). **Hearing scheduled for 10/5/2021 at 02:00 PM Tele/Videoconference - www.canb.uscourts.gov/calendars for 172,** . (al) (Entered: 07/26/2021) |
| 07/26/2021 | 186 | Service of Notice of Appeal to Michael Gerard Fletcher, Gerrick M. Warrington, Stephen G. Opperwall, Heinz Binder, Esq., David B. Rao, John A. Anthony, Andrew J. Ghekas, Peter C. Califano: Attorney for Appellee(s) Stephen D. Finestone, Ryan A. Witthans: Attorney for Appellant(s), and United States Trustee via the Bankruptcy Noticing Center. (RE: related document(s)182 Notice of Appeal and Statement of Election). (lm) (Entered: 07/26/2021) |
| 07/26/2021 | 187 | Stipulation to Extend Time *Fifth Stipulation For Order Extending Deadlines Under Bankruptcy Rules 4004(a) and 4007(c) To File Complaint To Determine Dischargeability Of Debt And/Or To Object To Discharge* Filed by Creditor Zions Bancorporation, N.A.. (Waddell, Reed) (Entered: 07/26/2021) |
| 07/27/2021 | 188 | Order Authorizing Employment of Broker (Intero Real Estate - Los Altos) (Related Doc # 181) (al) (Entered: 07/27/2021) |
| 07/27/2021 | 189 | Order Approving Fifth Stipulation Extending Deadline Under Bankruptcy Rules 4004(a) and 4007(c) To File Complaint To Determine Dischargeability Of Debt And/Or To Deny Discharge (RE: related document(s)187 Stipulation to Extend Time filed by Creditor Zions Bancorporation, N.A., Requestor Zions Bancorporation, N.A.). (al) (Entered: 07/27/2021) |
| 07/28/2021 | 190 | BNC Certificate of Mailing (RE: related document(s) 184 Service of Notice of Referral). Notice Date 07/28/2021. (Admin.) (Entered: 07/28/2021) |
| 07/28/2021 | 191 | BNC Certificate of Mailing (RE: related document(s) 186 Service of Notice of Appeal). Notice Date 07/28/2021. (Admin.) (Entered: 07/28/2021) |

**Entered on Docket**
**July 09, 2021**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



The following constitutes the order of the Court.
Signed: July 9, 2021

_Stephen Johnson_

**Stephen L. Johnson**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

In re **EVANDER FRANK KANE**,

            Debtor.

Case No. 21-50028 SLJ
Chapter 7

## ORDER ON ZIONS BANCORPORATION'S OBJECTION
## TO DEBTOR'S HOMESTEAD EXEMPTION

Zions Bancorporation, N.A. ("Zions") has filed an Objection to Homestead Exemption. ECF 74. Zions objects to Debtor claiming a homestead exemption in real property he owns in San Jose, California, contending the property was purchased with non-exempt assets shortly before this bankruptcy case was filed. Zions contends that Debtor's homestead exemption must be reduced to account for conversions of non-exempt property to exempt property on the eve of the bankruptcy filing. Debtor filed an Opposition to Objection to Homestead Exemption, ECF 147, as well as a Declaration of Evander Kane in support of that opposition. ECF 148. Debtor argues Zions' objection is procedurally improper because he was not personally served within the filing deadline; that he did not dispose of non-exempt property with intent to hinder, delay, or defraud creditors; and that

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION

1/29

1    other limitations on claiming homestead exemptions do not apply in California, and in any

2    event the property's pre-petition appreciation is not subject to such provisions.

3          I conclude the objection was timely and served in a way that was materially consistent

4    with the Bankruptcy Code and Rules. I then conclude § 522(p)[1] applies in California and

5    operates to limit Debtor's homestead exemption to $170,350. Finally, I find Debtor is not

6    denied his homestead claim in its entirety because he did not dispose of property, as § 522(o)

7    requires. Accordingly, Zions' objection will be sustained in part and overruled in part.

8    **I.    BACKGROUND**

9          Zions filed its objection on March 25, 2021. Zions served the objection and notice of

10   hearing on Debtor's attorney through first class mail and ECF. ECF 74-2, 73.

11         The essence of Zions' objection is that Debtor is not entitled to a homestead

12   exemption he claims in real property located at 2301 Richland Avenue, San Jose, California

13   95125 ("San Jose Property"). This is so because he obtained the funds for the down payment

14   on the San Jose Property in August 2020 by taking out a $600,000[2] loan that was cross-

15   collateralized and secured by two properties he already owned in Canada ("Canadian

16   Properties").[3] Rather than Debtor and his wife taking title, the San Jose Property was

17   purchased in the name of Lions Properties, LLC ("Lions Properties"), a Florida entity wholly

18   owned by Debtor and his wife that Debtor formed on May 26, 2020. ECF 74-1, p. 5–8. The

19   San Jose Property was later transferred from Lions Properties to Debtor and his wife by

20

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

21         ───────────────────

22   [1] Unless specified otherwise, all chapter and code references are to the Bankruptcy
     Code, 11 U.S.C. §§ 101–1532. All "Civil Rule" references are to the Federal Rules of Civil

23   Procedure and all "Bankruptcy Rule" references are to the Federal Rules of Bankruptcy
     Procedure. All "Civil L.R." and "B.L.R." references are to the applicable Civil Local Rules

24   and Bankruptcy Local Rules. And all "C.C.P." references are to the California Code of Civil
     Procedure.

25         [2] The record is not precisely clear about one thing: Debtor's opposition states the
     correct amount is $435,000, though his schedules state the loan was for $600,000. ECF 18,

26   p. 2. Given the nature of the transaction, I find this unexplained difference is not controlling.

27         [3] Those properties are located at 3457 West 35th Avenue, Vancouver British
     Columbia, Canada and 8447 Isabel Place, Vancouver, British Columbia, Canada.

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
     TO DEBTOR'S HOMESTEAD EXEMPTION                                                    2/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   quitclaim deed on January 8, 2021, one day prior to his filing this bankruptcy case.[4] *Id.* at 20–

2   22. Zions argues this shows Debtor used nonexempt property – his equity in the Canadian

3   Properties – to purchase a homestead exemption with the intent to hinder, delay, or defraud

4   creditors, in violation of § 522(o).

5       Zions points to other pre-petition conduct to advance its assertion of Debtor's

6   fraudulent intent. For instance, as early as October 2019 Debtor was concerned that he

7   would not be able to continue making his debt payments and so hired restructuring counsel

8   at Pachulski Stang Ziehl & Jones to assist in negotiating with his creditors. ECF 65-1, p. 2–3.

9   Zions also notes Debtor's admission that he incurred $1,500,000 in gambling losses within

10   one year of the petition. ECF 19. Coupled with Debtor's balance sheet insolvency, *see*

11   ECF 1, p. 8, Zions argues this shows Debtor structuring his estate to hinder creditors, even

12   as his conduct continued to deplete his estate.

13   **II.**   **DISCUSSION**

14       A.   <u>Zions' Evidentiary Objections</u>

15       Zions raises several evidentiary objections in its reply. These pertain to statements set

16   out in Debtor's declaration. I conclude that one of these objections should be sustained and

17   the balance overruled.

18       First, Zions argues two of Debtor's statements are not relevant: (1) Debtor stating he

19   did not move to California to avoid creditors or because of its exemption laws; and

20   (2) Debtor stating the funds for the San Jose Property down payment came from his salary

21   bonus and from a loan secured by the Canadian Properties. Relevance is defined by Federal

22   Rule of Evidence 401: "Evidence is admissible if: (a) it has any tendency to make a fact more

23   or less probable than it would be without the evidence; and (b) the fact is of consequence in

24   determining the action." "Relevance is established by any showing, however slight, which

25   makes it more likely than it was before the admission of the evidence that the" fact in

26

27       [4] Zions also notes that, when asked at the § 341(a) meeting why Lions Properties transferred title to him and his wife just prior to his filing this case, Debtor declined to

28   answer, citing attorney-client privilege. ECF 74, p. 66.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION       3/29

1  question is true or false. *United States v. Federico*, 658 F.2d 1337, 1343 (9th Cir. 1981), *overruled*

2  *on other grounds by United States v. De Bright*, 730 F.2d 1255, 1259–60 (9th Cir. 1984) (en banc).

3  Debtor's statements are not irrelevant; quite the contrary, they contest Zions'

4  contentions. Zions claims in its objection that Debtor's conduct is fraudulent or dilatory in

5  relation to his claimed homestead exemption. Debtor contests this in his declaration,

6  indicating he had motives other than evasion of creditors when he purchased the San Jose

7  Property. Debtor's first statement says he had no such intent when he came to California,

8  which in turn makes it at least somewhat more likely that he also did not have that intent

9  when he bought the San Jose Property. As for the second statement, part of Debtor's

10  opposition argues he did not "dispose of" non-exempt property to pay for the San Jose

11  Property because pledging equity as security for a loan is not a "disposal." This statement

12  makes it more likely he in fact pledged equity as security for the loan proceeds that partially

13  paid for the San Jose Property, and that fact is of consequence for Zions' § 522(o) claim.

14  Zions next argues certain statements lack foundation: (1) Debtor's statement that he

15  purchased the San Jose Property in August 2020 for $3,030,000[5]; (2) Debtor statement that

16  the funds for the San Jose Property down payment came from his salary bonus and from a

17  loan secured by the Canadian Properties; (3) Debtor's statement that he used part of his

18  salary bonus to pay off a junior lien on the Canadian Properties which had become due;

19  (4) Debtor's statement that he obtained a new loan of $435,000 on the Canadian Properties

20  after paying off the junior lien; (5) Debtor's statement that he combined loan proceeds with

21  the rest of his salary bonus to make the $705,000 down payment on the San Jose Property;

22  and (6) Debtor's statement that he and the trustee reached the Exemption Settlement after

23  the trustee got a $3,275,000 valuation opinion for the San Jose Property from a local realtor.

