No. 3:21-cv-8209-WHO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: EVANDER FRANK KANE,

*Debtor.*

EVANDER FRANK KANE,

*Appellant*,

v.

ZIONS BANCORPORATION, N.A.,
*dba* California Bank & Trust, *et al.*,

*Appellee(s)*.

On Appeal from the United States Bankruptcy Court
for the Northern District of California
Bankr. No. 21-50028-SLJ
Hon. Bankruptcy Judge Stephen L. Johnson

## APPELLANT'S OPENING BRIEF

Stephen D. Finestone
FINESTONE HAYES LLP
456 Montgomery Street, Floor 20
San Francisco, CA 94104
(415) 606-0466
sfinestone@fhlawllp.com
*Attorneys for Appellant,*
EVANDER FRANK KANE

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.   JURISDICTIONAL STATEMENT ......................................................2

III.  STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF
REVIEW ..............................................................................................4

    A. Issues Presented ..........................................................................4

    B. Standard of Review .....................................................................4

IV.  STATEMENT OF THE CASE ..............................................................5

V.   SUMMARY OF THE ARGUMENT ....................................................9

VI.  ARGUMENT......................................................................................11

    A. Zion's Failure to Serve Its Objection to Kane's Claim of Exemption Within
Thirty Days After the Conclusion of the Meeting of Creditors Rendered Its
Objection Untimely Under Bankruptcy Rule 4003(b)(4)..................................11

    B. The Bankruptcy Court Erred in Applying the Statutory Cap in 11 U.S.C.
§ 522(p) to Kane's Homestead Exemption Claim Even Though "Electing Under
Subsection (b)(3)(A) to Exempt Property Under State or Local Law" is Not
Available in an "Opt-out" State Like California. ...............................15

    C. Even If 11 U.S.C. § 522(p) Applies, the Bankruptcy Court Erred in Denying
Kane the Value of Prepetition Appreciation When It Limited Kane's Homestead
Exemption to $170,350......................................................................21

VII.  CONCLUSION ..................................................................................30

VIII. CERTIFICATION OF COMPLIANCE FOR BRIEFS ................................32

# TABLE OF AUTHORITIES

**Cases**

*Applebee v. Brawn (In re Brawn)*, 138 B.R. 327 (Bankr. D. Me. 1992)................12
*Caldwell v. Nelson (In re Caldwell)*, 545 B.R. 605 (B.A.P. 9th Cir. 2016).....23, 24
*Canino v. Bleau (In re Canino)*, 185 B.R. 584 (B.A.P. 9th Cir. 1995)..................12
*Clark v. Kazi (In re Kazi)*, 985 F.2d 318 (7th Cir. 1993) ......................................12
*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ........................................ 17, 20
*Diaz v. Kosmala (In re Diaz)*, 547 B.R. 329 (B.A.P. 9th Cir. 2016)......................29
*Elliott v. Weil (In re Elliott)*, 523 B.R. 188 (B.A.P. 9th Cir. 2014).......................29
*Greene v. Savage (In re Greene)*, 583 F.3d 614 (9th Cir. 2009)...................... 21, 22
*Hartford Underwriters Ins. Co. v. Union Planters Bank., N.A.*, 530 U.S. 1 (2000)
.................................................................................................................................16
*Havas Leasing Co. v. Breen (In re Breen)*, 123 B.R. 357 (B.A.P. 9th Cir. 1991) ..12
*In re Allen*, 896 F.2d 416 (9th Cir. 1990) ................................................................3
*In re Anderson*, 824 F.2d 754 (9th Cir. 1987) .......................................................28
*In re Brissette*, 561 F.2d 779 (9th Cir. 1977)...........................................................4
*In re Bush*, 346 B.R. 523 (Bankr. E.D. Wash. 2006) ............................... 12, 13, 14
*In re Calvert*, 135 B.R. 398 (Bankr. S.D. Cal. 1991) ............................................14
*In re Chouinard*, 358 B.R. 814 (Bankr. M.D. Fla. 2006)......................................26
*In re First Alliance Corp.*, 140 B.R. 531 (B.A.P. 9th Cir. 1992) .............................4
*In re Lyons*, 355 B.R. 387 (Bankr. D. Mass. 2006)................................................23
*In re McNabb*, 326 B.R. 785 (Bankr. D. Ariz. 2005) ...................................... 17, 18
*In re Morgan*, 149 B.R. 147 (B.A.P. 9th Cir. 1993)................................................5
*In re Nolan*, 2021 U.S. Dist. LEXIS 27611 (C.D. Cal. Feb. 12, 2021)..................25
*In re Quintana*, 915 F.2d 513 (9th Cir. 1990).........................................................5
*In re Rasmussen*, 349 B.R. 747 (Bankr. M.D. Fla. 2006).......................................26
*In re Reaves*, 256 B.R. 306 (B.A.P. 9th Cir. 2000) ...............................................25
*In re Virissimo*, 332 B.R. 201 (Bankr. D. Nev. 2005) ..................................... 19, 20
*In re White*, 727 F.2d 884 (9th Cir. 1984) ...............................................................3
*Lamie v. United States Tr.*, 540 U.S. 526 (2004)....................................................16
*Phillips v. Gilman (In re Gilman)*, 887 F.3d 956 (9th Cir. 2018).................... 29, 30
*Preblich v. Battley*, 181 F.3d 1048 (9th Cir. 2008) ..................................................3
*Predovich v. Staffer (In re Staffer)*, 262 B.R. 80 (B.A.P. 9th Cir. 2001), *aff'd*, 306
    F.3d 967 (9th Cir. 2002) ........................................................................................4
*Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997)....................................................21
*Rubin v. United States*, 449 U.S. 424 (1981).........................................................20
*Russello v. United States*, 464 U.S. 16 (1983)........................................................18

*Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*, 623 B.R. 777 (B.A.P. 9th Cir. 2020) .................................................................................................... 27, 28
*Spenler v. Siegel (In re Spenler)*, 212 B.R. 625 (B.A.P. 9th Cir. 1997) ................12
*Tarlesson v. Broadway Foreclosure Invs., LLC*, 184 Cal. App. 4th 931 (2010)... 29, 30
*Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992)................................. 12, 14, 19, 20
*Towers v. Boyd (In re Boyd)*, 243 B.R. 756 (N.D. Cal. 2000).......................... 11, 12
*U.S. Bank N.A. v. The Village at Lakeridge, LLC*, 138 S. Ct. 960 (2018)................5
*United States v. Ron Pair Enters., Inc.*, 489 U.S. 235 (1989) .......................... 16, 21
*Wallace v. Rogers*, 513 F.3d 212 (5th Cir. 2008) .....................................................22
*Young v. Adler (In re Young)*, 806 F.2d 1303 (5th Cir. 1987) .................................12

