No. 3:21-cv-08209-WHO

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In re EVANDER FRANK KANE,

*Debtor*.

EVANDER FRANK KANE,

*Appellant*,

v.

ZIONS BANCORPORATION, N.A.,
dba California Bank & Trust,

*Appellee*.

On appeal from the United States Bankruptcy Court
Case No. 21-50028-SLJ
Honorable Stephen L. Johnson

---

### APPELLEE'S RESPONSE BRIEF

---

Michael Gerard Fletcher, SBN: 070849
Gerrick M. Warrington, SBN: 294890
FRANDZEL ROBINS BLOOM & CSATO, L.C.
1000 Wilshire Boulevard, Nineteenth Floor
Los Angeles, California 90017-2427
Telephone: (323) 852-1000
mfletcher@frandzel.com
gwarrington@frandzel.com

Attorneys for Appellee
ZIONS BANCORPORATION, N.A.,
dba California Bank & Trust

## CERTIFICATION OF INTERESTED ENTITIES OR PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellee Zions Bancorporation, N.A., dba California Bank & Trust ("Zions") is a publicly-traded company trading as ZION on the NASDAQ. Zions has no parent corporation and no publicly-held corporation owns 10% or more of Zions' stock other than Vanguard Group Inc., which owns 11% of Zions' stock. There are no other interested entities or persons other than Zions to report.

DATED: March 30, 2022
FRANDZEL ROBINS BLOOM &
CSATO, L.C.
MICHAEL GERARD FLETCHER
GERRICK M. WARRINGTON


By:     /s/ Gerrick M. Warrington
GERRICK M. WARRINGTON
Attorneys for Appellee Zions
Bancorporation, N.A., dba California
Bank & Trust

# TABLE OF CONTENTS

Page

I.    Introduction ................................................................................................8

II.   Statement of the Case ...............................................................................9

      A.   Kane Moves to California, Gets Married, and Begins Rental
           Housing. ..........................................................................................9

      B.   Kane Forms a Florida Shell Entity to Acquire a Fee Title
           Interest in the San Jose Property ....................................................9

      C.   Kane Uses Loan Proceeds as a Down Payment for the San Jose
           Property, With Lions Properties Taking a Fee Title Interest ..........10

      D.   Kane Transfers the San Jose Property to Himself and His Wife
           and Then Files Bankruptcy The Next Day.......................................10

      E.   Kane's Meeting of Creditors Concludes ...........................................11

      F.   Zions Objects to the Trustee's Exemption Settlement Motion
           and Kane's Homestead Exemption ..................................................11

      G.   The Court Grants Zions Motion to Continue the Hearing on the
           Homestead Exemption to Obviate Kane's Procedural
           Objections........................................................................................12

      H.   Kane Opposes the Homestead Exemption; Zions Replies to the
           Opposition and Asserts Evidentiary Objections to the Kane
           Declaration ......................................................................................13

      I.   The Court Sustains in Part and Overrules in Part Zions
           Homestead Objection and Sustains One of Zions' Evidentiary
           Objections........................................................................................14

III.  Summary of the Argument .......................................................................15

IV.   Argument .................................................................................................17

      A.   The Bankruptcy Court Did Not Err in Ruling That Zions'
           Objection was Timely. .....................................................................18

           1.   Under the Plain Meaning Rule, the Court May Not
                Import an Arbitrary 30-Day Service Deadline Where the
                Plain Text of the Rule Contains No Such Deadline. ...............21

2.      Kane's Policy Arguments of "Timely Notice" Fail
Because Kane, In Fact, Received Timely Notice as
Required Under Rule 4003(b)...................................................25

B.      Section 522(p) applies in Opt-Out States like California. .................27

C.      Under Section 522(p), Kane First Acquired an Interest in the
San Jose Property the Day Before He Filed Bankruptcy, but Not
Before, and He is Therefore Not Entitled to Any Appreciation. ........31

D.      The Mere Ability to Claim a Homestead Exemption is
Insufficient to Demonstrate that a Debtor "Acquires" an
"Interest" in Property Sufficient to Trigger Section 522(p)(1)'s
Statutory Cap....................................................................................35

E.      Kane Failed to Provide Any Admissible Evidence of
"Appreciation" From August of 2020 to the Date That He Filed
Bankruptcy. ......................................................................................37

V.      Conclusion ....................................................................................................39

CERTIFICATE OF COMPLIANCE.......................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Brawn*,
  138 B.R. 327 (Bankr. D. Me. 1992) ...................................................26

*In re Buonopane*,
  344 B.R. 675 (Bankr. M.D. Fla. 2006) ..............................................30

*In re Bush*,
  346 B.R. 523 (Bankr. E.D. Wash. 2006) ...............................22, 23, 24

*In re Caldwell*,
  545 B.R. 605 (B.A.P. 9th Cir. 2016) .................................................34

*In re Calvert*,
  135 B.R. 398 (Bankr. S.D. Cal. 1991) ...............................................26

*Canino v. Bleau (In re Canino)*,
  185 B.R. 584 (BAP 9th Cir. 1995) ....................................................25

*In re Fisher*,
  63 B.R. 649 (Bankr. W.D. Ky. 1986) .................................................24

*In re Greene*,
  583 F.3d 614 (9th Cir. 2009) ......................................................*passim*

*Havas Leasing Co. v. Breen (In re Breen)*,
  123 B.R. 357 (B.A.P. 9th Cir. 1991) .................................................26

*In re Ioane*,
  227 B.R. 181 (B.A.P. 9th Cir. 1998) .................................................21

*In re Kane*,
  336 B.R. 477 (Bankr. D. Nev. 2006) .................................................29

*In re Kaplan*,
  331 B.R. 483 (Bankr. S.D. Fla. 2005) ..........................................28, 30

*Matter of Kazi*,
    985 F.2d 318 (7th Cir. 1993) .............................................................................25

*Klesalek v. Klesalek (In re Klesalek)*,
    307 B.R. 648 (8th Cir. BAP 2004) ...................................................................21

*Lamie v. U.S. Tr.*,
    540 U.S. 526 (2004)...........................................................................................21

*In re Landahl*,
    338 B.R. 920 (Bankr. M.D. Fla. 2006).............................................................28

*In re Laurain*,
    113 F.3d 595 (6th Cir. 1997) .............................................................................21

*In re Lee*,
    889 F.3d 639 (9th Cir. 2018) .......................................................................21, 22

*In re McNabb*,
    326 B.R. 785 (Bankr. D. Ariz. 2005)......................................16, 27, 28, 29, 30

*In re Nestlen*,
    441 B.R. 135 (2010) ..........................................................................................31