24  Foundation is defined by Federal Rule of Evidence 602, which says: "A witness may

25  testify to a matter only if evidence is introduced sufficient to support a finding that the

---

[5] Zions also argues this misstates the record, as the San Jose Property was originally titled in Lions Properties' name. It is unclear how this is relevant to a lack of foundation evidentiary objection.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    4/29

<div style="writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony."

The statements do not lack foundation in the main. Debtor has personal knowledge of the events described in the first four statements because, as his own testimony makes clear, he was the one who caused those events to occur. Zions appears to argue the fifth statement lacks foundation because it was actually Lions Properties who bought the San Jose Property, not Debtor. Assuming that is true, Debtor, along with his wife, are 100% owners of Lions Properties; I can infer from this that Debtor acted as Lions Properties' agent in this transaction, giving him personal knowledge of the events. *See United States v. Thompson*, 559 F.2d 552, 554 (9th Cir. 1977) (holding a witness restaurant manager had personal knowledge of company procedures on account of such witness's position in the company).

I agree with Zions that Debtor has not shown he has personal knowledge of the events described in the sixth statement. Accordingly, this statement must be excluded, and I decline to rule on the other objections to that statement.

Finally, Zions makes best evidence objections to: (1) Debtor's statement that he used part of his salary bonus to pay off a junior lien on the Canadian Properties that had become due; (2) Debtor's statement that he obtained a new loan of $435,000[6] on the Canadian Properties after paying off the junior lien; and (3) Debtor's statement that he combined loan proceeds with the rest of his salary bonus to make the $705,000 down payment on the San Jose Property.

People often think the best evidence rule is aptly named. I would argue that is not necessarily so. The rule does not require, as its name suggests, that a party must produce the best *quality* evidence of a fact. Rather, "The best evidence rule provides that the original of a writing, recording, or photograph is required to prove the contents thereof." *United States v. Bennett*, 363 F.3d 947, 953 (9th Cir. 2004) (quoting Fed. R. Evid. 1002). "The rule's

---

[6] This statement arguably tries to prove the contents of the loan documents, as the actual amount borrowed may be in dispute. But that is at best ancillary to Debtor's main purpose, which is describing *why the timing of this loan is not fraudulent.*

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                                5/29

1   application turns on 'whether contents are sought to be proved.' Fed. R. Evid. 1002

2   Advisory Committee's note. '[A]n event may be proved by nondocumentary evidence, even

3   though a written record of it was made.'" *Id.* Documentary evidence likely exists for each of

4   the events described in these statements.

5        Debtor is not required to produce documentary evidence in this situation. He is not

6   seeking to prove the contents of documents. The purpose of these statements is to show

7   that he paid off the Canadian Properties' junior lien as it became due; that the timing of the

8   new loan he took out on the Canadian Properties was based on the old loan becoming due,

9   not because of an impending bankruptcy; and that he used certain specific property to make

10  the down payment on the San Jose Property. These are simply statements by Debtor

11  pertaining to a transaction he participated in. He may not have the facts and figures right, a

12  point that Zions can establish with relative ease. But none of these statements are meant to

13  prove the contents of the documents used to record each of these events, so Zions'

14  objections to them must be overruled.

15       B.    Zions' Objection was Timely

16       Debtor's opposition first argues that, because Zions failed to deliver or mail its

17  objection to Debtor's homestead exemption to Debtor personally within the 30-day period

18  set by Bankruptcy Rule 4003, the objection is untimely and must be overruled. Although a

19  close question, I disagree with Debtor and conclude Zions' objection was timely.

20       The first meeting of creditors in this case was concluded on February 23, 2021. Thirty

21  days from that date is March 25, 2021, when Zions filed its objection to Debtor's homestead

22  exemption. ECF 74. Zions' certificate of service states the objection was served on Debtor's

23  counsel, but not Debtor. ECF 74-2. Zions set that objection for hearing on May 4, 2021,

24  giving due notice. On April 27, 2021, Debtor filed his Response to Objection to Homestead

25  Exemption filed by Zions Bancorporation, N.A. ECF-106. He argued that Bankruptcy Rule

26  4003(b)(4) requires that an objection be served on both debtor and debtor's counsel and it

27  was not served Debtor. Zions immediately sought a continuance of the May 4, 2021 hearing,

28

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ECF-109, which the court granted on April 29, 2021. ECF-110. Zions served a copy of the objection on Debtor the same day that order was docketed.

Like much of this case, this dispute is complicated. Section 522(l) requires a debtor "file a list of property that the debtor claims as exempt under subsection (b) of this section." In turn, Bankruptcy Rule 4003(b)(1) allows a party in interest to "file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." Bankruptcy courts may extend that deadline for cause "if, before the time to object expires, a party in interest files a request for an extension." *Id.* The means of service are also stated: "A copy of any objection shall be delivered or mailed to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney." Bankruptcy Rule 4003(b)(4).

The deadline for exemption objections is also found in this rule. "Rule 4003(b) gives the trustee and creditors 30 days from the initial creditors' meeting to object. By negative implication, the Rule indicates that creditors may not object after 30 days 'unless, within such period, further time is granted by the court.'" *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643 (1992). If no one timely objects to an exemption, and the bankruptcy court does not extend the objection period, § 522(l) makes the claimed property exempt, even if the debtor has no "colorable statutory basis for claiming it." *Freeland & Kronz*, 503 U.S. at 643–44.

Debtor cites *In re Bush*, 346 B.R. 523 (Bankr. E.D. Wash. 2006), in support of his timeliness argument. In *Bush*, the bankruptcy court admitted that Bankruptcy Rule 4003(b) does not explicitly set a deadline for serving the objection on Debtor personally. The *Bush* court then reasoned that there were two ways to resolve this issue: (1) require the objector to deliver or mail a copy of the objection "within a reasonable period of time"; or (2) require the objector deliver or mail a copy of the objection within the same period required for filing it. *Bush*, 346 B.R. at 526. The court concluded the second resolution better served the Rule's purpose of "provid[ing] the debtor with timely notice that the trustee or other interested

party objects to the debtor's claimed exemption." *Id.* (quoting *In re Spenler*, 212 B.R. 625, 630 (B.A.P. 9th Cir. 1997)). Allowing a flexible deadline would in fact hinder the timeliness of notice, as such "notice is accomplished by serving the objection, not by filing it." *Bush*, 346 B.R. at 526. Also relevant were cases holding that a court cannot extend the 30-day period for filing objections when "the court failed to rule on a timely motion to extend before the expiration of the period," *id.* at 528 (citing *In re Laurain*, 113 F.3d 595 (6th Cir. 1997); *Matter of Stoulig*, 45 F.3d 957 (5th Cir. 1995))[7], and the Supreme Court's decision in *Freeland & Kronz*, 503 U.S. at 644, which held the effect of failing to timely object to a claim of exemptions is such exemptions are upheld, even if there is "no colorable statutory basis for claiming" them. *Bush* concluded these cases supported a strict construction of Bankruptcy Rule 4003, "based upon the policy of finality for the parties with respect to the property claimed as exempt." *Bush*, 346 B.R. at 528.

Zions points to *In re Fisher*, 63 B.R. 649 (Bankr. W.D. Ky. 1986), as providing a better interpretation of Bankruptcy Rule 4003. In *Fisher*, the bankruptcy court rejected part of the argument Debtor makes here – that an exemption objection must be delivered or mailed to both the debtor and his attorney – this way: "Service on the debtor's attorney was obviously sufficient to give the debtor notice of the objections. [Bankruptcy] Rule 4003(b) states that copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney. Reading this language literally and carried to the extreme, one could conclude that 'the person filing the list' means someone from the attorney's office who *physically* filed the same. We decline to read the Rule so literally as to mandatorily require service on both the debtor and his attorney." The *Fisher* court seems to have concluded that interpreting Bankruptcy Rule 4003(d)(4) to mean what it says – that both the debtor and the

---

[7] These cases were later superseded by amendments to Bankruptcy Rule 4003 in 2000, allowing courts to "to grant a timely request for an extension of time to file objections to the list of claimed exemptions, whether the court rules on the request before or after the expiration of the 30-day period." The Advisory Committee made clear this amendment was in response to the holdings of cases like *Laurain* and *Stoulig*.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    8/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  debtor's counsel must receive a copy of the objection by mail or delivery – would be an

2  overly literal construction of the Rule.

3       While *Bush* is well-considered, I will not follow it.[8] Critically, the rule itself does not

4  command me to disregard the objection, as the *Bush* court did. Bankruptcy Rule 4003(b)(3)

5  specifies that an objection must be filed within 30 days. If it is not filed, it is untimely. Thus,

6  the deadline for filing an objection is found in paragraph (3). The rule further specifies that

7  "a copy of any objection shall be delivered or mailed to the trustee, the debtor, and the

8  debtor's attorney . . . ." Bankruptcy Rule 4003(b)(4). The service of an objection is addressed

9  in paragraph (4), and there is no stated deadline. *Bush* is right that a natural inference is that

10  the filing and service of the objection should be coincident, as paragraph (3) states. But

11  paragraph (4) does not say so explicitly and I do not see a reason to establish a hard and fast

12  rule as *Bush* did in the absence of such language.