**Statutes**

11 U.S.C. § 341 ........................................................................................................7, 9
11 U.S.C. § 362 ...........................................................................................................14
11 U.S.C. § 522 .................................................................................................. passim
11 U.S.C. § 541 ...........................................................................................................15
11 U.S.C. § 727 ...........................................................................................................20
28 U.S.C. § 152 ...........................................................................................................20
28 U.S.C. § 157 .............................................................................................................3
28 U.S.C. § 158 .............................................................................................................3
Cal. Code Civ. P. § 703.130 ........................................................................... 10, 17, 20
Cal. Code Civ. P. § 704.710 .......................................................................................28
Cal. Code Civ. P. § 704.720 .......................................................................................28
Cal. Code Civ. P. § 704.730 ............................................................................... 1, 7, 25

**Other Authorities**

40 Corpus Juris Secundum, Homestead § 3 (2006)...................................................22
Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012)................................18
Black's Law Dictionary 885 (9th ed. 2009) .............................................................22

**Rules**

Fed. R. Bankr. P. 1008 ................................................................................................20
Fed. R. Bankr. P. 4001 ................................................................................................14
Fed. R. Bankr. P. 4003 ........................................................................................ passim
Fed. R. Bankr. P. 7004 ................................................................................................14
Fed. R. Bankr. P. 8002 ..................................................................................................2
Fed. R. Bankr. P. 8005 ..................................................................................................3
Fed. R. Bankr. P. 9011 ................................................................................................20
Fed. R. Bankr. P. 9014 ................................................................................................14

# I.   INTRODUCTION

This appeal arises from the Bankruptcy Court's *Order on Zions Bancorporation's Objection to Debtor's Homestead Exemption* (the "Homestead Order"), sustaining in part and overruling in part the objection of Zions Bancorporation, N.A. ("Zions") to the homestead exemption claim of Evander Frank Kane ("Kane") in Kane's Chapter 7 bankruptcy case. ER-234.

Kane claimed a homestead exemption in a single-family home located at 2301 Richland Avenue, San Jose, California 95125 (the "San Jose Residence"), where Kane, his wife, and baby daughter resided continuously from its purchase in August 2020 through to the pendency of his bankruptcy case. ER-020; ER-086. The homestead exemption claim was in the amount of $600,000 pursuant to California Code of Civil Procedure ("C.C.P.") § 704.730. ER-020; ER-086. Zions objected to Kane's homestead exemption, in relevant part, on the basis that Kane acquired his interest in the San Jose Residence within 1215 days prior to the petition date and that 11 U.S.C. § 522(p) limited his claim of exemption to $170,350. ER-105. Zions, however, did not serve this objection on Kane when it filed it, waiting until 62 days after the conclusion of the meeting of creditors to do so. ER-198; ER-217; ER-226. Given its failure to timely serve Kane, Zions' objection was untimely and should have been overruled.

Nonetheless, the Bankruptcy Court set a briefing schedule and scheduled a hearing on Zions' objection to Kane's homestead exemption claim. ER-229. After the hearing, the Bankruptcy Court entered the Homestead Order. The Homestead Order reduced Kane's homestead exemption to $170,350. In so ruling, the Bankruptcy Court misapplied Bankruptcy Rule 4003(b) to hold that Zions' objection was timely; erred in applying the statutory cap in 11 U.S.C. § 522(p) to limit Kane's homestead exemption in an opt-out state where the requisite election that triggers the cap is unavailable; and even assuming 11 U.S.C. § 522(p) applies in California, improperly denied Kane the value of prepetition appreciation in the San Jose Residence by concluding Kane had no interest in his home until his limited liability company transferred title to Kane and his wife. For the reasons discussed below, the Bankruptcy Court's Homestead Order should be reversed.

## II.   JURISDICTIONAL STATEMENT

On July 9, 2021, the Bankruptcy Court entered the Homestead Order, sustaining in part and overruling in part Zions' objection to Kane's homestead exemption claim. ER-234. On July 23, 2021, Kane filed his *Notice of Appeal and Statement of Election*, appealing the Homestead Order and electing to have the appeal heard by the Bankruptcy Appellate Panel for the Ninth Circuit. ER-263. Therefore, this appeal is timely. Fed. R. Bankr. P. 8002(a)(1). On August 19, 2021,

Zions filed its *Statement of Election to Proceed in the United States District Court on Appeal*. ER-296; *see also* 28 U.S.C. § 158(c)(1); Fed. R. Bankr. P. 8005.

The Bankruptcy Court had jurisdiction because the "allowance or disallowance of claims against the estate or exemptions from property of the estate" constitutes a "core proceeding" under Title 11. 28 U.S.C. § 157. The District Court has jurisdiction over bankruptcy appeals "from final judgments, orders, and decrees . . . [and] with leave of the court, from interlocutory orders and decrees . . . ." 28 U.S.C. § 158(a).

The Ninth Circuit has held that an order denying an exemption constitutes a final appealable order. *Preblich v. Battley*, 181 F.3d 1048, 1056 (9th Cir. 2008). The Ninth Circuit recognized that an order "denying a claim of exemption finally determines the discrete matter to which it was addressed, determines and seriously affects substantial rights and can 'cause irreparable harm if the losing party must wait until bankruptcy proceedings terminate before appealing.'" *Id*. (quoting *In re Allen*, 896 F.2d 416, 418 (9th Cir. 1990)). Similarly, in *In re White*, the Ninth Circuit held that an order disallowing an exemption was appealable as a final judgment because it "finally determined all issues regarding the claimed exemption." 727 F.2d 884, 886 (9th Cir. 1984). The Ninth Circuit has long made clear that immediate appellate review is appropriate regardless of whether the

Bankruptcy Court's determination was granting or denying an exemption. *See In re Brissette*, 561 F.2d 779, 782–83 (9th Cir. 1977).

## III.   STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW

### A. Issues Presented

1.      Did the Bankruptcy Court err in sustaining Zions' objection to Kane's homestead exemption despite the fact it was served on Kane 32 days after the deadline set by Bankruptcy Rule 4003?