*In re Nolan*,
    No. 5:20-CV-01496-MCS, 2021 WL 528679 (C.D. Cal. Feb. 12,
    2021), *aff'd sub nom. Matter of Nolan*, No. 21-55204, 2022 WL
    327927 (9th Cir. Feb. 3, 2022) .........................................................................36

*Padgett v. Wright*,
    587 F.3d 983 (9th Cir. 2009) .............................................................................20

*Parks v. Anderson*,
    406 B.R. 79 (D. Kan. 2009)...............................................................................32

*In re Rasmussen*,
    349 B.R. 747 (Bankr. M.D. Fla. 2006).......................................................29, 30

*In re Schaefers*,
    623 B.R. 777 (B.A.P. 9th Cir. 2020) ...........................................................35, 36

*Spenler v. Siegel (In re Spenler)*,
    212 B.R. 625 (B.A.P. 9th Cir. 1997) .................................................................26

*In re Summers*,
   344 B.R. 108 (Bankr. D. Ariz. 2006)...................................................................29

*Taylor v. Freeland & Kronz*,
   503 U.S. 638 (1992).....................................................................22, 25, 31

*In re Virissimo*,
   332 B.R. (Bankr. D. Nev. 2005) .................................................................29, 31

*In re Willcut*,
   472 B.R. 88 (B.A.P. 10th Cir. 2012) ...........................................................31

*Matter of Young*,
   806 F.2d 1303 (5th Cir. 1987), *overruled on other grounds by In re
   Orso*, 283 F.3d 686 (5th Cir. 2002) ............................................................26

**Statutes**

11 U.S.C. § 522(*l*) ...........................................................................................18

11 U.S.C. § 522(*o*) ....................................................................................12, 14

11 U.S.C. § 522(p) ..................................................................................*passim*

Cal. Civ. Proc. Code § 703.130 ....................................................................28

Cal. Civ. Proc. Code § 704.730 ..............................................................12, 19

**Rules**

Fed. R. Bankr. P. 1009(a) .............................................................................39

Fed. R. Bankr. P. 4001(d) .............................................................................27

Fed. R. Bankr. P. 4003 ..................................................................................22

Fed. R. Bankr. P. 4003(b) .......................................................................*passim*

Fed. R. Bankr. P. 4003(b)(1)....................................................................*passim*

Fed. R. Bankr. P. 4003(b)(4)....................................................................*passim*

Appellee Zions Bancorporation, N.A. ("Zions" or the "Bank") submits this Response Brief ("Response Brief") in response to the Opening Brief ("Opening Brief" or "OB") (Dkt. 6) filed by Appellant Evander Frank Kane ("Kane").

## I.    Introduction

Kane seeks reversal of the Bankruptcy Court's order reducing his homestead exemption from $600,000.00 to $170,350.00 pursuant to section 522(p).  Section 522(p) was enacted by Congress to close the notorious "mansion loophole," whereby wealthy individuals would often shield multi-millions of dollars from creditors by converting nonexempt assets into fully-exempt (and pricy) homesteads in states which had high or unlimited homestead exemptions.  California's newly increased homestead exemption—up to $600,000.00—places it within this group of haven sates, making it a desirable forum for such "mansion loophole" chicanery.

In the lead-up to filing chapter 7, Kane created a shell entity and then converted substantially all of his unexempt property (equity in two properties he owned in Canada) into a partial down payment on "the San Jose Property," for which his newly-formed LLC took title.  And then, the day before he filed bankruptcy, he caused his LLC to transfer the property to him—thus shielding hundreds of thousands of dollars in equity from his creditors at a time when he was significantly insolvent, being sued by numerous creditors, and incurring significant gambling losses.

In short, Kane—with the help of his insolvency advisors—sought to take advantage of a newly-opened "mansion loophole" in California.  But, the Bankruptcy Court found that Kane's actions came squarely within section 522(p) and imposed a statutory cap on Kane's homestead exemption.

On appeal, Kane raises several arguments as to why section 522(p)'s statutory homestead cap should either not apply to him or should be alleviated such that he may recoup alleged "passive market appreciation" from the estate.  But, his arguments fail for lack of evidence and legal support, as analyzed below.

As analyzed below, the Bankruptcy Court did not err.

This Court should, therefore, affirm.

## II.     Statement of the Case

The following are the facts and procedural history of this matter as relevant to the homestead exemption appeal.

### A.     Kane Moves to California, Gets Married, and Begins Rental Housing.

Kane states that he moved to California in 2018, got married, and began living in rental housing.  *See* ER-232–233.

### B.     Kane Forms a Florida Shell Entity to Acquire a Fee Title Interest in the San Jose Property

In May of 2020 (while Kane was being sued by multiple creditors and incurring over a million in gambling losses, ER-052, 054), Kane formed Lions Properties LLC ("Lions Properties").  ER-131.  Lions Properties was a Florida

limited liability company, which was wholly owned and managed by Kane and his wife.  ER-017, 131–134.

### C.    Kane Uses Loan Proceeds as a Down Payment for the San Jose Property, With Lions Properties Taking a Fee Title Interest

In August of 2020, Kane obtained a $600,000.00 loan ("Loan") from 1000568 B.C. Ltd.  ER-163.  The Loan was secured by two, cross-collateralized junior trust deeds recorded against two of Kane's real properties in Canada (the "Canadian Properties").  ER-022, 023, 163.

At around the same time of the Loan, in August 2020, Kane used the Loan proceeds as a partial down payment to acquire the real property located 2301 Richland Avenue, in San Jose, CA 95125 ("San Jose Property"), with Lions Properties taking a fee title interest in the property from a third-party seller.  *See* ER-163, 141–144.  Kane formed Lions Properties "for the sole purpose of taking title to the San Jose Property."  ER-154.

### D.    Kane Transfers the San Jose Property to Himself and His Wife and Then Files Bankruptcy The Next Day

On January 8, 2021, the day before Kane filed bankruptcy, he caused a quitclaim deed to be recorded, transferring the San Jose Property from Lions Properties to Kane and his wife "as husband and wife as community property with right of survivorship."  ER-146.

The next day, on January 9, 2021, Kane filed a voluntary chapter 7 bankruptcy petition, listing the San Jose Property as being worth $3,000,000.00 (ER-013) and claiming a $600,000.00 homestead exemption in the property pursuant to California Code of Civil Procedure section 704.730.  ER-013, 020.

From August 2020, when Lions Properties acquired a fee title interest in the San Jose Property, up until the day before Kane filed chapter 7, Lions Properties owned the San Jose Property outright and Kane and his wife owned 100% of the LLC membership interests in Lions Properties.  *See* ER-017, 163, 141–144, & 233.