13       Moreover, I find two more general principles to be worthy of consideration. First,

14  generally speaking, notice in bankruptcy is a flexible concept properly tailored to the

15  circumstances presented. *In re Tennant,* 318 B.R. 860, 871-72 (B.A.P. 9th Cir. 2004); *In re*

16  *Krueger*, 88 B.R. 23, 241 (B.A.P. 9th Cir. 1988). Looking at the docket, it appears a timely

17  objection was filed to Debtor's claimed homestead exemption and that Debtor's counsel was

18  notified. Debtor later filed an objection to the initial hearing date stating that he was not

19  personally served, presumably because he received that notice. Realizing the oversight,

20  Zions' counsel immediately sought a continuance of the hearing and served Debtor with the

21  objection. I find nothing untoward about that process because, in the end, Debtor had due

22

23

24       [8] As an aside, I reject Zions' argument that Bush rule, even if correct, cannot allow
me to summarily overrule its objection, calling this result "arbitrary and bizarrely

25  draconian[.]" ECF 153, p. 20. In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992), the
Supreme Court held that a party in interest cannot object to debtor's claim of exemption

26  after Bankruptcy Rule 4003(b)(1)'s deadline has passed, even if the debtor has no "colorable
statutory basis for claiming it." The Supreme Court's holding in *Freeland & Kronz* creates

27  results that are at least as arbitrary as those urged here.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION          9/29

1   notice of the objection and hearing date and filed a timely and comprehensive response.

2   More is not necessary, at least under the current version of Bankruptcy Rule 4003.

3        I also conclude that getting to the substance of a dispute is preferable to reaching a

4   decision by default, which is one reading of Debtor's argument. As the Ninth Circuit said in

5   affirming a district judge's refusal to enter a default judgment: "Our starting point is the

6   general rule that default judgments are ordinarily disfavored. Cases should be decided upon

7   their merits whenever reasonably possible." *Eitel v. McCool,* 782 F.2d 1470, 1472 (9th Cir.

8   1986) (citing *Pena v. Seguaros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir. 1985)). In this

9   matter, the parties contest Debtor's right to a homestead exemption and have filed extensive

10  briefing on the point. Getting to the bottom of those disputes is the right thing to do.

11       C.    Burden of Proof

12       The burden of proof in an exemption objection is on the party objecting to the

13  claimed exemption under Bankruptcy Rule 4003(c), which says the party bringing a claim

14  objection bears "the burden of proving that the exemptions are not properly claimed." But I

15  note that in *In re Diaz,* 547 B.R. 329, 337 (B.A.P. 9th Cir. 2016), the BAP reasoned that the

16  Supreme Court's decision in *Raleigh v. Illinois Department of Revenue*, 530 U.S. 15 (2000),

17  requires that "where a state law exemption statute specifically allocates the burden of proof

18  to the debtor, Bankruptcy Rule 4003(c) does not change that allocation." C.C.P. § 703.580(b)

19  allocates the burden of proof at a hearing on a claim of exemption to the exemption

20  claimant. In turn, C.C.P. § 704.780(a)(1) allocates the burden of proof at a hearing on a

21  homestead exemption claim on the claimant unless "the records of the county tax assessor

22  indicate that there is a current homeowner's exemption . . . for the dwelling claimed by the"

23  debtor; in that instance, "the judgment creditor has the burden of proof that the dwelling is

24  not a homestead." The BAP in *Diaz* held these provisions showed that "California has

25  mandated the use of state exemptions in bankruptcy and has placed the burden of proof on

26  the party claiming the exemption." 547 B.R. at 337 (citations omitted).

27

28
ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                        10/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    I conclude *Diaz* does not apply to Zions' objections. The trustee's objection in *Diaz*

2    was that the debtor's homestead exemption was improper because he did not reside in the

3    property on the date he filed his bankruptcy case. That is, the objection argued the debtor

4    was not entitled to his claimed exemption under State law. But the objections here do not

5    challenge Debtor's entitlement to a homestead under State law. They argue such exemption

6    should be limited or barred entirely under §§ 522(o) and (p). Since Zions' objections arise

7    from Federal limitations on State exemptions, Bankruptcy Rule 4003(c) provides the relevant

8    burden of proof here, not State law. *See In re Fehmel*, 372 Fed. App'x. 507, 511 (5th Cir. 2010)

9    (Applying Bankruptcy Rule 4003(c) to a § 522(p) objection); *In re Wilcut*, 472 B.R. 88, 92

10   (B.A.P. 10th Cir. 2012) (applying Bankruptcy Rule 4003(c) to a § 522(o) objection).

11   In the Ninth Circuit, Bankruptcy Rule 4003(c)'s burden of proof works as follows:

12   "A claimed exemption is presumptively valid . . . . Once an exemption has been claimed, it is

13   the objecting party's burden . . . to prove that the exemption is not properly claimed.

14   Initially, this means that the objecting party has the burden of production and the burden of

15   persuasion. The objecting party must produce evidence to rebut the presumptively valid

16   exemption. If the objecting party can produce evidence to rebut the exemption, the burden

17   of production then shifts to the debtor to come forward with unequivocal evidence to

18   demonstrate that the exemption is proper. The burden of persuasion, however, always

19   remains with the objecting party." *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999)

20   (internal citations and quotation marks omitted). I will apply this framework to Zions'

21   objections under both § 522(o) and (p).

22        D.    Zions' § 522(p) Objection Must be Sustained

23             1.    *Section 522(p) Applies Here*

24   Section 522(p)(1)(A) says that, "as a result of electing under subsection (b)(3)(A) to

25   exempt property under State or local law, a debtor may not exempt any amount of interest

26   that was acquired by the debtor during the 1215-day period preceding the date of the filing

27   of the petition that exceeds in the aggregate $125,000 in value in real [] property that the

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                              11/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  debtor . . . uses as a residence[.]" Understanding this provision requires some discussion of

2  how exemptions work under the Code.

3        The Code's exemption framework is as follows: Section 522(l) requires a debtor "file

4  a list of property that the debtor claims as exempt under subsection (b) of this section."

5  Section 522(b)(1) allows an individual debtor to "exempt from property of the estate the

6  property listed in either paragraph (2) or, in the alternative, paragraph (3) of" § 522(b).

7  Section 522(b)(2) says "property listed in" that subsection means the property exemptions

8  provided in § 522(d), "unless the State law that is applicable to the debtor under paragraph

9  (3)(A) specifically does not so authorize."[9] And § 522(b)(3), subject to §§ 522(o) and (p),

10  defines "property listed in" that subsection to mean "any property that is exempt under

11  Federal law, other than subsection (d) of this section, or State or local law that is applicable

12  on the date of the filing of the petition[.]" To summarize: a debtor is required to file a list of

13  property he claims as exempt. A debtor can claim the exemptions described in either

14  §§ 522(b)(2) or (3). But if applicable State law explicitly disallows the exemptions provided in

15  § 522(d), then § 522(b)(2) essentially provides the debtor no valid exemptions.

16        Courts are split on the meaning of § 522(p) limiting a debtor's claim of exemption "as

17  a result of electing under subsection (b)(3)(A) to exempt property under State or local law"

18  when a State has opted out of the federal exemption scheme. One interpretation is that "the

19  bankruptcy exemptions of § 522(d) may not be elected by a debtor if the applicable state law

20  specifically does not so authorize. This effectively permits states to 'opt out' of the

21  Bankruptcy Code's exemptions, and as noted above [California] is an opt-out state.

22  Consequently in [California], a debtor does not get to 'elect' state exemptions. Rather, they

23  are the only exemptions available to a debtor, so there is no election to be made." *In re*

24  *Mcnabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005). Because § 522(p) only applies "as a result

25  of electing under subsection (b)(3)(A) to exempt property under State or local law," and a

26

27       [9] C.C.P. § 703.130 makes clear that the exemptions in § 522(d) "are not authorized

28  in" California.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION              12/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1  state's decision to opt out of § 522(d) prohibits a debtor from electing such exemptions, a

2  debtor in such a state cannot make an election, so § 522(p) does not apply. *Mcnabb* also

3  pointed to § 522(o) which, instead of using § 522(p)'s election language, states it applies

4  "[f]or purposes of subsection (b)(3)(A)[.]" "If Congress had similarly intended the $125,000

5  cap found in § 522(p) to apply across the board, it would presumably have used the identical

6  language: 'For purposes of subsection (b)(3)(A), a debtor may not exempt any amount' that

7  was acquired during 1,215 days prepetition. There would have been no need to refer to an

8  election at all. This striking difference between the language of § 522(o) and § 522(p) must

9  have been intended to effect a difference in result. The somewhat convoluted language of

10 § 522(p) must have been intended to impose a condition beyond that of the far simpler

11 language of § 522(o)." *Mcnabb*, 326 B.R. at 790 (citations and footnote omitted).

12      *Mcnabb* also pointed to § 522(q)(1), which also applies "[a]s a result of electing under

13 subsection (b)(3)(A) to exempt property under State or local law[.]" That subsection bars a

14 debtor from exempting more than $125,000 "if he has been convicted of a felony or owes a

15 debt arising from securities fraud, breach of fiduciary duty, etc." *Mcnabb*, 326 B.R. at 790.