2.      Did the Bankruptcy Court err in its determination that Kane's exemption in the San Jose Residence was limited to $170,350 by 11 U.S.C. § 522(p)?

3.      Did the Bankruptcy Court err by limiting Kane's homestead exemption to $170,350 rather than allowing him to exempt the increase in the property's value after its acquisition, which would have resulted in an allowed exemption of $415,350?

### B. Standard of Review

The proper application of Bankruptcy Rule 4003(b) is a question of law which is reviewed *de novo*. *In re First Alliance Corp.*, 140 B.R. 531, 532 (B.A.P. 9th Cir. 1992). A bankruptcy court's interpretation of the Bankruptcy Code is a matter of law subject to *de novo* review. *Predovich v. Staffer (In re Staffer)*, 262 B.R. 80, 82 (B.A.P. 9th Cir. 2001), *aff'd*, 306 F.3d 967 (9th Cir. 2002). The

4

Bankruptcy Court's application of California exemption law is a question of statutory construction which is reviewed *de novo*. *In re Morgan*, 149 B.R. 147, 150 (B.A.P. 9th Cir. 1993).

To the extent the Bankruptcy Court's determination is based on a mixed question of law and fact, *U.S. Bank N.A. v. The Village at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018), made clear that the appropriate standard of review depends on whether answering it entailed "primarily legal or factual work." Recognizing "[m]ixed questions are not all alike," the Supreme Court explained "[s]ome require courts to expound on the law, and should typically be reviewed *de novo*. Others immerse courts in case-specific factual issues, and should usually be reviewed with deference." *Id*. at. 967. There is no dispute as to the relevant facts in this appeal. These issues are not questions that immerse the court in "case-specific factual issues—compelling them to marshal and weigh evidence, make credibility judgments, and otherwise address . . . 'multifarious, fleeting, special, narrow facts that utterly resist generalization.'" *Id*. Rather, the issues presented in this appeal relate to the proper interpretation of statutory language, which are solely questions of law. *See In re Quintana*, 915 F.2d 513, 515 (9th Cir. 1990).

## IV.   STATEMENT OF THE CASE

Kane is a thirty-year-old professional hockey player who is currently under contract with the San Jose Sharks (the "Sharks"). ER-042, -044. Kane moved to

California in February 2018 when he was traded by the Buffalo Sabres hockey team to the Sharks. ER-232. Upon arriving in California, Kane moved into rented housing, and continued renting until Kane and his wife purchased a single-family home, the San Jose Residence, in August 2020 for $3,030,000. ER-232–33.

The funds for the down payment on the San Jose Residence came partially from Kane's salary with the Sharks and partially from a loan secured against other real property Kane owns in Vancouver, Canada (the "Canadian Properties"). ER-233. Kane used a portion of his salary bonus from July 2020 to pay off a then-existing junior loan on the Canadian Properties which had become due. ER-233. After paying off the existing second loan, Kane obtained a new loan secured by a junior deed on the Canadian Properties for approximately $435,000 USD. ER-233. Kane combined the loan proceeds with funds left from his salary bonus to make a down payment of approximately $705,000 toward the purchase of the San Jose Residence. ER-233.

Kane and his wife purchased the San Jose Residence through Lion Properties, LLC (the "LLC"), a limited liability company that Kane and his wife jointly owned. ER-233. Kane and his wife transferred title to the San Jose Residence from the LLC to themselves on January 8, 2021, just prior to Kane filing his Chapter 7 bankruptcy case on January 9, 2021. ER-233.

At the time of filing this bankruptcy, Kane lived in the San Jose Residence with his wife and their newborn daughter. ER-005, -045. Kane listed the San Jose Residence on Schedule A with a value of $3,000,000, ER-013, and claimed a homestead exemption in the San Jose Residence in the amount of $600,000 under C.C.P. § 704.730.[1] ER-020. The meeting of creditors pursuant to 11 U.S.C. § 341(a) concluded on February 23, 2021. The Chapter 7 Trustee obtained an opinion from a local realtor valuing the San Jose Residence at $3,275,000. ER-096–97; ER-233. Kane accepted the Trustee's valuation and reached a settlement with the Trustee regarding his homestead exemption and the unprotected equity in the San Jose Residence, together with other exemptions. ER-233. Under the proposed settlement, the $600,000 exemption would be accepted and Kane would pay the difference between the exempt amount and the Trustee's valuation of the equity in the San Jose Residence. ER-095. The Trustee filed a motion seeking approval of the settlement. ER-088.

Thirty days after the conclusion of the meeting of creditors, on March 25, 2021, Zions filed its objection to Kane's homestead exemption claim and objected to the Trustee's settlement with Kane based upon the homestead exemption. ER-

---

[1] The homestead exemption under California law was increased on January 1, 2021. Prior to the increase, Kane would have been entitled to an exemption of $100,000. C.C.P. § 704.730(a)(2) (law in effect prior to January 1, 2020).

7

201; ER-204. Zions set a hearing on its objection for May 4, 2021. ER-201. On the same day, Zions served the objection and a notice of hearing on Kane's counsel, the Chapter 7 Trustee and his counsel, the United States Trustee, and counsel for creditor Lone Shark by first class mail and electronically. ER-198. Zions did not serve Kane as required by Bankruptcy Rule 4003(b)(4).

Shortly before the hearing date, and after being advised by Kane's counsel that Zions failed to serve Kane—62 days after the conclusion of the meeting of creditors—Zions served Kane with the objection by mail and overnight mail. ER-198; ER-217; ER 221. On April 27, 2021, Kane filed a limited response to Zions' objection, noting that Zions failed to comply with Bankruptcy Rule 4003(b)(4), which requires a party objecting to a claim of exemption to deliver or mail a copy of the objection to several parties including the debtor, and arguing the objection should be overruled. ER-213. Then, on April 28, 2021, Zions filed a motion to continue the hearing on its objection to June 9, 2021. ER-215. On April 29, 2021, the Bankruptcy Court entered an order setting a briefing schedule and scheduling the hearing on Zions' objection for June 9, 2021. ER-229.