As disclosed by Kane in his schedules and statement of financial affairs, during the one-year period before Kane filed bankruptcy he incurred $1.5 million in gambling losses, was balance sheet insolvent, and was the defendant in multiple lawsuits by various creditors against him.  ER-052, 054.

### E.       Kane's Meeting of Creditors Concludes

On February 3, 2021, the chapter 7 trustee conducted Kane's first meeting of creditors.  The trustee continued the meeting of creditors to February 23, 2021, which is the date that Kane's meeting of creditors concluded.  Bk. Dkt. 30/31.

### F.       Zions Objects to the Trustee's Exemption Settlement Motion and Kane's Homestead Exemption

On March 25, 2021, Zions objected to a motion filed by the chapter 7 trustee which sought approval of a settlement agreement ("Exemption Settlement Motion") (ER-88–104) between Kane and the estate, which would have allowed

Kane to, among other things, retain his $600,000.00 homestead exemption based upon certain terms and conditions.

The basis for Zions' objection to the Exemption Settlement Motion was that Kane's homestead exemption was, itself, objectionable under sections 522(*o*) and (p) of the Bankruptcy Code, and that the Exemption Settlement Motion lacked evidence and could not be granted.  *See, generally*, ER-204–212.

That same day (30 days after Kane's meeting of creditors concluded), Zions filed an objection ("Objection") (ER-105–126) to Kane's homestead exemption, along with a declaration (ER-127–197), notice of hearing (ER-201–203), and certificate of service (ER-198–200), all of which Zions served by first class mail and electronically on the trustee, Kane's counsel, and others (but not Kane individually).  *See* ER-198–200.  The Objection was initially set for hearing in May 2020.  *See* ER-105.

### G.   The Court Grants Zions Motion to Continue the Hearing on the Homestead Exemption to Obviate Kane's Procedural Objections

On April 26, 2021, eight days before the hearing on the Objection, Zions served a copy of the Objection and accompanying filings on Kane via first class mail and overnight mail.  ER-217, 221.

The next day, Kane filed a limited response to the Objection ("Limited Response") (ER-213–214), asserting that the Objection should be overruled.  Kane contended that the Objection did not comply with Rule 4003(b)(4) because

although it was served on Kane's counsel and others, it was not served on Kane individually within the 30-day filing deadline of Rule 4003(b)(1).[1]  ER-214.

The next day, Zions filed a Motion to Continue ("Motion to Continue") (ER-215) the hearing on the Homestead Objection to allow Kane additional time to respond to the Objection on the merits and to obviate any procedural objections concerning service or notice.  *See* ER-215–223.  In the Motion to Continue, Zions asserted that Rule 4003(b)(4) did not require the Objection to be served within the 30-day filing deadline.  ER-218–219.

The next day, the Court granted Zions' Motion to Continue, continuing the hearing from May 4, 2021, to June 9, 2021.  ER-229–230.

## H.    Kane Opposes the Homestead Exemption; Zions Replies to the Opposition and Asserts Evidentiary Objections to the Kane Declaration

On May 26, 2022, Kane filed an Opposition ("Opposition") (SER 1) to Zions' Objection, along with a supporting declaration of Kane ("Kane Declaration") (ER-232).

Zions filed its Reply ("Reply") (SER 2) to Kane's Opposition as well as Evidentiary Objections ("Evidentiary Objections") (SER 3) to the Kane Declaration.

---

[1] "Rule" citations refer to the Federal Rules of Bankruptcy Procedure.

I. **The Court Sustains in Part and Overrules in Part Zions Homestead Objection and Sustains One of Zions' Evidentiary Objections**

On June 9, 2021, the court held a hearing on the Objection and then took the matter under submission.

One month later, the Court entered its *Order On Zions Bancorporation's Objection To Debtor's Homestead Exemption* ("Homestead Order") (ER-234). In the Homestead Order, the Bankruptcy Court sustained Zions' Objection under section 522(p),[2] reducing Kane's homestead exemption from $600,000.00 to $170,350.00. ER-235.[3] The Bankruptcy Court made certain key findings, including that Kane "had due notice of the objection and hearing date and filed a timely and comprehensive response" and that the briefing was "extensive." ER-235, 239–243.

The Bankruptcy Court overruled all of Zions' evidentiary objections to the Kane Declaration except for one—the Bankruptcy Court sustained Zions' evidentiary objection and excluded (ER-238) the statement made by Kane in his Declaration that "The Exemption Settlement was reached after the Trustee obtained an opinion from a local realtor valuing the Residence at $3,275,000." *See*

---

[2] "Section" citations refer to the Bankruptcy Code at Title 11 of the United States Code Annotated.

[3] The Bankruptcy Court overruled Zions' objection under § 522(*o*). ER-235.

ER-237, 238, 233, SER 3.  The Court did not conduct an evidentiary hearing.  *See* ER-257, 261.

This appeal followed.  ER-263.

### III.   Summary of the Argument

As discussed below, Zions' Objection was timely filed and properly served upon Kane and his counsel as required by Rule 4003(b) and well in advance of the continued hearing on the Objection.  The Bankruptcy Court found that Kane had due notice of the Objection and an opportunity to object—a finding which Kane does not dispute.  And, he did, in fact, file an opposition to the Objection, which the Bankruptcy Court found to be comprehensive and extensive.

Kane asserts that Rule 4003(b) should be interpreted to impose a 30-day service deadline, although the plain text of the rule contains no such service deadline.  Kane's reading of Rule 4003(b) violates the plain meaning rule and would require the Court to inject a 30-day service deadline where none exists.  The Bankruptcy Court, guided by applicable Ninth Circuit law, refused to do that.  The Court should apply the plain meaning of Rule 4003(b) and reject Kane's interpretation of the Rule which would, in effect, import the 30-day *filing* deadline of Rule 4003(b)(1) into the service provisions of Rule 4003(b)(4).

Kane also argues that section 522(p), which was designed to close the so-called "mansion loophole," should categorically not apply in any opt-out states

(which have opted out of the federal exemption scheme) like California.  But, this argument is based on a solidary trial-level case—*McNabb*—which case has been rejected by numerous courts and commentators alike.  Indeed, if McNabb's interpretation were correct, then section 522(p) would not apply to classic "mansion loophole" states like Florida—with unlimited homestead exemptions.  In fact, the statutory cap would be rendered toothless—effectively nullifying section 522(p) in all but two states which are non-opt-out states with homestead exemptions over the statutory cap.  The Bankruptcy Court rejected *McNabb*'s analysis.  This Court should affirm.