16 The court found "special significance" in how this provision interacts with § 727(a)(12). That

17 provision requires a court deny a discharge if "finds that there is reasonable cause to believe

18 that § 522(q)(1) may be applicable to the debtor; and there is pending any proceeding in

19 which the debtor may be found guilty of a felony of the kind described in section

20 522(q)(1)(A)[.]" § 727(a)(12)(A)–(B). In the court's view, "[s]ubparagraph A of § 727(a)(12)

21 necessarily implies that § 522(q)(1) 'may be applicable' to some debtors and not to others,

22 because such applicability is a discrete finding the court is required to make. Subparagraph B

23 of § 727(a)(12) necessarily implies that the determination under (A)—whether § 522(q)(1)

24 may be applicable to the debtor—is something separate and distinct from the finding that

25 there is pending a proceeding in which the debtor may be found guilty of a felony or liable

26 for a debt of the kind described there. What would make § 522(q)(1) applicable, or not

27 applicable, to a debtor *other than* the pendency of such a proceeding? Other the pendency of

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    13/29

1    such a proceeding, the only other factor that could determine whether § 522(q)(1) 'may be

2    applicable' to a debtor is whether a debtor elects to claim state exemptions. A court would

3    not need a hearing to find reasonable cause to believe that a debtor has elected state

4    exemptions in states where no such election is available." *Mcnabb*, 326 B.R. at 790.

5         The other approach concludes that, while an "election may become ineffective if the

6    debtor chooses a federal exemption in an opt-out state, [] the debtor nonetheless makes an

7    'election' within the meaning of the statute." *In re Virissimo*, 332 B.R. 201, 205 (Bankr. D.

8    Nev. 2005). The court reasoned as follows: "Under [] § 541 all property is property of the

9    estate. If the debtor wishes to exempt property he must engage in an act to do so. [] § 522(l).

10   Pursuant to § 522(b)(1), he may elect to choose property listed in [] § 522(b)(2) or (b)(3)."

11   *Virissimo*, 332 B.R. at 205. "Given the language of the statute, the debtor makes an election

12   as to whether to exempt property and whether to use paragraph (b)(2) or paragraph (b)(3). If

13   he 'elects' paragraph (b)(2) in [California], or any other opt-out state, and if a party timely

14   objects, then he is denied the exemption. But conversely, as the United States Supreme

15   Court has held in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992), if a party does not timely

16   object to a claimed objection, the property is exempt even if there is no basis for the

17   claiming of that exemption. Similarly, if the debtor fails to choose any exemptions, no

18   property is exempted." *Virissimo*, 33 B.R. at 205–06. The court also noted that Congress

19   could have avoided this result by rewording § 522(p) to say: "'A debtor shall receive

20   exemptions set forth under subsection (d) unless the state law does not permit such

21   exemptions to be used. If a state does not permit a debtor to use such exemptions, the

22   debtor shall receive the exemptions provided under the laws of that state.' With that

23   language there is no election and a debtor automatically receives state exemptions but not

24   the exemptions under § 522(d)." *Virissimo*, 33 B.R. at 206.

25        *Virissimo* alternatively concluded that, if one considered § 522(p) to be ambiguous, the

26   legislative history of this provision supports applying it to states that have opted out of the

27   § 522(d) exemption scheme. In its own words: "Nowhere is there a suggestion that the

28

<div style="writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    14/29

1    $125,000 homestead limitation is applicable to debtors in some states but not to debtors in

2    other states. Rather, it is obvious that Congress intended to eliminate some of anomalies

3    created by the use of state homestead exemptions and create a more uniform, predictable set

4    of exemptions. Congress wanted to close what it perceived was the abuse of exemptions

5    caused, in part, by the varying state laws and overly generous homesteads." 332 B.R. at 207.

6    The Bankruptcy Appellate Panel appears to have adopted the *Virissimo* court's view, though

7    the Panel did not explain its reasoning for doing so. *See In re Caldwell*, 545 B.R. 605, 609

8    (B.A.P. 9th Cir. 2016) ("Section 522(p)(1) imposes a limitation on the homestead exemption

9    a debtor can claim regardless of the applicable state law exemptions.") (citing *In re Kane*, 336

10   B.R. 477, 481 (Bankr. D. Nev. 2006); *Virissimo*, 332 B.R. at 207).

11          I conclude § 522(p)(1) applies even where State law opts out of the exemptions given

12   in § 522(d). Section 522(l) requires the debtor to list the exemptions he claims. Another way

13   of saying this is that a debtor is required to state in writing which exemptions he is electing

14   to claim. It is true that California, by opting out of § 522(d), causes § 522(b)(2) to list no

15   property as exempt. But as *Virissimo* noted, a debtor could still claim exemptions under

16   § 522(d), and such exemptions would be allowed unless someone timely objected. *See Taylor*

17   *v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992) (holding that invalid claims of exemption

18   still result in such property being exempt unless someone timely object under Bankruptcy

19   Rule 4003(b)). *Mcnabb*'s reasoning is essentially that a state opting out of § 522(d) precludes a

20   debtor from electing those exemptions, and the resulting choice between State exemptions

21   under § 522(b)(3) or no exemptions cannot be construed as an election at all. The first

22   problem with this reasoning is it adds an additional question – not just whether an election

23   happened, but whether it was effective – into a provision that does not expressly ask for it.

24   But more importantly, the Supreme Court's decision in *Freeland & Kronz* makes clear that a

25   debtor *could* make an effective election of § 522(d)'s exemptions in a state that has opted out

26   of them, unless someone timely objects. So even if the effectiveness of a debtor's election

27

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                              15/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1   matters under § 522(p), a state opting out of federal exemptions does not necessarily bar a

2   debtor-resident of such a state from electing such exemptions.

3         The majority of courts that have decided this issue have done so in accordance with

4   *Virissimo*, not *Mcnabb*, including the BAP. And my own analysis of § 522(p) leads me to

5   conclude that *Virissimo* provides the correct rule. Accordingly, § 522(p) applies to Debtor's

6   homestead exemption. I determine the effect of § 522(p) on Debtor's exemption next.

7                2.    *§ 522(p) Limits Debtor's Homestead Exemption to $170,350*

8         Again, § 522(p)(1)(D) says "a debtor may not exempt any amount of interest that was

9   acquired by the debtor during the 1215-day period preceding the date of the filing of the

10   petition that exceeds in the aggregate $125,000[10] in value in real [] property that the debtor

11   or a dependent of the debtor claims as a homestead." Courts look to state law first to decide

12   what property interests a debtor acquired in a given transaction, "and then to [§] 522(p)(1) to

13   determine whether that [interest] qualifies as an 'any amount of interest that was acquired'

14   within the compass of [§] 522(p). *In re Greene*, 583 F.3d 614, 620 (9th Cir. 2009).

15         "California defines a homestead as a dwelling where a person resides." *In re Schaefers*,

16   623 B.R. 777, 782 (B.A.P. 9th Cir. 2020) (citing Cal. Code Civ. Proc. §§ 704.710(a), (c)).

17   "Californians may, therefore, claim a homestead exemption without holding a fee simple

18   interest in the subject real property. Even so, they must have *some* legal or equitable interest

19   in the real property." *Schaefers*, 623 B.R. at 782–83 (citations omitted). "[U]nder California

20   law a limited liability company is a separate and distinct legal entity from its owners or

21   members." *Id.* at 783 (citing *Curci Invs., LLC v. Baldwin*, 14 Cal. App. 5th 214, 220–21 (2017)).

22   "Consequently, limited liability company members have no interest in the company's assets."

23   *Schaefers*, 623 B.R. at 783 (citing *Abrahim & Sons Enters. v. Equilon Enters., LLC*, 292 F.3d 958,

24   963 & n.21 (9th Cir. 2002)). In *Schaefers*, the BAP held that a debtor who failed to identify a

25

26

27         [10] This amount is regularly adjusted to reflect changing economics. Currently the

28   amount is $170,350.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION             16/29

1    beneficial or equitable interest in real property held by an LLC could not claim a homestead

2    exemption in such property because his interest in the LLC was not a homestead.

3        In *Greene*, the Ninth Circuit used the Black's Law Dictionary definition of "acquire"

4    to interpret § 522(p): "[t]o gain possession or control of; to get or obtain." 583 F.3d 614, 623

5    (9th Cir. 2009). Because Debtor and Lions Properties are separate entities, Debtor did not

6    gain possession or control of the San Jose Property until it was quitclaimed to Debtor the

7    day before he filed this bankruptcy case. So to the extent the San Jose Property appreciated

8    in value between the date of purchase and the date Lions Properties transferred it to Debtor,

9    he "acquired" such appreciation in the transfer, making that appreciation subject to § 522(p).

10        As for any post-petition appreciation: "A debtor's exemptions have long been fixed

11    at the date of the filing of the bankruptcy petition. This rule determines not only what

12    exemptions a debtor may claim, it also fixes the value that a debtor is entitled to claim in her

13    exemptions." *Wilson v. Rigby*, 909 F.3d 306, 308 (9th Cir. 2018) (cleaned up). So assuming

14    that trustee's valuation of the San Jose Property is correct, that post-petition appreciation

15    accrues to the bankruptcy estate, and cannot be claimed as exempt by Debtor. *See* § 541(a)(1)

16    ("The commencement of a [bankruptcy case] . . . creates an estate. Such estate is comprised

17    of," among other things, "all legal or equitable interests of the debtor in property as of the

18    commencement of the case.").

19        Debtor fails to show what interest he had in the San Jose Property when it was held

20    by Lions Properties, so I find he had none. As Lions Properties did not transfer the San Jose

21    Property to Debtor until the day before he filed this bankruptcy case, he acquired any pre-

22    petition appreciation on that date, making such appreciation subject to § 522(p). And any

23    post-petition appreciation is the property of the bankruptcy estate. I conclude that Zions is

24    correct, and § 522(p) requires that Debtor's homestead exemption in the San Jose Property

25    must be limited to $170,350.