The Bankruptcy Court held a hearing on Zions' objection on June 9, 2021, and took the matter under submission. On July 9, 2021, the Bankruptcy Court entered the Homestead Order, sustaining in part and overruling in part Zions' objection to Kane's homestead exemption claim, and holding, in relevant part: (1)

8

Zions' objection was timely and served in a manner that was materially consistent with the Bankruptcy Code and Rules; (2) 11 U.S.C. § 522(p) applies in California and limits Kane's homestead exemption to $170,350; and (3) because Kane and his wife originally held title to the San Jose Residence in their wholly owned LLC, and had transferred it to themselves the day before Kane filed bankruptcy, Kane was not entitled to exclude the appreciation of $245,000 from the limitations of 11 U.S.C. § 522(p). ER-234. This appeal followed. ER-263.

## V.   SUMMARY OF THE ARGUMENT

Bankruptcy Rule 4003(b)(1) requires a party objecting to a debtor's claim of exemption to file an objection within thirty days after the conclusion of the meeting of creditors is held under 11 U.S.C. § 341(a). Bankruptcy Rule 4003(b)(4) further requires a copy of any objection to be delivered or mailed to the trustee, the debtor and the debtor's attorney, and other specified parties. The purpose of the service requirements is to timely advise a debtor of the objection. Failure to serve the debtor with an objection by the thirtieth day is failure to comply with the Rule.

Zions objected to Kane's homestead exemption, in relevant part, on the basis that Kane acquired his interest in the San Jose Residence within 1215 days prior to the petition date and that 11 U.S.C. § 522(p) limited his claim of exemption to $170,350, but did not serve this objection on Kane until 62 days after the

conclusion of the meeting of creditors. Zions' objection was untimely and as such should have been overruled.

If Zions' objection is considered timely, the Bankruptcy Court's decision to apply the statutory cap in 11 U.S.C. § 522(p) to limit Kane's homestead exemption claim to $170,350 should be reversed because the plain language of 11 U.S.C. § 522(p)(1) requires the "electing under subsection (b)(3)(A) to exempt property under State or local law" to trigger the statutory cap, which is not available in opt-out states like California. California has opted out of the federal exemption scheme, so debtors in California filing for bankruptcy are limited to the exemptions provided by state law. 11 U.S.C. § 522(b)(2), (b)(3)(A); C.C.P. § 703.130.

If Zions' objection is considered timely and the statutory cap in 11 U.S.C. § 522(p)(1) applies in this case, it applies only to the "amount of interest that was acquired" by Kane at the time of acquisition, and not the $245,000 of prepetition appreciation in the San Jose Residence. The fact that Kane and his wife originally acquired the San Jose Residence through a wholly owned LLC does not change the analysis. Kane and his wife "acquired" their interest in the property when they purchased it, irrespective of the form of holding title. Moreover, there is no dispute they and their daughter lived there from the time of purchase up through and including the date Kane filed bankruptcy.

10

## VI.    ARGUMENT

### A. Zion's Failure to Serve Its Objection to Kane's Claim of Exemption Within Thirty Days After the Conclusion of the Meeting of Creditors Rendered Its Objection Untimely Under Bankruptcy Rule 4003(b)(4).

The Bankruptcy Court erred in treating Zions' objection to Kane's claim of exemption as timely, even though Zions failed to serve its objection on Kane as required by Bankruptcy Rule 4003(b)(4). The Bankruptcy Court reasoned that the rule did not compel it to disregard the objection because while paragraph (b)(1) sets the deadline for filing an objection, (b)(4) does not state a deadline for the service of an objection. As discussed below, separating the service of the objection from the thirty-day deadline renders the deadline meaningless and is an illogical outcome.

The policy underlying Bankruptcy Rule 4003(b), to provide timely notice to debtors that their exemption will be contested, has long been recognized in this district. *See Towers v. Boyd (In re Boyd)*, 243 B.R. 756, 760–61 (N.D. Cal. 2000). In *Boyd*, a Chapter 7 trustee prepared an objection to the claimed exemption, which he promptly served upon the debtors, but failed to file with the court within the time provided by Bankruptcy Rule 4003(b). *Id.* at 759. There, the district court held that actual notice of a trustee's intent to file an objection is insufficient to comply with Bankruptcy Rule 4003(b) when the objection was not filed with the court within the thirty days. *Id.* at 760–61.

11

*Boyd* noted several cases have rejected the argument that actual notice can act as a substitute for a filing with the court under Bankruptcy Rule 4003(b). 243 B.R. at 760 (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 640–42 (1992); *Clark v. Kazi (In re Kazi)*, 985 F.2d 318, 321–22 (7th Cir. 1993); *Canino v. Bleau (In re Canino)*, 185 B.R. 584, 591–92 (B.A.P. 9th Cir. 1995)). *Boyd* also found none of the cases cited by the trustee held that actual notice substitutes for filing an objection with the court in some form. *Id*. at 760–61 (citing *Spenler v. Siegel (In re Spenler)*, 212 B.R. 625, 630 (B.A.P. 9th Cir. 1997) (finding that Rule 4003(b) was meant to provide debtor with timely notice, and that trustee had filed an objection to debtor's exemption); *Havas Leasing Co. v. Breen (In re Breen)*, 123 B.R. 357, 360 (B.A.P. 9th Cir. 1991) (trustee's timely motion "in essence" objected to debtor's claim); *Young v. Adler (In re Young)*, 806 F.2d 1303, 1305 (5th Cir. 1987) (trustee "effectively" complied with the rule by objecting in a motion); *Applebee v. Brawn (In re Brawn)*, 138 B.R. 327, 333 (Bankr. D. Me. 1992) (creditors' response to debtors' motion to avoid lien "manifested" their intent to object)). These cases negated the trustee's actual notice argument. *Id*. at 761.

Conversely, Bankruptcy Rule 4003(b) must be read such that the filing of an objection is insufficient to provide timely notice to a debtor without service of that objection to the debtor within thirty days after the meeting of creditors has concluded. In *In re Bush*, 346 B.R. 523, 524 (Bankr. E.D. Wash. 2006), the

12

bankruptcy court considered "whether a trustee's objection to a debtor's claim of exemptions is timely when the objection was filed on the 30th day and served on the 87th day after the conclusion of the first meeting of creditors." Determining that the strict time period was intended to provide the debtor with timely notice of an objection, *Bush* held that in order to be timely, the objection must also be delivered or mailed to the debtor and debtor's attorney within thirty days after the conclusion of the meeting of creditors. *Id*. Because the objection was not mailed by the thirtieth day, the court dismissed the objection. *Id*.