Finally, Kane argues that if section 522(p) applies, he should be entitled to keep the alleged "appreciation" which he asserts accrued based on passive market appreciation from the time that his Florida shell entity took title to the property up until the date he filed bankruptcy.  But, the Ninth Circuit has held that section 522(p)'s cap is triggered only upon acquisition of title and ownership, which in this case first occurred the day before Kane filed bankruptcy.  Kane failed to demonstrate any appreciation in that one-day period.

Kane also focuses on his alleged ability to claim a homestead (which claim is belied by case law).  But, more importantly, the mere ability to claim a homestead is insufficient to start the "appreciation" meter running or to constitute the "acquisition" of an "interest" within the meaning of section 522(p)(1).

Therefore, Kane has not demonstrated entitlement to any alleged appreciation in the property.

And, even if Kane had acquired full beneficial title and ownership back in August of 2020 (when his LLC acquired the property), Kane still has not demonstrated—as an evidentiary matter—any appreciation in the property whatsoever.  In fact, his schedules—which he signed under penalty of perjury—demonstrate that the property actually *depreciated* by $30,000.00 between August of 2020 and the date Kane filed bankruptcy.  There is no other admitted evidence in the record concerning the value of the property as of the date Kane filed bankruptcy.  Indeed, the evidence that Kane sought to rely upon to establish value was *excluded* by the Bankruptcy Court, which sustained the Bank's evidentiary objections to that evidence.  That evidentiary ruling is not being challenged by Kane in this appeal.

The facts of this case, and Kane's efforts to shield hundreds of thousands of dollars in nonexempt assets from his creditors via California's newly-increased homestead exemption, come squarely within the scope of section 522(p).

This Court should affirm.

## IV.    Argument

As analyzed below, the Court should affirm the Bankruptcy Court's Homestead Order.

**A.     The Bankruptcy Court Did Not Err in Ruling That Zions'
Objection was Timely.**

The Bankruptcy Code requires a debtor to file a list of claimed exemptions

and provides that "[u]nless a party in interest objects, the property claimed as

exempt on such list is exempt."  11 U.S.C. § 522(*l*).  Rule 4003(b), in turn,

provides as follows, in pertinent part:

> (1) … a party in interest may file an objection to the list of property
> claimed as exempt within 30 days after the meeting of creditors held
> under § 341(a) is concluded ….
>
> ….
>
> (4) A copy of any objection shall be delivered or mailed to the trustee,
> the debtor and the debtor's attorney, and the person filing the list and
> that person's attorney.

Fed. R. Bankr. P. 4003(b)(1), (b)(4).

Here, on Schedule C of Kane's bankruptcy schedules, he listed a

$600,000.00 homestead exemption on the San Jose Property pursuant to California

Code of Civil Procedure section 704.730.  ER-020.  And, within 30 days of the

conclusion of Kane's meeting of creditors, Zions filed its Objection to Kane's

homestead exemption and served it on the trustee, Kane's counsel, and others (but

not Kane individually) by first-class mail and electronically.  *See* Bk. Dkt. 30/31;

ER-105; *see also* ER-200.  More than a week before the initially-scheduled hearing

on the Objection, Zions also served the Objection on Kane, personally, by first

class mail and overnight mail.  ER-198, 217, 221.

Kane then filed his Limited Response (ER-213–214), asserting that the

Objection should be overruled based on Kane's argument that Rule 4003(b)(4)

required both filing *and service* to occur within the 30-day filing deadline of Rule

4003(b)(1) or else the Objection must be summarily overruled.  *See* ER-214.  Zions

then filed a Motion to Continue for the purpose of obviating any procedural

objections and allowing the Bankruptcy Court to rule on the merits of the

Objection without procedural objections.  *See* ER-215.  The Bankruptcy Court then

granted the Motion to Continue, and continued the hearing on the Objection to

June 9, 2021, to allow Kane additional time to respond to the Objection on the

merits.  *See* ER-229–230.

In advance of the continued hearing, Kane filed his Opposition (SER-001),

which fully addressed the merits of the Objection, but also re-raised the same

procedural argument that Kane had previously raised in his Limited Objection—

that the Objection was allegedly "untimely" for not being served within the 30-day

filing deadline of Rule 4003(b)(1).  The Bankruptcy Court rejected Kane's

procedural argument, finding (a) that the Objection was "timely and served in a

way that was materially consistent with the Bankruptcy Code and Rules"

(ER-235), (b) that Kane "had due notice of the objection and hearing date and filed

a timely and comprehensive response" which was "extensive" (ER-235, 239–243),

(c) that Rule 4003(b) is written such that the 30-day filing deadline of Rule

4003(b)(1) should be read separately from the service requirements of Rule 4003(b)(4), which contains no express service deadline (*see* ER-242), and (d) that a decision on the merits of the Objection was preferable than a decision "by default" based on Kane's procedural argument (ER-243 ["Getting to the bottom of [these] disputes is the right thing to do."]).

On appeal, Kane raises two basic procedural arguments:  (a) that the Objection ran afoul of the policy of "timely notice" to debtors of exemption objections (*see* OB at 11–12), and (b) that Rule 4003(b)(1) 30-day filing deadline must be "read together" (OB at 13) with Rule 4003(b)(4) to require both filing *and service* within 30 days after the meeting of creditors has concluded (*see* OB at 12–15).[4]  The Court should reject both arguments.

---

[4] In his Opening Brief, Kane does not challenge one of the key bases upon which the Bankruptcy Court rejected Kane's procedural arguments—i.e., that "Getting to the bottom of [these] disputes is the right thing to do."  ER-243 (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citation omitted) (holding that "default judgments" are ordinarily disfavored).  Matters not specifically and distinctly raised and argued in the appellant's opening brief are generally not considered on appeal.  *Padgett v. Wright*, 587 F.3d 983, 985 n. 2 (9th Cir. 2009).  Therefore, even if Kane's other procedural arguments on appeal were meritorious, Kane has provided no basis for reversing the Bankruptcy Court's ruling that overruling the Objection "by default" would be inappropriate.