26

27

28

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                    17/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

E.      § 522(o) Limits Exemptions Otherwise Available but does not Apply on the Facts of this Case

     1.      *Exemption Planning is Permitted in General but § 522(o) Changes Things*

In this circuit, debtors like Kane are permitted to maximize their exemptions when contemplating a bankruptcy filing. The courts more or less uniformly conclude that the conversion by a consumer of non-exempt property into exempt property on the eve of bankruptcy alone does not mean a debtor must be denied such exemptions. *In re Stern*, 345 F.3d 1036, 1044-45 (9th Cir. 2003); *Wudrick v. Clements*, 451 F.2d 988, 989-90 (9th Cir. 1971); *In re Beverly*, 374 B.R. 221, 241 (B.A.P. 9th Cir. 2007). But courts have acknowledged that Congress has the power to legislate otherwise and change that result. *In re Lacounte,* 342 B.R. 809, 814 (Bankr. D. Mont. 2005). One such provision is § 522(o). It states:

> (o) For purposes of subsection (b)(3)(A), and notwithstanding subsection (a), the value of an interest in--
>
> > (1) real or personal property that the debtor or a dependent of the debtor uses as a residence;
> >
> > (2) a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence;
> >
> > (3) a burial plot for the debtor or a dependent of the debtor; or
> >
> > (4) real or personal property that the debtor or a dependent of the debtor claims as a homestead;
>
> shall be reduced to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the date of the filing of the petition with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of.

Courts have developed a standard to use when evaluating claims a debtor has violated § 522(o): "To prevail, a creditor or trustee must show: (a) an increase in the value of the debtor's homestead; (b) that the increase was 'attributable' to the disposition of nonexempt assets; (c) that the disposition of the nonexempt assets was made with the intent to hinder, delay, or defraud a creditor; and (d) that the disposition occurred during the ten-year period

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION             18/29

1   ending on the date the debtor's bankruptcy petition was filed." *In re Stanton*, 457 B.R. 80, 91

2   (Bankr. D. Nev. 2011).[11] Some courts use a variant of this test, but they are not materially

3   different. *In re Presto*, 376 B.R. 554, 568 (Bankr. S.D. Tex. 2007) (citing *In re Sissom*, 366 B.R.

4   677, 688 (Bankr. S.D. Tex. 2007)); *In re Corbett*, 478 B.R. 62, 69 (Bankr. D. Mass. 2012).

5         The dispute in this case centers on whether Debtor "disposed of" property in his

6   acquisition of the San Jose Property. Zions contends that Debtor "disposed of" nonexempt

7   assets to purchase a homestead by taking a $600,000 loan secured by junior liens on the

8   Canadian Properties, and by using the proceed from that loan as a partial down payment on

9   the San Jose Property. Debtor disagrees and argues he had no equity in the Canadian

10  Properties until he paid off a second deed of trust with some of his 2020 salary bonus, which

11  he only did because the loan became due, requiring a balloon payment. More critically, in

12  Debtor's view, that borrowing did not involve disposing of non-exempt assets.

13         2.     *Decisions Interpreting "Dispose of" Under § 522(o)*

14         Case law addressing precisely whether property has been "disposed of" within the

15  meaning of the statute is hard to come by. Reviewing the case law, I find several types of

16  cases. The first involves actual dispositions of assets – including real property, *In re Craig*,

17  2012 WL 6645692 (Bankr. D. Mont. Dec. 20, 2012), construction equipment, *In re Wilmoth*,

18  397 B.R. 915, 917 (B.A.P. 8th Cir. 2008), stock in a small company, *In re Sissom*, 366 B.R.

19  677, 689 (Bankr. S.D. Tex. 2007), coin collections, *In re Crabtree*, 562 B.R. 749, 751 (B.A.P.

20  8th Cir. 2017), trucks and trailers, *In re Maronde*, 332 B.R. 593, 597 (Bankr. D. Minn. 2005),

21

22         [11] Debtor argues this test is in conflict with *In re Stern*, 345 F.3d 1036, 1043 (9th Cir.

23  2003), which reiterated that "'that the purposeful conversion of nonexempt assets to exempt
    assets on the eve of bankruptcy is not fraudulent per se.'" (quoting *Wudrick v. Clements*, 451

24  F.2d 988 (9th Cir. 1971)). Assuming that is true, the problem for Debtor is that § 522(o) was
    added to the Code as part of the Bankruptcy Abuse Prevention and Consumer Protection

25  Act, which was passed in 2005, after *Stern* was decided. At least one bankruptcy court in this
    circuit has concluded that § 522(o) "was obviously added to the Bankruptcy Code by

26  Congress to curb a perceived abuse by debtors of" *Stern*'s allowance of pre-bankruptcy

27  planning. *In re Lacounte*, 342 B.R. 809, 814 (Bankr. D. Mont. 2005). I decline to decide this
    issue, as I conclude there are other grounds for denying Zions' § 522(o) claim.

28  ORDER ON ZIONS BANCORPORATION'S OBJECTION
    TO DEBTOR'S HOMESTEAD EXEMPTION                                              19/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

boats, *In re Roberts*, 527 B.R. 461, 471 (Bankr. N.D. Fla. 2015), liquor licenses and a business enterprise, *In re Halinga*, 2013 WL 6199152 (Bankr. D. Id. Nov. 27, 2013).

A second type of case involves, as here, a borrowing against property and use of funds to acquire exempt property. Here, one might argue that the borrowing against the Canadian Property was a sale of Debtor's equity in the property for cash, and later use of cash to purchase the Residence. The Fifth Circuit faced similar facts in *In re Cipolla*, 476 Fed. App'x. 301, 305 (5th Cir. 2012). Cipolla, the debtor, borrowed against non-exempt real property and used the funds to purchase an exempt homestead in Texas, much like Debtor did. But the *Cipolla* court never actually analyzed whether this qualified as a disposition, apparently because the parties did not contest it. The Fifth Circuit referred to the transaction using varying nomenclature, including sometimes referring to it as a "transfer."

Some courts have determined that the use of borrowed funds to acquire exempt property or pay down a debt on exempt property may be barred by § 522(o). *See In re Keck*, 363 B.R. 193, 208-09 (Bankr. D. Kan. 2007) (cash advances used to pay home equity line); *In re Wallwork*, 616 B.R. 395, 406 (Bankr. D. Idaho 2020)(credit card advances used to improve home, but not applying § 522(o) due to lack of intent to defraud). The trouble is the courts that have so held did not fully analyze the first part of the statute, which requires a disposition. In these cases, the courts either assume the existence of a disposition without any real analysis or the parties have not argued the point. The absence of analysis on what a "disposition" precisely is leads me to find their conclusions unpersuasive.

Somewhat surprisingly, some cases have held that the use of non-exempt cash reserves to acquire exempt assets can run afoul of § 522(o). These seem to be the facts in *In re Addison*, 540 F.3d 805, 813-14 (8th Cir. 2008) (concluding use of funds in brokerage and savings account to pay down mortgage balance qualified under § 522(o) as "conversion" but finding no extrinsic evidence of fraudulent intent). But we know that in the Ninth Circuit, absent § 522(o), exemption planning is not categorically barred. We also know that the statute requires a disposition. If this line of thinking is correct and every use of non-exempt cash to

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                      20/29

<div style="writing-mode: vertical">UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA</div>

1   acquire exempt assets is barred, I would have to conclude that § 522(o) overrules all Ninth

2   Circuit authority on exemption planning.

3         One could make a case that Congress itself, in enacting § 522(o) meant to catch a

4   broad range of transactions under that provision. The Report of the Committee on the

5   Judiciary House of Representatives described BAPCPA's addition to § 522 in this fashion:

6           Sec. 308. Reduction of Homestead Exemption for Fraud.

7           Section 308 amends section 522 of the Bankruptcy Code to

8           reduce the value of a debtor's interest in the following property
            that may be claimed as exempt under certain circumstances: (i)

9           real or personal property that the debtor or a dependent of the
            debtor uses as a residence, (ii) a cooperative that owns property

10         that the debtor or a dependent of the debtor uses as a residence,
           (iii) a burial plot, or (iv) real or personal property that the debtor

11         or dependent of the debtor claims as a homestead. Where
           nonexempt property is converted to the above-specified exempt

12         property within the ten-year period preceding the filing of the
           bankruptcy case, the exemption must be reduced to the extent

13         such value was acquired with the intent to hinder, delay or
           defraud a creditor.

14   H.R. Report No. 109-31, pt. 1, at p. 72 (2005). The trouble is, the statute as proposed and

15   enacted consistently used the term "disposed of." It never strayed into other terms like

16   "converted" or "transferred" or any other such term. In my view, this means I must find the

17   challenged transaction was actually a disposition, and not any number of other transactions

18   that fall under the broad umbrella of "transfer."

19         3.    *The Bankruptcy Code Refers to the Term "Disposed of" and this Uniformly*

20               *Means Divestment of Ownership or the Rights of Ownership*

21         Finding little concrete guidance in the case law, it is worth looking harder at the

22   Bankruptcy Code itself to tease out a definition for "disposing of" property. The Ninth

23   Circuit has held under ordinary statutory interpretation rules, statutes are interpreted "as a

24   whole, giving effect to each word and making every effort not to interpret a provision in a

25   manner that renders other provisions of the same statute inconsistent, meaningless or

26   superfluous." *Boise Cascade Corp. v. EPA*, 942 F.2d 1427, 1432 (9th Cir. 1991) (citing

27   Sutherland Stat. Const. §§ 46.05, 46.06 (4th ed.1984); *Aluminum Co. of Am. v. Bonneville Power*

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION           21/29

*Admin.*, 891 F.2d 748, 755 (9th Cir.1989)). The Ninth Circuit has also held that "[w]e must

presume that words used more than once in the same statute have the same meaning." *Boise*

*Cascade*, 942 F.3d at 1432 (citing Sutherland Stat Const. § 46.06). So, where do these words

appear in the Bankruptcy Code and what does that tell us?