The trustee in *Bush* argued that because Bankruptcy Rule 4003 did not specify a time for the objecting party to serve the objection, it need only be filed within the thirty-day time limit. 346 B.R. at 525. The trustee also argued that the electronic filing resulted the Debtor's attorney's receipt of the objection. *Id*. at 526. The court rejected both arguments. As to the first, the court noted that the purpose of the rule was to provide timely notice to the debtor of an objection. *Id*. If a court employed a more flexible approach, such as requiring mailing or delivery within a reasonable time, then disputes would arise as what was reasonable. *Id*. "If timely notice is the purpose behind Rule 4003(b), how can the court interpret the rule as having no time line or a flexible time line in the delivery of mailing of the objection? Timely notice is accomplished by serving the objection, not by filing it." *Id*. Thus, Bankruptcy Rule 4003(b)(1) and (4) must be read together to require

13

the objection be filed *and* delivered or mailed within the same thirty-day period to be considered timely.

The Bankruptcy Court, though recognizing that *Bush* is "well-considered," chose not to follow it. ER-242. The Bankruptcy Court reasoned that the absence of a time limit in Bankruptcy Rule 4003(b)(4) was sufficient to conclude that there was no "reason to establish a hard and fast rule as *Bush* did in the absence of such language." ER-242. This approach, however, creates the same problem *Bush* sought to avoid. If you separate the filing of the objection from its service (despite the customary connection of those two actions), one is left with the issue confronted by *Bush*: what is a reasonable time to serve the debtor with an objection? While disallowing the objection for Zions' failure to timely serve it may seem harsh, as the Bankruptcy Court noted, courts have routinely interpreted Bankruptcy Rule 4003 strictly despite arguably unfair outcomes. *See* ER-242 n.8 (citing *Taylor*, 503 U.S. at 643–644 (allowing a clearly improper exemption if an objection was not filed within the thirty-day deadline)).

A similar approach has been applied to motions for relief from the automatic stay under 11 U.S.C. § 362. Like the rule governing objections to exemptions, a motion for relief from stay must also be served on the debtor, not just debtor's counsel. *See* Fed. R. Bankr. P. 4001, 7004, and 9014. In *In re Calvert*, 135 B.R. 398, 402 (Bankr. S.D. Cal. 1991), the moving party failed to properly serve the

14

motion for relief from stay, which sought leave to return to state court litigation involving corporate governance. The court noted, however, that service of the motion did not comply with the applicable rules. *Id*. at 404. The court concluded "[t]he motion is therefore procedurally defective as one for relief from the automatic stay, and the motion is, accordingly, denied without prejudice." *Id*.

Consistent with the above reasoning, Zions' objection should have been overruled due to its failure to timely serve Kane as required by Bankruptcy Rule 4003(b).

**B.  The Bankruptcy Court Erred in Applying the Statutory Cap in 11 U.S.C. § 522(p) to Kane's Homestead Exemption Claim Even Though "Electing Under Subsection (b)(3)(A) to Exempt Property Under State or Local Law" is Not Available in an "Opt-out" State Like California.**

The filing of a Chapter 7 bankruptcy petition creates a bankruptcy estate. 11 U.S.C. § 541(a). The estate includes all of the debtor's interests in property as of the commencement of the case, unless they are exempt. *See id*.; 11 U.S.C. § 522. 11 U.S.C. § 522(b)(1) allows a debtor to elect to exempt property set forth in 11 U.S.C. § 522(b)(2) or (b)(3). Paragraph 2 refers to the federal bankruptcy exemptions provided by 11 U.S.C. § 522(d), while paragraph 3 refers to state law exemptions that are applicable on the date of the filing of the petition. 11 U.S.C. § 522(b)(2), (b)(3)(A), (d). However, 11 U.S.C. § 522(b)(2) provides that the bankruptcy exemptions specified under 11 U.S.C. § 522(d) may not be elected by a

15

debtor if the applicable state law specifically does not so authorize. In other words, a state may "opt out" of the Bankruptcy Code's list of exemptions and define its own exemptions, leaving a debtor with *no election* as to which set of exemptions under 11 U.S.C. § 522(b)(2) or (b)(3) to use.

Further, 11 U.S.C. § 522(p)(1) states:

> *as a result of electing under subsection (b)(3)(A) to exempt property under State or local law*, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000[2] in value in—
>
> real or personal property that the debtor or a dependent of the debtor uses as a residence.

11 U.S.C. § 522(p)(1) (emphasis added).

A court's interpretation starts "with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989). "When the statute's language is plain, the sole function of the courts—at least where the disposition required by the texts is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank., N.A.*, 530 U.S. 1, 6 (2000)). We "must presume that [Congress] says in a statute what it means and means in a

---

[2] Dollar amount is periodically adjusted by the Judicial Conference of the United States. The amount as of the filing of Kane's bankruptcy case was $170,350.

statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992).

The plain language of 11 U.S.C. § 522(p) clearly provides that the statutory cap comes into effect only "as a result of [a debtor's] *electing* . . . to exempt property under State or local law . . . ." (emphasis added). California has opted out of the federal system. C.C.P. § 703.130 ("Pursuant to the authority of paragraph (2) of subsection (b) of Section 522 of Title 11 of the United States Code, the exemptions set forth in subsection (d) of Section 522 of Title 11 of the United States Code (Bankruptcy) are not authorized in this state."). Consequently, a debtor in California does not get to *elect* to exempt property under state law, as California's exemptions are the only exemptions made available to the debtor.

The bankruptcy court in *In re McNabb*, 326 B.R. 785, 788 (Bankr. D. Ariz. 2005), read the interplay of 11 U.S.C. § 522(p)(1), 522(b)(2), and state law the same way. In Arizona, which like California opted out of the federal scheme,

> the bankruptcy exemptions of § 522(d) may not be elected by a debtor if the applicable state law specifically does not so authorize. This effectively permits states to 'opt out' of the Bankruptcy Code's exemptions, and as noted above Arizona is an opt-out state. Consequently in Arizona, a debtor does not get to 'elect' state exemptions. Rather, they are the only exemptions available to a debtor, so there is no election to be made.

*Id*. Because 11 U.S.C. § 522(p) applies only "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law," and a state's

decision to opt out of 11 U.S.C. § 522(d) prohibits a debtor from electing such exemptions, a debtor in such a state cannot make an election, so 11 U.S.C. § 522(p) does not apply. *Id*.