    **1.**    **Under the Plain Meaning Rule, the Court May Not Import an Arbitrary 30-Day Service Deadline Where the Plain Text of the Rule Contains No Such Deadline.**

Courts generally apply the "plain meaning rule" to interpret both federal statutes and rules of procedure. *See In re Ioane*, 227 B.R. 181, 182–83 (B.A.P. 9th Cir. 1998) (citing *Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) (applying plain meaning rule to Federal Rules of Civil Procedure)). *See also In re Laurain*, 113 F.3d 595, 600 (6th Cir. 1997) (citation omitted) (applying plain meaning rule to interpret Rule 4003); *Klesalek v. Klesalek (In re Klesalek)*, 307 B.R. 648, 652 (8th Cir. BAP 2004) (same). Under the plain meaning rule, courts must apply the rule as written, unless the party contending otherwise demonstrates that the text is ambiguous or the result of the plain meaning of the rule is absurd. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534, 538 (2004) (citation omitted) (applying plain meaning rule to the Bankruptcy Code). In addition, the Ninth Circuit has recognized that courts should not apply a hyper-technical or "liberal" construction to the procedural rules governing exemption objections where the debtor actually received timely notice. *See In re Lee*, 889 F.3d 639, 642, 646 (9th Cir. 2018) (characterizing Rule 4003(b)(4) as a "procedural requirement[]" and declining to adopt a hyper-technical interpretation of Rule 4003 "where its purpose to 'provide the debtor with timely notice' has been clearly satisfied").

Here, the text of Rule 4003(b) is unambiguous.  Rule 4003(b)(4) lists the persons who the objecting party must serve and the manner of service (i.e., delivery or mail), but it contains no deadline for service.  By contrast, Rule 4003(b)(1) sets a deadline of, as relevant here, 30 days after the conclusion of the meeting of creditors for an objecting party to *file* an exemption objection.

Zions met both these requirements.  Specifically, Zions filed its Objection within 30 days of the completion of Kane's meeting of creditors, satisfying the filing deadline of Rule 4003(b)(1).  ER-105–126.  That same day, Zions served Kane's attorney and all other requisite parties, except for Kane individually, by first class mail and electronically.  ER-198–200.  Some 33 days later (over a week before the initial hearing on the Objection), Zions also served Kane, individually, by first class and overnight mail.  ER-217, 221.

Yet, Kane argues on appeal that unless Rule 4003(b) is "strictly" interpreted (OB at 14) to require an exemption objection to be served within the 30-day filing deadline, that deadline itself would be rendered "meaningless" and "illogical."  OB at 11.[5]  In support of Kane's assertion, Kane cites *In re Bush*, 346 B.R. 523, 524

---

[5] These "strict interpretation" cases analyzing Rule 4003(b) are distinguishable because they deal only with the 30-day filing deadline, not the service deadline.  *See, e.g.*, *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). Moreover, as analyzed in *In re Lee*, 889 F.3d at 642, the line of "liberal

(Bankr. E.D. Wash. 2006).  OB at 12–14.  But the *Bush* Court itself specifically declined to address the precise issue at play here—i.e., whether service of an exemption objection would be proper where the *debtor's counsel was served* within the 30-day filing deadline, but not the debtor:

> Rule 4003(b) is clear that the objection must be filed within the 30-day time limit.  The rule is also clear that the objection must be delivered or mailed to the debtor and the debtor's attorney.  What is less clear, and at issue here, is what happens when the objection is timely filed but not delivered or mailed to the debtor and the debtor's attorney for sometime thereafter—outside the 30-day time limit.  *There is another issue that the court does not decide: What is the consequence of the trustee's failure to deliver or mail a copy of the objection to the debtors?*

*Id*. at 525 (emphasis added).  Because the *Bush* case dealt with a situation in which a trustee failed to serve the exemption objection by mail or delivery on the debtor *or* the debtor's attorney within the 30-day filing deadline of Rule 4003(b)(1), the court specifically declined to address a situation in which *the debtor's attorney* was served by mail or delivery within the 30-day filing deadline, but *the debtor* was not.  *See id* at 525.  That fact pattern is at issue here.  Therefore, *Bush* is factually distinguishable in a material way from the instant appeal.

The only case which directly addresses whether Rule 4003(b) requires service on the debtor and debtor's attorney within the 30-day filing deadline is *In*

---

construction" cases do not apply to procedural rules like Rule 4003(b) where, as is the case here, the debtor does not dispute that he received actual notice.

*re Fisher*, 63 B.R. 649, 651 (Bankr. W.D. Ky. 1986), which analyzed predecessor Rule 4003(b), which has essentially the same language as the current Rule 4003(b)(4).[6]  The *Fisher* Court held that service on the debtor's attorney alone was sufficient to meet the letter and purpose of Rule 4003(b) and to provide timely notice to the debtor.  A the court in *Fisher* put it:

> [W]e find that debtor's argument that the objection must be mailed to both the debtor and his attorney, to be without merit.  Service on the debtor's attorney was obviously sufficient to give the debtor notice of the objections.  Rule 4003(b) states that copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney.  Reading this language literally and carried to the extreme, one could conclude that "the person filing the list" means someone from the attorney's office who *physically* filed the same.  We decline to read the Rule so literally as to mandatorily require service on both the debtor and his attorney.

*In re Fisher*, 63 B.R. at 651.  And, while *Fisher* is more factually analogous to the instant appeal than *Bush*, here, Zions did, in fact, serve Kane by mail (and overnight mail) well in advance of the continued hearing.  Thus, under a "plain meaning" interpretation of Rule 4003(b), Zions met the letter and purpose of Rule 4003(b)'s filing *and* service requirements.  And, a plain meaning interpretation of

---

[6] Predecessor Rule 4003(b) and current Rule 4003(b)(4) have essentially identical operative language. Predecessor Rule 4003(b) provided that "Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney," whereas the current version of Rule 4003(b)(4) provides that "A copy of any objection shall be delivered or mailed to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney."

Rule 4003(b) does not, in this case, lead to absurd or "illogical" results. Indeed, Kane does assert that he did not receive timely notice of the Objection or a sufficient opportunity to respond. Indeed, the Bankruptcy Court specifically found that Kane "had due notice of the objection and hearing date and filed a timely and comprehensive response" which briefing was "extensive" ER-235, 239–243. Kane does not challenge this finding on appeal. The Court should, therefore, reject Kane's argument that the Court should import a 30-day *service* deadline into Rule 4003(b)(4).

The Court should affirm the Bankruptcy Court's analysis and construction of Rule 4003(b).

> **2.    Kane's Policy Arguments of "Timely Notice" Fail Because Kane, In Fact, Received Timely Notice as Required Under Rule 4003(b).**

Kane asserts that the policy underlying Rule 4003(b) is to provide timely notice to debtors and that requiring service of an exemption objection to be made within the 30-day filing deadline would promote that policy. *See* OB at 11–12.