Section 559, which addresses the liquidation of repo participations, provides in part:

> In the event that a repo participant or financial participant liquidates one or more repurchase agreements with a debtor and under the terms of one or more such agreements has agreed to deliver assets subject to repurchase agreements to the debtor, any excess of the market prices received on liquidation of such assets (or if any such assets are not <u>disposed of</u> on the date of liquidation of such repurchase agreements, at the prices available at the time of liquidation of such repurchase agreements from a generally recognized source or the most recent closing bid quotation from such a source) over the sum of the stated repurchase prices and all expenses in connection with the liquidation of such repurchase agreements shall be deemed property of the estate, subject to the available rights of setoff.

§ 559 (emphasis added). In discussion this section, Collier makes clear it is intended to allow

non-breaching parties to close out or liquidate their investments by terminating the

agreement and fixing damage claims based on market prices at the time of liquidation.

5 Collier on Bankruptcy ¶ 559.04[1] (16th ed. 2021).

Section 725 also makes a reference to these words:

> After the commencement of a case under this chapter, but before final distribution of property of the estate under section 726 of this title, the trustee, after notice and a hearing, shall <u>dispose of</u> any property in which an entity other than the estate has an interest, such as a lien, and that has not been disposed of under another section of this title.

§ 725 (emphasis added). This also suggests a final winding up and termination of rights.

Finally, a provision addressing unclaimed property, § 347, contains a reference to

these words:

> (a) Ninety days after the final distribution under section 726, 1194, 1226, or 1326 of this title in a case under chapter 7, subchapter V of chapter 11, 12, or 13 of this title, as the case may be, the trustee shall stop payment on any check remaining unpaid, and any remaining property of the estate shall be paid into the court and <u>disposed of</u> under chapter 129 of title 28.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                    22/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

§ 347 (emphasis added). Here, the statute is referring to a final payment and close out of the estate's asset base. Obviously, none of these statutes has anything to do with exemptions and exemption planning. But each refers to a final resolution or termination of ownership interests and none even vaguely suggests a party would have a continuing relationship or ownership with the affected property.

The cases sometimes describe transactions subject to § 522(o) as involving transfers or conversions, but their usage is imprecise. The definitional section of the Code, § 101, makes clear that a "disposition" is narrower than other similar terms. "Transfer," by example, is defined this way:

> The term "transfer" means--
>
> (A) the creation of a lien;
>
> (B) the retention of title as a security interest;
>
> (C) the foreclosure of a debtor's equity of redemption; or
>
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of <u>disposing of</u> or parting with--
>
> > (i) property; or
> >
> > (ii) an interest in property.

11 U.S.C. § 101(54) (emphasis added). This section may not say exactly what a "disposition" is, but it at least implies that one cannot use "disposition" as an equivalent word for any other type of transfer. It is in some way distinct.

          4.    *Lacking Concrete Guidance, I Resort to the Dictionary*

That leaves us with common understandings of the words "disposed of." The Dictionary definitions of "dispose" include "to get rid of," "to deal with conclusively," and "to transfer to the control of another." *Dispose*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/dispose. From this definition, Congress appears to define a disposition narrowly by comparing it to a "parting with" property or

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION           23/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    interests in property. By contrast, the § 101(54) definition seems to distinguish a disposition

2    from the creation of encumbrances like liens and the foreclosure of equitable rights.

3         It is useful to consider whether there are better definitions for the transaction here

4    than disposition. One that comes immediately to mind is hypothecation: "The pledging of

5    something as security without delivery of title or possession." *Hypothecation*, Black's Law

6    Dictionary (11th ed. 2019). Debtor here borrowed against an asset and used the proceeds of

7    the loan to pay for a new house (which is now his claimed homestead).

8         5.    *Conclusion: Debtor did not Dispose of Assets Within the Meaning of § 522(o)*

9         I find no disposition of assets on the facts.

10        This case does not involve a sale of part or all of the Canadian Property. Instead,

11   Debtor leveraged the Canadian Properties to purchase an exempt residence. This is not a

12   disposition because the property used to buy the San Jose Property – his equity in the

13   Canadian Properties – never left Debtor's ownership and to this day remains titled in his

14   name. To find this series of transactions a disposition, I would have to conclude that any use

15   of non-exempt cash to buy property capable of exemption is a disposition, regardless of

16   whether that cash was obtained by selling property. I do not think § 522(o) works that way.

17        What matters is not whether cash was used to buy exempt property, but how the

18   debtor obtained the cash to do so. If a debtor obtained the cash by selling non-exempt

19   property, or even just a partial interest in such property, then the transaction is a disposition

20   and thus subject to § 522(o). But if a debtor obtains cash using non-exempt property in a

21   manner that does not result in the debtor giving up such property, in whole or in part, the

22   transaction is not a disposition, and § 522(o) does not apply. The latter more accurately

23   describes Debtor's conduct here. Zions' § 522(o) objection must therefore be denied.

24        6.    *I Cannot Determine Whether Debtor Intended to Hinder, Delay or Defraud his*

25              *Creditors Without an Evidentiary Hearing*

26        Debtor also argues he had no intend to hinder, delay, or defraud his creditors. He

27   contends that he borrowed against the Canadian Properties to buy the San Jose Property

28

1   because a loan became due in the ordinary course. He paid off that prior loan and took out

2   another to further his and his wife's desire to own a home. Debtor also notes that he only

3   borrowed "approximately $435,000 USD." ECF 147, p. 2.

4          The point may be moot given my conclusion that no disposition occurred within the

5   meaning of § 522(o). But I could not make a final determination about whether Debtor

6   acted with the intent to hinder, delay, or defraud creditors on the existing record. "[A] plain

7   reading of the statutory language reveals that hinder, delay, or defraud is stated in the

8   disjunctive, so intent to hinder or delay is sufficient." *Wallwork*, 616 B.R. at 406; *see In re*

9   *Bernard*, 96 F.3d 1279, 1281 (9th Cir. 1996) (applying the same reasoning to similar language

10  in § 727(a)(2)). "[I]ntent may be inferred from the facts and circumstances of a case, because

11  it is unlikely a debtor will testify directly that his intent was fraudulent." (citation omitted).

12  When deciding whether to make such an inference, courts look to the badges of fraud,

13  which "include (1) a close relationship between the transferor and the transferee; (2) that the

14  transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or

15  in poor financial condition at the time; (4) that all or substantially all of the Debtor's

16  property was transferred; (5) that the transfer so completely depleted the Debtor's assets that

17  the creditor has been hindered or delayed in recovering any part of the judgment; and (6)

18  that the Debtor received inadequate consideration for the transfer." *In re Retz*, 606 F.3d

19  1189, 1200 (9th Cir. 2010).

20         Beginning with the relationship between transferor and transferee, the transfer Zions

21  argues is subject to § 522(o) is the loan Debtor obtained by encumbering his equity in the

22  Canadian Properties, so the relevant transferee is the lender. Not, as Zions contends, Lions

23  Properties.[12] *See* ECF 74, p. 16 ("Here, the analysis centers on the facts and circumstances in

24

25         [12] To the extent Zions meant to use § 522(o) to attack the transfer of the San Jose
     Property from Lions Properties to Debtor, I would still deny the motion. Section 522(o)
26   only applies to property that *the debtor* disposed of. In the Lions Properties to Debtor
     transaction, it was Lions Properties, not Debtor, who disposed of the San Jose Property.
27   Zions' motion can be read to implicitly request I treat these separate transactions as linked,

28   ORDER ON ZIONS BANCORPORATION'S OBJECTION
     TO DEBTOR'S HOMESTEAD EXEMPTION                                    25/29

1   the time period leading up to the 'transfer'—i.e., the August 2020 Loan."). Nothing in the

2   record allows me to infer there was a close relationship between Debtor and the lender. This

3   badge of fraud is not present here.

4       The next badge of fraud asks whether the transfer was made in anticipation of a

5   pending suit. As Zions notes, there were multiple lawsuits pending against Debtor at the

6   time of the transfer. And Debtor has admitted that the increasing number of those lawsuits,

7   and his inability to resolve those actions through his pre-bankruptcy restructuring, caused

8   him to file this petition. This badge of fraud is present.

9       Third, Debtor's schedules show he was balance sheet insolvent as of the petition

10  date, ECF 1, p. 8, and in October 2019 he was in poor financial condition, as his concerns

11  over ability to meet debt obligations caused him to hire restructuring counsel. I have no

12  evidence that in between October 2019 and the petition date Debtor's financial situation

13  improved, and given that Debtor also admitted to incurring significant gambling losses

14  during that period, I conclude it appropriate to infer he was either insolvent or in serious

15  financial distress on the transfer date.

16      Fourth, I conclude that Debtor did not transfer substantially all of his non-exempt

17  property. True, the $600,000 in question represents over 86% of Debtor's claimed

18  exemptions. *See* ECF 1, p. 17–18. But from the standpoint of Debtor's total unencumbered

19  property, the $600,000 represents just under 22%. *See* ECF 17, p. 9. I do not think that less

20  than a quarter of non-exempt assets qualifies as substantially all.