As *McNabb* also understood, had Congress intended the statutory cap in 11 U.S.C. § 522(p)(1) to apply to *all* state exemptions, whether by election or by default in both opt in and opt out states, Congress presumably would have done so expressly, as it did in the immediately preceding subsection (o), where it used the term "[f]or purposes of subsection (b)(3)(A)," without any reference to an election. *See McNabb*, 326 B.R. at 789–90. By contrast, 11 U.S.C. § 522(q)(1) also applies "as a result of electing under subsection (b)(3)(A) to exempt property under State or local law" to bar a debtor from exempting more than the statutory cap if the debtor has been convicted of a felony, or owes a debt arising from securities fraud, breach of fiduciary duty, any criminal act, intentional tort, or willful or reckless misconduct that caused serious physical injury or death. *See id*. at 790–91. The presumption of consistent usage instructs that "[a] word or phrase is presumed to bear the same meaning throughout a text" and that "a material variation in terms suggests a variation in meaning." Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012); *see also Russello v. United States*, 464 U.S. 16, 23 (1983). This noticeable difference between the language of 11 U.S.C. § 522(o) and (p) must have been intended to affect a difference in result. *See McNabb*, 326 B.R. at 790.

18

"[A]s a result of electing under subsection (b)(3)(A) to exempt property under State or local law" under 11 U.S.C. § 522(p)(1) requires an affirmative act by the debtor, which is a choice that is not available in opt-out states like California; compared to the blanket language "[f]or purposes of subsection (b)(3)(A)" in 11 U.S.C. § 522(o), which clearly applies to all state exemptions. The court must presume that Congress knew the difference and chose to write 11 U.S.C. § 522(p) the way it did to affect a different result.

Instead, the Bankruptcy Court adopted the interpretation in *In re Virissimo*, 332 B.R. 201, 205–06 (Bankr. D. Nev. 2005), to explain away the triggering clause in 11 U.S.C. § 522(p) by stating that, under the holding of *Taylor*, 503 U.S. at 643–44, "a debtor could still claim exemptions under § 522(d) [even where State law opts out of the exemptions given in § 522(d)], and such exemptions would be allowed unless someone timely objected." ER-248. The *Virissimo* court reasoned that a debtor elects by simply claiming an exemption rather than failing to choose any exemptions. 33 B.R. at 205–06. But this is not the election provided in 11 U.S.C. § 522(p)(1), which refers to *electing under subsection (b)(3)(A)*. *Virissimo* suggests if a debtor in an opt-out state makes an election to exempt property and uses 11 U.S.C. § 522(b)(2), the debtor would be denied an exemption if a party timely objects; but the debtor could get lucky and exempt property even with no colorable basis for the exemption if it turns out no one objects in time. *Id*. This is a

false choice because the express language of C.C.P. § 703.130 states that the exemptions set forth in 11 U.S.C. § 522(d) are not authorized in California. *Virissimo* is advocating that 11 U.S.C. § 522(p) applies even in opt-out states because debtors could still make an impermissible election. This ignores the Supreme Court's warning in *Taylor* that "[d]ebtors and their attorneys face penalties under various provisions for engaging in improper conduct in bankruptcy proceedings," including under "11 U.S.C. § 727(a)(4)(B) (authorizing denial of discharge for presenting fraudulent claims); [Bankruptcy] Rule 1008 (requiring filings to 'be verified or contain an unsworn declaration' of truthfulness under penalty of perjury); [Bankruptcy] Rule 9011 (authorizing sanctions for signing certain documents not 'well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law'); 18 U.S.C. § 152 (imposing criminal penalties for fraud in bankruptcy cases)." 503 U.S. at 644.

Only after interpreting the plain language of 11 U.S.C. § 522(p) to a strained result does *Virissimo* suggests there is ambiguity in the text of 11 U.S.C. § 522(p) to look at legislative history. However, if a statute is unambiguous as it is here, "judicial inquiry is complete." *Germain*, 503 U.S. at 254 (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)). Congress says in a statute what it means and means in a statute what it says. *Id*. at 253–54. "[The court's] inquiry must cease if

20

the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *Ron Pair Enters.*, 489 U.S. at 240).

### C. Even If 11 U.S.C. § 522(p) Applies, the Bankruptcy Court Erred in Denying Kane the Value of Prepetition Appreciation When It Limited Kane's Homestead Exemption to $170,350.

If 11 U.S.C. § 522(p) applies to limit Kane's homestead exemption, the cap imposed by the section only applies to the interest acquired at the time the San Jose Residence was purchased. The appreciation of $245,000 that accrued post-purchase should not covered by the cap. As such, Kane's exemption should be $415,350 and the Bankruptcy Court erred by limiting the exemption to $170,350. The Bankruptcy Court held that for homestead exemption purposes, the prior ownership by the Kane's LLC was distinct from having the San Jose Residence owned by Kane and his wife, the latter which did not occur until the day before the bankruptcy filing. ER-250. Accordingly, it concluded, that there was no appreciation during the one-day Kane owned the San Jose Residence. ER-250.

The application of the statutory cap and a debtor's right to post-acquisition appreciation is discussed in two cases of note. In *Greene v. Savage (In re Greene)*, 583 F.3d 614, 624 (9th Cir. 2009), the Ninth Circuit ruled that the phrase "any amount of interest that was acquired," refers to the acquisition of an ownership, either legal or equitable, of real property rather than a homestead. *Greene* arose

under Nevada law and involved an order limiting the debtor's homestead exemption to the then-cap of $125,000 under 11 U.S.C. § 522(p). *Id*. at 617–18. The lower courts had held that the "interest" referred to in 11 U.S.C. § 522(p) was the *homestead*, which the debtor "acquired" when he moved into the residence in question. *Id*. at 619. The Ninth Circuit noted that "[t]he homestead exemption and the property interest impressed with that exemption are discrete concepts: the former is the debtor's legal right to exempt certain property interests from the bankruptcy estate, the latter is the debtor's vested economic interest in the property itself." *Id*. at 621 (quoting *Wallace v. Rogers*, 513 F.3d 212, 225 (5th Cir. 2008)).