In support, Kane cites several cases for the proposition that actual notice may not "act as a substitute for a filing with the court under Bankruptcy Rule 4003(b)." *See* OB at 11 (citing *Towers v. Boyd (In re Boyd)*, 243 B.R. 756 760–61 (N.D. Cal. 2000); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 640–42 (1992); *Matter of Kazi*, 985 F.2d 318, 320 (7th Cir. 1993); *Canino v. Bleau (In re Canino)*,

185 B.R. 584, 591–92 (BAP 9th Cir. 1995); *Spenler v. Siegel (In re Spenler)*, 212

B.R. 625, 629 (B.A.P. 9th Cir. 1997); *Havas Leasing Co. v. Breen (In re Breen)*,

123 B.R. 357, 359 (B.A.P. 9th Cir. 1991); *Matter of Young*, 806 F.2d 1303, 1305

(5th Cir. 1987), *overruled on other grounds by In re Orso*, 283 F.3d 686 (5th Cir.

2002); *In re Brawn*, 138 B.R. 327, 332 (Bankr. D. Me. 1992).[7]

But Kane's argument conflates filing with service. And, the cases cited by

Kane deal with what constitutes timely *filing* of an exemption objection, not timely

*service*. None of these cases address whether Rule 4003(b)(4) requires *service*

within the 30-day *filing* deadline of Rule 4003(b)(1). These cases are, therefore,

distinguishable.

Again, Kane does not allege that he lacked timely notice or an opportunity to

respond to the Objection. Indeed, Zions served its Objection on Kane's attorney

by mail and electronically on March 25, 2021, and later served Kane individually

by first class mail and overnight delivery on April 26, 2021. The hearing on the

---

[7] Kane also cites *In re Calvert*, 135 B.R. 398, 404 (Bankr. S.D. Cal. 1991), in which a bankruptcy court denied a motion for relief from stay, without prejudice, because it was not served as required under Rule 4001(d). But, *Calvert* is distinguishable because (a) Rule 4001(d) does not apply here, and (b) the *Calvert* decision does not reflect that the parties who were not served had actual notice of the motion and hearing. By contrast, here, the Bankruptcy Court specifically found that Kane "had due notice of the objection and hearing date and filed a timely and comprehensive response." ER-242–243.

Objection was then continued by the Bankruptcy Court to allow extra time for Kane to prepare and file his response.  And, after the hearing, the Bankruptcy Court entered its order specifically finding that Kane "had due notice of the objection and hearing date and filed a timely and comprehensive response." ER-242–243.  This finding, which is not challenged in this appeal, obviates Kane's policy arguments of "timely notice."

The Court should affirm.

### B.     Section 522(p) applies in Opt-Out States like California.

Section 522(p) of the Code provides, in pertinent part, as follows:

(p)(1) … as a result of electing under subsection (b)(3)(A) to exempt property under State or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $170,350 in value in—

….

(D) real … property that the debtor …claims as a homestead….

11 U.S.C. § 522(p)(1)(D).  California has opted out of the federal system.  Cal. Civ. Proc. Code § 703.130.

Here, Kane argues that section 522(p) should be construed such that the $170,350.00 statutory cap on homestead exemptions does not apply to "opt-out" states like California—i.e., states which have opted-out of the federal exemption scheme.  OB at 18.  In support, Kane cites *In re McNabb*, 326 B.R. 785 (Bankr. D. Ariz. 2005), which held that the section 522(p) statutory cap only applies in states

which have not "opted out" of the federal exemption scheme.  The *McNabb* court

arrived at its ruling by interpreting section 522(p)'s phrase "as a result of electing

under subsection (b)(3)(A) to exempt property under State or local law" to mean

the "election" made by a debtor in non-opt-out-states to choose either the federal or

the state statutory exemptions.  *McNabb*, 326 B.R. at 788.  Kane urges the Court to

adopt this interpretation and reasoning and find section 522(p) categorically does

not apply in opt-out states like California.

But, *McNabb*'s interpretation of section 522(p) has been rejected by

numerous courts and commentators alike who have pointed to other, more

plausible, interpretations of the "electing" phrase in section 522(p).  Collier on

Bankruptcy provides that:

> A possible explanation for the "electing" language, not considered by
> the *McNabb* court, is that congress intended the homestead limitations
> to apply when the debtor elects to exempt homestead property under
> section 522(b)(3)(A), but not when the debtor elects to exempt
> homestead property under section 522(b)(3)(B) that is held as a tenant
> by the entirety or by joint tenancy, if that interest is exempt from
> process under nonbankruptcy law.  The existence of section
> 522(b)(3)(B) points to another form of election available to debtors.
> Moreover, the exemption under section 522(b)(3)(B) is available to
> debtors in all states to the extent recognized by state law, even in opt-
> out states, and would therefore suggest a reason why Congress may
> have included the "electing" language.

Collier on Bankruptcy, ¶ 522.13[1] (16th ed.).  *See also In re Kaplan*, 331 B.R.

483, 486 (Bankr. S.D. Fla. 2005) (rejecting *McNabb*'s reasoning as being  a "shaky

platform"); *In re Landahl*, 338 B.R. 920, 923 (Bankr. M.D. Fla. 2006) (finding that

"it is entirely plausible to read 'electing' in … Section 522(p) as meaning simply

the debtor's act of claiming (i.e., choosing to take) exemptions of property

described under Section 522(b)(3)(A) (i.e., under state or local law) in any given

case").

Under the plain meaning rule, as set forth above, the Court may consult

legislative history to resolve this apparent ambiguity—i.e., two plausible, yet

mutually-exclusive and conflicting, alternative meanings of the "electing" phrase

in section 522(p).  And, in turn, the legislative history for section 522(p)

demonstrates that Congress intended it to apply *broadly*—not limiting the statutory

cap to only a handful of non-opt out states with exemptions which might exceed

the cap.  *See In re Rasmussen*, 349 B.R. 747, 752 (Bankr. M.D. Fla. 2006) (citing

*In re Kane*, 336 B.R. 477, 481–82 (Bankr. D. Nev. 2006) (holding that section

522(p) was designed to close "the 'millionaire's mansion' loophole in the current

bankruptcy code that permits corporate criminals to shield their multi-million

dollar homesteads"); *In re Virissimo*, 332 B.R. 201, 207 (Bankr. D. Nev. 2005));

*see also In re Summers*, 344 B.R. 108, 111 (Bankr. D. Ariz. 2006) (rejecting

*McNabb*'s interpretation).