21      Fifth, I conclude Zions has not been hindered in collecting on its judgment, because

22  it does not currently have one.

23      Finally, Debtor did receive adequate consideration for the disposition, assuming it

24  was one: in exchange for granting a security interest in his equity in the Canadian Properties,

25  he received $435,000. Zions again argues the wrong transfer: while it is true Lions Properties

27  but to do so I would have to find that Debtor and Lions Properties are alter egos. No one

28  has asked me to make such a finding, and I decline to do so.

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                          26/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    received nothing for transferring the San Jose Property to Debtor, that transfer did not

2    involve a disposition *by Debtor* of non-exempt assets.

3         Two badges of fraud are present here. But Debtor presents an alternative explanation

4    for this transfer: "The paying off of the maturing second deed on the Canadian Properties

5    and the subsequent refinance were very close in time. The series of transactions was not

6    designed to effect creditors but was done to retire matured debt and then purchase a home

7    for Kane, his wife and their newborn daughter." ECF 146, p. 9. At a minimum, the fact that

8    the second deed on the Canadian Properties came due of its own accord is some evidence

9    that this transaction was not made with ill intent. It provides an alternate explanation for the

10   timing of this transaction that is not rooted in Debtor planning for his bankruptcy case.

11        I also note that Debtor originally vested title to the San Jose Property in Lions

12   Properties. Zions points out that they are statutory insiders, and says I should infer from this

13   that the entire transaction was an effort to hide assets from creditors. But this is a motion to

14   deny Debtor the homestead exemption he claims. If Zions is correct that Debtor planned

15   this transaction from the outset to defraud his creditors by obtaining a homestead on the eve

16   of bankruptcy, why did he have Lions Properties hold title to the San Jose Property? That

17   choice could arguably support a finding that Debtor intended to hinder, delay, or defraud

18   creditors, but it cannot be used to show that Debtor planned from the outset to claim a

19   homestead exemption in the San Jose Property. If anything, Debtor's decision to vest title in

20   Lions Properties at first supports an inference that he did not intend to file bankruptcy at

21   that time, as that decision, absent the subsequent transfer, would have prevented Debtor

22   from claiming a homestead exemption in the San Jose Property.

23        Zions is correct that some badges of fraud are present here. But Debtor's alternative

24   explanation for the timing of the transaction could allow a reasonable trier of fact to find he

25   lacked the necessary intent, despite the presence of such badges. Moreover, Debtor's choice

26   to vest title to the San Jose Property in Lions Properties could only frustrate what Debtor is

27   trying to do now: exempt the equity he holds in the San Jose Property in this bankruptcy

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                    27/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

case. To resolve the factual contentions presented here I would need to weigh evidence and

make credibility determinations. Because it would be improper to do so on the papers, which

is a summary judgment-like procedure, I conclude that, to the extent I must reach Debtor's

intent to decide Zions' § 522(o) objection, an evidentiary hearing is necessary.

**III.    CONCLUSION**

Debtor's exemption in the San Jose Property is not barred by § 522(o) but it is limited

by § 522(p) to $170,350.

IT IS SO ORDERED.

**END OF ORDER**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1    **COURT SERVICE LIST**

2    [ECF recipients only]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER ON ZIONS BANCORPORATION'S OBJECTION
TO DEBTOR'S HOMESTEAD EXEMPTION                                   29/29

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
(626) 229-7220

**RE:**   EVANDER FRANK KANE

**Appellant:** EVANDER FRANK KANE

**BAP No.:** NC-21-1167

**Bk. No.:** 21-50028                    **RE:** Notice of Appeal Filed on 7/29/21

## OPENING LETTER

Notice of Appeal in this case has been received by the Bankruptcy Appellate Panel (BAP) and assigned the case number above.

Electronic filing using the BAP's Case Management/Electronic Case Filing (CM/ECF) docketing system is **mandatory** for all attorneys. Please review the Administrative Order Regarding Electronic Filing in BAP Cases available on the BAP website www.bap9.uscourts.gov for further information.

For non-attorneys, all papers filed with the BAP should be in the form of an original and three copies.

The BAP docket and other court information is available through the National PACER system. http://www.bap9.uscourts.gov

Enclosed are the 9th Cir. BAP Rules governing practice before the BAP. Appeals are also governed by Parts VIII and IX of the Federal Rules of Bankruptcy Procedure (F.R.B.P.), and some parts of the Federal Rules of Appellate Procedure (F.R.A.P.) See 9th Cir. BAP Rule 8026-1.

Pursuant to 9th Cir. Rule 8003-1, please immediately send the BAP Clerk a copy of the signed and entered order or judgment being appealed if it was not attached to your notice of appeal.

After a Notice of Appeal has been filed, the parties' next step in prosecuting this appeal is compliance with F.R.B.P 8009, which require Appellant to file within 14 days in the bankruptcy court a designation of the record, statement of issues on appeal, and a notice regarding the ordering of transcripts. Under these rules Appellee may also file a supplemental designation of the record and order transcripts. The party ordering the transcripts must make satisfactory arrangements for payment of their costs.

Even if transcripts are not ordered, Appellant is required to file with the bankruptcy court a notice stating that none are required. See also 9th Cir. BAP R. 8009-1.

The parties should note that the designation of the record under F.R.B.P. 8009 is a necessary procedural step in prosecuting an appeal and the parties may not later include in their excerpts of the record documents which have not been designated.

The record and bankruptcy file remain with the Clerk of the bankruptcy court and the Panel reviews only those items which are reproduced and included in the excerpts of the record filed at the time of the briefs. While the Panel may call up the formal record, in practice this rarely occurs.

Further, it is the parties' responsibility to monitor the appeal to ensure that transcripts are timely filed and the record is completed in a timely manner. Under F.R.B.P. 8010(a)(2)(C), the court reporter is required to file transcripts within 30 days of receipt of the parties' request, unless an extension has been granted.

After the record is complete, the Clerk of the bankruptcy court will send a Certificate of Record, sometimes referred to as a Certificate of Readiness or Certificate of Transcripts, to the BAP Clerk.

Appeals are set for hearing in the bankruptcy district from which the appeal arose whenever feasible. To expedite the appeal or if the parties feel argument is unnecessary, they may file a stipulation or motion to

submit their appeal on the briefs and record, thereby waiving oral argument. The Panel will also consider stipulations requesting an alternative hearing location or hearing by telephone conference. Such motions should be filed at the earliest possible scheduled date, generally with the opening brief, as once a case has been scheduled for argument, continuance and request of change time and place are rarely granted.

<u>CERTIFICATE OF MAILING</u>

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Cecil Lizandro Silva, Deputy Clerk

**Date:** July 29, 2021

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
(626) 229-7220

To: Clerk, Bankruptcy Court

Debtor(s): EVANDER FRANK KANE

BAP No.: NC-21-1167
Bk. Ct. No.: 21-50028                    ADV. NO.:

The Bankruptcy Appellate Panel has received and docketed the notice of appeal referenced in the attached transmittal. The BAP case number is indicated above for your information.

If completion of the record has been delayed, please advise us as to the cause of the delay by completing the following checklist and sending a copy of this letter back to us:

**IF THE RECORD ON APPEAL IS COMPLETE, PLEASE SEND THE CERTIFICATE OF READINESS**

Susan M Spraul, BAP Clerk

By: Cecil Lizandro Silva, Deputy Clerk
Date: July 29, 2021

**A) REASONS WHY THE RECORD HAS NOT BEEN COMPLETED. THE FOLLOWING ITEMS HAVE NOT BEEN FILED:**

[ ] No Filing Fees paid
[ ] No Designation of Record
[ ] No Statement of Issues
[ ] No Notice Regarding the Transcript
[ ] No Reporter's Transcript(s)

    Reporter name:_____
    phone:_____
    Judge:_____
    Transcript date(s):_____

[ ] No Transcript Fees paid
[ ] Extension of Time Granted to Reporter:
    New deadline:_____
[ ] Other:_____

**B) DEPUTY CLERK PROCESSING THIS APPEAL**

    1. Name:_____
    2. Phone:_____
    3. Date:_____

**General Docket**
**U. S. Bankruptcy Appellate Panel for the Ninth Circuit**

| | |
|---|---|
| **Bankruptcy Appellate Panel Docket #:** 21−1167 | **Docketed:** 07/29/2021 |

Evander Kane v. Professional Bank, et al
**Appeal From:** California Northern − San Jose
**Fee Status:** fee paid

**Case Type Information:**
  **1)** Bankruptcy
  **2)** Chapter 7 Non−Business
  **3)** null

**Originating Court Information:**
  **District:** 0971−5 : 21−50028
  **Trial Judge:** Stephen L. Johnson, Bankruptcy Judge
  **Date Filed:** 01/09/2021

| **Date Order/Judgment:** | **Date NOA Filed:** | **Date Rec'd BAP:** |
|---|---|---|
| 07/09/2021 | 07/23/2021 | 07/29/2021 |

**Prior Cases:**
  None

**Current Cases:**

| | **Lead** | **Member** | **Start** | **End** |
|---|---|---|---|---|
| Related | | | | |
| | 21−1165 | 21−1167 | 07/29/2021 | |

| **Panel Assignment:** | Not available |
|---|---|

In re: EVANDER FRANK KANE
       Debtor

_____

EVANDER FRANK KANE                    Stephen Davis Finestone
       Appellant                      Direct: 415-421-2624
                                          [NTC Retained]
                                          Finestone Hayes LLP
                                          20th Floor
                                          456 Montgomery Street
                                          San Francisco, CA 94104

v.