*Greene* analyzed the salient terms "amount," "interest," and "acquire." 583 F.3d at 622–23. First, the panel defined the term "interest" to mean "a legal share in something; all or part of a legal or equitable claim to or right in property," which may include possessory interests, leasehold interests, and ownership interests that "run with the land." *Id*. at 622 (citing Black's Law Dictionary 885 (9th ed. 2009)). By contrast, a homestead is a "personal right or privilege given by constitutional or statutory provisions . . . [that] ordinarily is dependent on some title or interest in real property, and it does not exist as a separate estate in property independently of such title or interest." *Id*. (citing 40 Corpus Juris Secundum, Homestead § 3 (2006)). The panel also saw a substantive distinction between phrases used to describe how these two rights are gained by a debtor. *Id*. at 622–23. 11 U.S.C.

22

§ 522(p)(1) uses the phrase "amount of interest that was *acquired*" as to the interest that may be exempted; whereas 11 U.S.C. § 522(p)(1)(D) refers to "real or personal property that the debtor . . . *claims* as a homestead." *Id*. Next, the panel reasoned the term "amount" requires the "interest" to be quantifiable; finding a homestead is not a quantifiable interest but rather a classification of property under state law. *Id*. at 623 (quoting *In re Lyons*, 355 B.R. 387 (Bankr. D. Mass. 2006)). Lastly, the panel read the term "acquire" to mean "gaining possession or control by purchasing or gaining an ownership interest, either legal or equitable." *Id*. at 623 (internal quotation marks omitted).

A similar situation is found in the Bankruptcy Appellate Panel's decision in *Caldwell v. Nelson (In re Caldwell)*, 545 B.R. 605 (B.A.P. 9th Cir. 2016). In *Caldwell*, the debtor and his spouse had transferred their residence back and forth between a wholly owned LLC and a family trust. *Id*. at 607. The last such transfer from the LLC to the trust occurred within 1215-day statutory period proscribed by 11 U.S.C. § 522(p). *Id*. The Chapter 7 trustee objected to the asserted homestead exemption as being in excess of the then-existing cap of $155,675 in 11 U.S.C. § 522(p). *Id*. The debtor argued that the ownership by the LLC, of which he and his wife were the only members, created a beneficial and equitable interest in the residence, and was sufficient for asserting a homestead exemption, as the ownership extended well beyond the 1215-day period. *Id*. at 607–08. The

23

bankruptcy court, however, sustained the trustee's objection, holding that Nevada law required an ownership interest in the real property rather than some other personal interest. *Id.* at 608.

The Bankruptcy Appellate Panel reversed the decision, finding that Nevada exemption laws should be "liberally and beneficially construed in favor of the debtor and protecting the family home." *Id.* at 610. As such, a homestead was broadly defined to include a dwelling in which the debtor lived and did not designate how property was to be held or limit the interest to a fee simple rather than some lesser interest. *Id.*

> The record shows that the interest Debtor retained in the Property after transfer of legal title to the LLC was more than a general interest or the mere right to exclusive possession. . . . [H]e retained all the indicia of ownership by his possession and use of the Property along with the payment of the mortgage, taxes and insurance. . . . Accordingly, Debtor's homestead rights in the Property before and after the transfers of title remained unchanged.

> \* \* \*

> In sum, we conclude that the transfer of title from the LLC to the Trust did not constitute an 'interest' that was 'acquired' by Debtor to limit his homestead claim, within the meaning of § 522(p)(1).

*Id.* at 612.

A recent decision by the U.S. District Court for the Central District of California is consistent with the reasoning of *Caldwell*. *See In re Nolan*, 2021 U.S.

24

Dist. LEXIS 27611 (C.D. Cal. Feb. 12, 2021). The *Nolan* decision, an appeal of a bankruptcy court ruling allowing a homestead exemption, dealt with the same section of California law as in this case, C.C.P. § 704.730. In *Nolan*, the debtor's interest was a 50% interest in a trust which owned the real property. 2021 U.S. Dist. LEXIS 27611, at *2–3. The court noted California's historically liberal construction of homestead exemptions. *Id*. at *22-23 (citing *In re Reaves*, 256 B.R. 306, 310 (B.A.P. 9th Cir. 2000)). Since the debtor resided in the property and held a beneficial interest in the real property as a part of the trust, he could assert a homestead exemption without owning a fee interest. *Id*. at *25–26.

Here the question is when Kane acquired his exemptible interest, because there is little doubt that post-acquisition appreciation in the San Jose Residence is not capped by the limitations of 11 U.S.C. § 522(p). If the acquisition occurred when the LLC purchased the San Jose Residence, Kane should be entitled to an exemption of $415,350 despite the limitations of 11 U.S.C. § 522(p). If the acquisition occurred the day before he filed bankruptcy, when the LLC transferred title to Kane and his wife, then there is no post acquisition appreciation, and the exemption is limited to $170,350.

Courts have held that the focus on the "interest acquired" in 11 U.S.C. § 522(p) means that any appreciation in the real property subsequent to a debtor's acquisition of that interest is not covered by the statutory cap. *See*, *e.g*., *In re*

*Rasmussen*, 349 B.R. 747, 758 (Bankr. M.D. Fla. 2006); *In re Chouinard*, 358 B.R.

814, 815 (Bankr. M.D. Fla. 2006). As such, any appreciation may be exempted by

Kane. In *Rasmussen*, the court went through an elaborate effort at interpreting the

meaning of "acquired by the debtor" and held that the phrase only made sense if

interpreted to apply to the debtor's active acquisition of an ownership interest in

the real property. 349 B.R. at 757–58. Accordingly, appreciation that occurred

subsequent to acquisition was not "acquired by the debtor" as that term is used in

11 U.S.C. § 522(p). "The fact that the Homestead may have appreciated

substantially in value during the 1,215-day period does not constitute an

acquisition of an interest in the Debtors' homestead for purposes of section

522(p)." *Id.* at 758.

 The relevant facts in this case are not in dispute. Kane and his wife acquired

an interest in the San Jose Residence when they purchased the real property

through their jointly owned LLC in August 2020 for the price of $3,030,000

because they wished to buy a home with the intent to reside there. Kane and his

wife transferred title to the San Jose Residence from the LLC to Kane and his wife

individually just prior to Kane filing his bankruptcy case. Nonetheless, Kane, his

wife, and their newborn daughter had been residing continuously at the San Jose

Residence since their acquisition of that real property. The Chapter 7 Trustee

valued the San Jose Residence shortly after the bankruptcy case was filed at

$3,275,000, an amount that Kane accepted and formed the basis of the settlement with the Trustee. The $245,000 of equity that passively resulted from market appreciation between August 2020 and the petition date is not to be counted against the statutory cap of 11 U.S.C. § 522(p).