Limiting the statutory cap to only non-opt-out states would defeat the broad

policy purposes underpinning section 522(p)'s enactment—to close the "mansion

loophole"—and would significantly limit the applicability of the statutory cap for

no apparent reason.  Indeed, if *McNabb*'s interpretation were correct, then section

522(p)'s statutory cap would be effectively nullified in all but two states.  *See In re*

*Kaplan*, 331 B.R. at 486 (finding *McNabb*'s interpretation to be "strained and

convoluted" and observing that such an interpretation would result in section

522(p)'s statutory cap being effectively limited to Texas and Minnesota, which are

the only two non-opt-out states with homestead exemptions exceeding the statutory

cap).  And, if *McNabb* were correct, the "mansion loophole" would be blown wide

open in opt-out states with unlimited homesteads like Florida—defeating the very

purpose of the statutory cap in the first place.  *See In re Rasmussen*, 349 B.R. at

752 (rejecting *McNabb*'s interpretation and finding that the statutory cap applies in

Florida, an opt-out state with an unlimited homestead exemption) (citing Florida

cases which similarly rejected *McNabb*'s analysis); *In re Buonopane*, 344 B.R.

675, 677 (Bankr. M.D. Fla. 2006) (finding *McNabb*'s interpretation would to lead

to a "bizarre result" in opt-out states like Florida which has an unlimited

homestead exemption and where "mansion loophole abuses" are historically

pervasive).

Importantly, even if *McNabb*'s interpretation were correct, and section

522(p)'s "election" phrase did refer to the election between state and federal

exemptions, nothing would prevent a debtor in an opt-out state from effectively

claiming (aka "electing") and obtaining a valid and effective exemption *under the*

*federal exemption scheme.  See In re Virissimo*, 332 B.R. at 205–06 (observing that under *Taylor v. Freeland & Kronz*, 503 U.S. at 640–42, "if a party does not timely object to a claimed objection, the property is exempt even if there is no basis for the claiming of that exemption").

The Court should reject Kane's arguments and affirm.

### C.   Under Section 522(p), Kane First Acquired an Interest in the San Jose Property the Day Before He Filed Bankruptcy, but Not Before, and He is Therefore Not Entitled to Any Appreciation.

Section 522(p)(1) provides, in pertinent part, that "a debtor may not exempt any amount of *interest that was acquired* by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $170,350 in value in … real … property that the debtor … claims as a homestead." 11 U.S.C. § 522(p)(1)(D) (emphasis added).  Courts analyzing the phrase "interest that was acquired" in section 522(p)(1) have arrived at two different interpretations as to when, exactly, a debtor "acquires" an "interest" sufficient to trigger the application of the statutory cap (and hence when the meter for appreciation commences).  These two interpretations have become known as the "title view" and the "equity view."  *See In re Willcut*, 472 B.R. 88, 95 n. 28 (B.A.P. 10th Cir. 2012) (citing cases discussing the "title view" and "equity view"); *In re Nestlen*, 441 B.R. 135, at 138 n. 20 (2010) (citing cases and commentary discussing the two "views").

The Ninth Circuit has adopted the "title view," whereby a debtor is deemed to have "acquired" an "interest" in property, thereby triggering the statutory cap of section 522(p)(1), the moment that the debtor acquires title to and ownership of the property, even if the debtor could have claimed a homestead exemption in such property at some other point in time. *See In re Greene*, 583 F.3d 614, 622–24 (9th Cir. 2009) (citations omitted).

In *Greene*, the Ninth Circuit analyzed section 522(p)(1) and determined that the term "interest" means a property interest under state law—e.g., "possessory interests, leasehold interests, and ownership interests," which interests "are said to 'run with the land'—that is, they accompany a conveyance or assignment of land, passing from one purchaser to another through the chain of title." *Id.* at 622 (citations omitted). The Ninth Circuit also analyzed term "acquire" under section 522(p)(1), finding that it means "gaining possession or control by purchasing or gaining an ownership interest, either legal or equitable" in the subject property. *Id.* at 623 (internal quotations and citations omitted). *Cf. Parks v. Anderson*, 406 B.R. 79, 95 (D. Kan. 2009) (adopting the so-called "equity view" interpretation whereby the section 522(p)(1) statutory cap is triggered, not by a debtor's obtaining title and ownership, but rather by the debtor's acquisition of equity in a homestead property during statutory lookback period).

Here, it is undisputed that Kane did not acquire title to or ownership of the San Jose Property until the day before he filed bankruptcy—i.e., when his LLC, Lions Properties, quitclaimed the property to Kane (and his wife).  ER-146. Therefore, under *In re Greene*, any "passive[] … market appreciation" alleged by Kane (OB at 27) would be limited to the one-day period between the date of Kane's receiving title to the property (i.e., the date of recordation of the quitclaim deed transferring the property to Kane and his wife) and the date that Kane filed bankruptcy.  The record does not reflect, and Kane failed to demonstrate, any appreciation within this one-day time period.

But, Kane asserts that he and his wife "acquired" an "interest" in the San Jose Property several months before he filed bankruptcy—in August 2020 when they "purchased" it "*through their jointly owned LLC* … for the price of $3,030,000 because they wished to buy a home with the intent to reside there.*" OB at 26 (emphasis added).[8]  Kane describes this "interest" as being "a *beneficial or equitable interest* in the San Jose Residence" that arose "when he and his wife

---

[8] Kane states that it is purportedly "undisputed" that Kane and his wife "acquired and interest" in the San Jose Property when they "purchased" it through Lions Properties in August 2020.  OB at 26.  Not so.  In fact, the Bank specifically objected to this same assertion at the trial court level.  *See* SER-025 ("What *is* undisputed is that *Kane's Florida limited liability company* acquired the Residence in August 2020 (*not Kane*), and that Kane and his wife acquired the Residence by grant deed recorded literally hours before Kane filed chapter 7 bankruptcy.").

used their LLC to purchase the property to be their home….”  OB at 29 (emphasis added).  But, Kane’s assertions that he held some form of beneficial or equitable interest in the property while his LLC held legal title to it are unsupported.  There is no evidence that, for example, the LLC held bare legal title *in trust* for the benefit of Kane.  *Cf. In re Caldwell*, 545 B.R. 605, 608, 612 (B.A.P. 9th Cir. 2016) (finding that, under Nevada law, where a debtor provides evidence demonstrating that he used an LLC *as a trust* to hold bare legal title for the debtor’s benefit, the debtor may be able to show that he retained a beneficial, “equitable title” in the property sufficient to constitute an “acquisition” of an “interest” in property within the meaning of section 522(p)(1)).

Here, Lions Properties acquired full beneficial/equitable *and* legal title to the San Jose Property at all times from August 2020 through the day before Kane filed bankruptcy.  The record reflects Kane formed Lions Properties “for the sole purpose of taking title to the San Jose Property.”  ER-154.  That was the whole point of Kane forming Lions Properties and having that LLC take title to the property—to shield the beneficial interest in the property from Kane’s creditors until the day before he filed bankruptcy.  Kane should not be allowed to now claim that he retained his beneficial interest in the property at all times.

And, under California law, an LLC is a separate legal entity, and the owners of an LLC do not own the LLC’s assets by virtue of their membership interests.