PROFESSIONAL BANK              Stephen G. Opperwall, Attorney
       Appellee                      Direct: 925-417-0300
                                          [NTC Retained]
                                          Law Offices of Stephen G. Opperwall
                                          Suite 100
                                          4900 Hopyard Road
                                          Pleasanton, CA 94588

ZIONS BANCORPORATION, N.A., dba California Bank &   Michael Gerard Fletcher, Attorney
Trust                                     Direct: 323-852-1000
       Appellee                      [NTC Retained]
                                          Frandzel Robins Bloom & Csato, L.C.
                                          19th Floor
                                          1000 Wilshire Boulevard
                                          Los Angeles, CA 90017

SOUTH RIVER CAPITAL, LLC           Heinz Binder, Attorney
       Appellee                      Direct: (408) 295-1700
                                          [NTC Retained]
                                          BINDER & MALTER
                                          2775 Park Ave.
                                          Santa Clara, CA 95050-0000

                                          David B. Rao, Attorney
                                          Direct: 408-295-1700
                                          [NTC Retained]
                                          Binder & Malter, LLP
                                          2775 Park Avenue
                                          Santa Clara, CA 95050

CENTENNIAL BANK                John A. Anthony
       Appellee                      Direct: 813-273-5616
                                          [NTC Retained]
                                          ANTHONY & PARTNERS, LLC
                                          Suite 1600
                                          100 S. Ashley Drive

Tampa, FL 33602

Peter C. Califano
Direct: 415–433–1900
[NTC Retained]
COOPER, WHITE & COOPER LLP
17th Floor
201 California Street
San Francisco, CA 94111

Andrew J. Ghekas
Direct: 813–273–5616
[NTC Retained]
ANTHONY & PARTNERS, LLC
Suite 1600
100 S. Ashley Drive
Tampa, FL 33602

In re: EVANDER FRANK KANE

      Debtor

_____

EVANDER FRANK KANE

      Appellant

v.

PROFESSIONAL BANK; ZIONS BANCORPORATION, N.A., dba California Bank & Trust; SOUTH RIVER CAPITAL, LLC; CENTENNIAL BANK

      Appellees

21–1167 Evander Kane v. Professional Bank, et al

| 07/29/2021 | 1 | Received notice of appeal filed in Bankruptcy Court on 07/23/2021, notice of referral, transmittal form. (CLS) [Entered: 07/29/2021 02:00 PM] |
|---|---|---|
| 07/29/2021 | 2 | Sent BRIEFING ORDER & NOTICE to appellant Evander Frank Kane. Copies to all parties. Sent Bankruptcy Record Request Form to Bankruptcy Court. Appellant Evander Frank Kane's opening brief due 09/13/2021. (CLS) [Entered: 07/29/2021 02:02 PM] |
| 08/23/2021 | 3 | Received from Bankruptcy Court copy of Appellee's Transmission of Document (Appellee Zion's Bancorporation, N.A.'s Statement of Election To Proceed In The United States District Court on Appeal) filed in Bk. Ct. 08/19/2021. (CLS) [Entered: 08/23/2021 01:09 PM] |



FILED

JUL 29 2021

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

---

In re: EVANDER FRANK KANE

Debtor

-------------------------------

EVANDER FRANK KANE

Appellant

v.

PROFESSIONAL BANK; ZIONS
BANCORPORATION, N.A., dba California
Bank & Trust; SOUTH RIVER CAPITAL,
LLC; CENTENNIAL BANK

Appellees

BAP No. NC-21-1167

Bankr. No. 21-50028
Chapter 7

July 29, 2021

---

## BRIEFING ORDER
### (Prompt Action Required)

Unless otherwise ordered by this court, the parties to this appeal shall timely complete all of the briefing deadlines set forth below. Failure of the parties to comply with these deadlines may result in dismissal of this appeal or in the imposition of other sanctions. These deadlines control and supersede any briefing deadlines set forth in the Federal Rules of Bankruptcy Procedure ("FRBP").

**Last day for appellant(s) to file opening brief and appendix: <u>SEPTEMBER 13, 2021.</u>**
**Last day for appellee(s) to file responsive brief and appendix: Twenty-one days after service of appellant's opening brief.**
**Last day for appellant(s) to file optional reply brief: Fourteen days after service of appellee's reply brief.**

Requirements for filing a brief, an appendix (excerpts of the record), and required certificates are set forth in FRBP 8014, 8015 and 8018, and Ninth Circuit BAP Rules 8018(a)-1, 8018(b)-1, and 8015(a)-1. <u>See also</u> 9th Cir. BAP Rule 8009-1 (describing requirements for the

inclusion of transcripts in the excerpts of the record).

Briefs in this case shall not exceed the following page limits:

**Appellant(s)' opening brief shall not exceed 30 pages.**
**Appellee(s)' opening brief shall not exceed 30 pages.**
**Appellant(s)' optional reply brief shall not exceed 15 pages.**

The page limits set forth herein supersede those set forth in Ninth Circuit BAP Rule 8015(a)-2. Parties may also choose to comply with the type-volume limitations set forth in FRBP 8015(a)(7).

Attorneys must file briefs and excerpts of record electronically via ECF. See the Order Regarding Electronic Filing in BAP Cases available on the BAP website www.bap9.uscourts.gov. Colored covers and additional copies are not required for electronically filed briefs and excerpts of record.

Parties not required to file electronically need only file an original brief and appendix (excerpts of record). This supersedes the requirements for additional copies in BAP Rule 8018(a)-1 and 8018(b)-1.

The parties generally should expect that oral argument will occur shortly after briefing is completed. Please refer to the attached materials regarding advance consideration of issues concerning oral argument.

**FAILURE OF APPELLANT TO TIMELY PROVIDE AN ADEQUATE OPENING BRIEF AND ADEQUATE EXCERPTS OF THE RECORD IN COMPLIANCE WITH THE GOVERNING RULES MAY RESULT IN DISMISSAL OF THE APPEAL, OR IN SUMMARY AFFIRMANCE OF THE RULING ON APPEAL.** See Morrissey v. Stuteville (In re Morrissey), 349 F.3d 1187 (9th Cir. 2003).

FOR THE PANEL,

Susan M Spraul
Clerk of Court

## SUMMARY OF REQUIREMENTS FOR BRIEFS AND EXCERPTS OF THE RECORD

This Summary is intended to help the parties file their briefs and appendix in the proper format, but it is not a substitute for reading and complying with all of the procedural rules listed in the Briefing Order, which rules govern the format and content of each brief and appendix. Briefs that do not comply with national and local rules may not be accepted for filing. Your attention is particularly called to the following requirements:

LENGTH -- Thirty pages for the opening briefs of appellant and appellee. Fifteen pages for

appellant's reply brief, if any. Parties may also choose to comply with the type-volume limitations set forth in FRBP 8015(a)(7).

NUMBER -- For non-electronic filers: a signed original brief and one excerpt of record; for electronic filers: no paper copies of the brief or excerpts of the record.

APPENDIX (Excerpts of The Record) -- The parties are required to include copies of all relevant documents from the bankruptcy court record, including transcripts, in their excerpts.

FORMAT OF APPENDIX -- A paper appendix must comply with the requirements of 9th Cir. BAP Rule 8018 (b) - 1. FAILURE TO TAB ALL DOCUMENTS IN THE APPENDIX, TO CONTINUOUSLY PAGINATE THE ENTIRE APPENDIX, AND TO PROVIDE A TABLE OF CONTENTS IN THE FORM SPECIFIED IN THE ABOVE-REFERENCED RULE MIGHT SEVERELY HAMPER THE PANEL'S REVIEW OF THE ISSUES ON APPEAL. An electronic appendix must comply with Rule 3 of the Order Regarding Electronic Filing in BAP Cases available on the BAP website www.bap9.uscourts.gov.

CERTIFICATES -- Both appellant's and appellee's opening brief must contain a Certificate of Interested Parties. Appellants brief must also contain a Certificate of Related Cases.

CALCULATION OF TIME -- Paper briefs are deemed filed on the day of mailing. FRBP 8011(a)(2). Electronic briefs are deemed filed when the filing is successfully completed. See Rule 7 of the Administrative Order Regarding Electronic Filing in BAP Cases.

### ADVANCE CONSIDERATION OF ISSUES CONCERNING ORAL ARGUMENT

While the parties are briefing, the BAP is considering where and when to set oral argument. Because the BAP seeks to set argument as soon as practical after briefing is completed, any stipulations, motions or notices concerning oral argument should be filed at the earliest possible time, generally with a party's first brief. While appeals typically are set for hearing in the bankruptcy district from which the appeal arose whenever feasible, the parties may file a stipulation or motion requesting an alternative hearing location or a hearing by telephone or video conference. The parties also may file a stipulation or motion to submit their appeal on the briefs and record, thereby waiving oral argument.

All parties should carefully review the dates on the BAP's annual hearing calendar located on the BAP's website: http://www.bap9.uscourts.gov. This calendar contains dates that the BAP judges have set aside for argument, and it is likely that your appeal will be set for hearing on one of these dates. If a party knows or suspects that he or she will be unavailable on one of these dates, he or she should file as soon as possible a notice of unavailability, stating the dates on which he or she is unavailable. Once a case has been scheduled for argument,

continuances and requests to change time or place are rarely granted.


CERTIFICATE OF MAILING

The undersigned, deputy Clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document to which this certificate is attached was transmitted this date to all parties of record to this appeal, to the United States Trustee and to the Clerk of the Bankruptcy Court.

By: Cecil Lizandro Silva, Deputy Clerk
Date: July 29, 2021