In reaching its decision limiting Kane's exemption to $170,350, the Bankruptcy Court relied on *Schaefers v. Blizzard Energy, Inc. (In re Schaefers)*, 623 B.R. 777, 782–83 (B.A.P. 9th Cir. 2020), for the proposition that a debtor must have *some* legal or equitable interest in the real property to claim a homestead exemption. This is true. However, the Bankruptcy Court juxtaposed this requirement with the conclusion that limited liability company members have no interest in the company's assets in finding that Kane had no interest in the San Jose Residence until the LLC transferred its interest to Kane and his wife. ER-249–50; *see Schaefers*, 623 B.R. at 783. *Schaefers* is, however, distinguishable.

First, in *Schaefers*, the debtor attempted to claim a homestead exemption in in his limited liability company, which owned real property. In other words, the homestead exemption claim at issue was his membership interest in the limited liability company. The Bankruptcy Appellate Panel found that the debtor's membership interest was not a real property interest in which California law permitted him to assert a homestead exemption.

27

Second, and more importantly, in *Schaefers*, the debtor tried to argue that a state court's finding that the limited liability company was his alter ego established his equitable interest in the LLC's property for purposes of his homestead exemption claim. *Id*. at 784. There was a clear policy rationale in rejecting the debtor's argument. The Bankruptcy Appellate Panel rejected the argument as contrary to the equitable purpose of extending liability beyond a debtor to avoid injustice. *Id*. at 784–85. Agreeing with the debtor's proposition would have been to reward him for the injustice that led the court to conclude that his LLC was an alter ego. *Id*. By contrast, Kane did not try to claim a homestead exemption in the LLC; instead, he claimed a homestead exemption in the San Jose Residence where he, his wife, and baby daughter had resided continuously.

Under C.C.P. § 704.710(c), a "homestead" is "the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead." California provides for an "automatic" homestead exemption. C.C.P. § 704.720(a). The automatic homestead exemption protects a debtor "who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling." *In re Anderson*, 824 F.2d 754, 757 (9th Cir. 1987); *see also Diaz*

*v. Kosmala (In re Diaz)*, 547 B.R. 329, 334 (B.A.P. 9th Cir. 2016); ("The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption."). This "requires only that the judgment debtor reside in the property as his or her principal dwelling at the time the judgment creditor's lien attaches and continuously thereafter until the court determines the dwelling is a homestead." *Elliott v. Weil (In re Elliott)*, 523 B.R. 188, 196 (B.A.P. 9th Cir. 2014) (quoting *Tarlesson v. Broadway Foreclosure Invs., LLC*, 184 Cal. App. 4th 931, 937 (2010)). It does not require that the debtor continuously own the property. *Id*. "To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there." *Phillips v. Gilman (In re Gilman)*, 887 F.3d 956, 965 (9th Cir. 2018). There is no dispute that Kane and his family resided continuously at the San Jose Residence and intended to make it their home.

The Bankruptcy Court's conclusion that "[Kane] did not gain possession or control of the San Jose [Residence] until it was quitclaimed to [Kane] the day before he filed this bankruptcy case," ER-250. focuses improperly on the transfer of title. Kane acquired a beneficial or equitable interest in the San Jose Residence when he and his wife used their LLC to purchase the property to be their home, and there is no dispute that Kane and his family resided continuously at the San Jose Residence from August 2020 and during his bankruptcy case.

29

As the Ninth Circuit observed in *Gilman*, California law rejects the argument that title to the property is necessary to claim a homestead exemption. 887 F.3d at 965. For example, *Tarlesson* held that "judgment debtors who continuously reside in their dwellings retain a sufficient equitable interest in the property to claim a homestead exemption even when they have conveyed title to another." 184 Cal. App. 4th at 937. The *Tarlesson* court further noted that "[s]uch a result is consistent with the purpose of California's homestead exemption to protect one's dwelling against creditors." *Id.*

Kane acquired a beneficial or equitable interest in the San Jose Residence when he and his wife used their LLC to purchase the property to be their home in August 2020 for $3,030,000. If 11 U.S.C. § 522(p) applies in this case, the statutory cap applies only to the "amount of interest that was acquired" by Kane when he and his wife purchased the San Jose Residence through the LLC in August 2020, and not to the $245,000 of equity that passively resulted from market appreciation since then until the commencement of this bankruptcy case.

## VII.   CONCLUSION

Kane requests that this Court reverse the Bankruptcy Court's Homestead Order because Zions did not timely serve Kane with its objection, as required by the most logical reading of Bankruptcy Rule 4003(b)(1) and (4). If this Court decides the untimely service is not sufficient to invalidate the objection, then Kane

asserts that Bankruptcy Court should be reversed because 11 U.S.C. § 522(p) does not apply to an opt out state like California. Finally, if this Court decides that 11 U.S.C. § 522(p) applies in this instance, the cap imposed thereby does not relate to the appreciation that accrued after Kane and his wife acquired the San Jose Residence through their LLC in August 2020. Accordingly, the Bankruptcy Court should be reversed to the extent it limited Kane's exemption to $170,350, as the exempt amount should be $415,350 because the $245,000 appreciation in value is not covered by the cap of 11 U.S.C. § 522(p).

Date: December 29, 2021                    FINESTONE HAYES LLP

                                           */s/ Stephen D. Finestone*
                                           Stephen D. Finestone
                                           *Attorneys for Appellant,*
                                           EVANDER FRANK KANE

## VIII.    <u>CERTIFICATION OF COMPLIANCE FOR BRIEFS</u>

**No.:**          No. 3:21-cv-8209-WHO

**Debtor:**    Evander Frank Kane

The undersigned certifies that this brief contains 7,612 words, excluding the items exempted by Federal Rule of Bankruptcy Procedure 8015(g). This brief complies with the word limit of Federal Rule of Bankruptcy Procedure 8015(a)(7)(B)(i). The type size and typeface comply with Federal Rule of Bankruptcy Procedure 8015(a)(5)(A).

Date: December 29, 2021                    FINESTONE HAYES LLP

                                                                   */s/ Stephen D. Finestone*
                                                                   Stephen D. Finestone
                                                                   *Attorneys for Appellant,*
                                                                   EVANDER FRANK KANE