*See In re Schaefers*, 623 B.R. 777, 782 (B.A.P. 9th Cir. 2020) (citations omitted). And again, under *In re Greene*, the statutory cap of section 522(p)(1) applies the moment that *the debtor*—i.e., Kane (*not his LLC*)—acquired title and ownership of the property. *See In re Greene*, 583 F.3d at 622–24.

Therefore, Kane has not demonstrated that he, himself, acquired any form of *title or ownership*—equitable, beneficial, or otherwise—in the San Jose Property at any point in time earlier than the day before he filed bankruptcy, which is when he caused Lions Properties to transfer title to the property to himself and his wife.

Accordingly, under Ninth Circuit law, Kane did not "acquire" any "interest" in the San Jose Property, within the meaning of section 522(p)(1), prior to the day before he filed bankruptcy.

The Court should, therefore, affirm.

### D.    The Mere Ability to Claim a Homestead Exemption is Insufficient to Demonstrate that a Debtor "Acquires" an "Interest" in Property Sufficient to Trigger Section 522(p)(1)'s Statutory Cap.

Kane does not appear to dispute the fact that he first acquired title to the San Jose Property when he caused his LLC to transfer title to him the day before he filed bankruptcy. Kane nonetheless asserts that the statutory cap of section 522(p)(1) was triggered as early as August of 2020, when he asserts he would have been entitled to *claim a homestead exemption* in the property under California law. *See* OB at 28–29. In support, Kane asserts that he resided in the property and

intended to make it his home, which he contends would have entitled him to claim a homestead exemption as early as August of 2020, despite the fact that Lions Properties held title to the property at that time.  *See* OB at 29 (explaining that only physical occupancy and the intent to reside is required to claim a homestead exemption and that California law "does not require that the debtor continuously own the property").

But, under California law, Kane would not have been able to claim a homestead exemption in the San Jose Property while Lions Properties retained title and ownership of the property, without Kane demonstrating sufficient beneficial interest in the property.  *See In re Schaefers*, 623 B.R. at 782 (holding that owners of LLC did not own assets of the LLC under California law) (citations omitted). *Cf. In re Nolan*, No. 5:20-CV-01496-MCS, 2021 WL 528679, at *7 (C.D. Cal. Feb. 12, 2021), *aff'd sub nom. Matter of Nolan*, No. 21-55204, 2022 WL 327927 (9th Cir. Feb. 3, 2022) (finding that a debtor who continuously resided on real property and was also a beneficiary of an irrevocable trust which held title to that real property could claim an automatic homestead exemption in that property because the debtor held a sufficient equitable interest in the property).

And, more importantly, the mere ability to claim a homestead exemption is insufficient to trigger section 522(p)(1)'s statutory cap because *title and ownership* are required.  *See In re Greene*, 583 F.3d at 622 (finding that the term "interest"

under section 522(p)(1) excludes "personal rights" that do not run with the land, such as the right to claim an homestead exemption) (citations omitted). Accordingly, even if Kane could have claimed a homestead exemption as early as August of 2020, that fact is insufficient to trigger section 522(p)(1)'s statutory cap. Therefore, Kane's argument that he would have been entitled to claim a homestead as early as August of 2020 is beside the point—the statutory cap of section 522(p)(1) (and, thus, the "appreciation" meter) is triggered by the acquisition of an ownership interest, despite whether a homestead exemption could have been claimed at some earlier point in time.

The Court should, therefore, affirm.

### E.   Kane Failed to Provide Any Admissible Evidence of "Appreciation" From August of 2020 to the Date That He Filed Bankruptcy.

Even if Kane had demonstrated that he "acquired an interest" in the San Jose Property in August of 2020 when his LLC took title to the property, he presented no admissible evidence to support any alleged "appreciation" in the property between August 2020 and the day he filed bankruptcy.  The only evidence submitted by Kane at the Bankruptcy Court level was a statement made by Kane in his Declaration that, at some point in time *after* he filed bankruptcy, the chapter 7 trustee had "obtained an opinion from a local realtor valuing the Residence at $3,275,000."  *See* ER-237, 238, 233, SER 3.  But, these "opinions" were never

authenticated or introduced into evidence or presented at the trial level.  They are

not part of the record on appeal.  Importantly, even Kane's own testimony about

these opinions was excluded based on the Bankruptcy Court sustaining Zions'

evidentiary objection to this statement by Kane in his Declaration.  *See* ER-238.

And, Kane has not challenged or appealed this evidentiary ruling.

In fact, Kane's schedules reflect that the property was only worth

*$3,000,000.00* as of the date he filed bankruptcy—some $30,000.00 less than what

he says he paid for it in August of 2020.  *Compare* ER-233, OB at 7 *with* ER-013,

ER-078.  Kane's own assertions coupled with his admissions in his schedules tend

to show, if anything, that the San Jose Property *depreciated* by $30,000.00

between August of 2020 and the date he filed bankruptcy.  Had Kane believed his

schedules incorrectly reflected the value of the San Jose Property, "the proper

course of action would be for him to amend his petition pursuant to FED. R.

BANKR. P. 1009(a)."  *In re Greene*, 583 F.3d at 625 (citation omitted).  But, he

did not so amend.

Accordingly, even if the Court were to find that Kane acquired an interest in

the San Jose Property in August of 2020, Kane has not demonstrated any alleged

"appreciation" sufficient to entitle him to an enhanced homestead exemption above

the statutory cap.

## V.    Conclusion

For these reasons, the Court should affirm.

DATED:  March 30, 2022                  FRANDZEL ROBINS BLOOM &
                                        CSATO, L.C.
                                        MICHAEL GERARD FLETCHER
                                        GERRICK M. WARRINGTON


By:      /s/  Gerrick M. Warrington
        GERRICK M. WARRINGTON
        Attorneys for Appellee Zions
        Bancorporation, N.A., dba California
        Bank & Trust

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with: (a) the type-volume limitations of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(g), it contains no more than 13,000 words; and (b) the typeface and type-style requirements of Fed. R. Bankr. P. 8015(a)(5) and 8015(a)(6), respectively, because it uses a proportionally-spaced typeface using Microsoft Word in 14 point Times New Roman font.

DATED: March 30, 2022          FRANDZEL ROBINS BLOOM &
                               CSATO, L.C.
                               MICHAEL GERARD FLETCHER
                               GERRICK M. WARRINGTON


                               By:     /s/  Gerrick M. Warrington
                                   _____
                                   GERRICK M. WARRINGTON
                                   Attorneys for Appelee Zions
                                   Bancorporation, N.A., dba California
                                   Bank & Trust