UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EVANDER FRANK KANE,

    Appellant,

    v.

ZIONS BANCORPORATION, N.A.,

    Appellee.

Case No. 21-cv-08209-WHO

**ORDER ON BANKRUTPCY APPEAL**

    Appellant Evander Frank Kane appeals a bankruptcy court order sustaining in part and overruling in part appellee Zions Bancorporation, N.A. ("Zions")'s objection to a homestead exemption Kane claimed in his Chapter 7 case. The bankruptcy court's order is AFFIRMED. First, although Kane was not served with the objection until more than 30 days after the meeting of creditors, Federal Rule of Bankruptcy Procedure 4003(b) does not impose a 30-day deadline for notice. Moreover, Kane was provided timely notice and a meaningful opportunity to respond after the initial hearing date on the objection was continued. Next, the case law supports the application of section 522(p) of the Bankruptcy Code, which limits exemptions in states like California that permit debtors only the exemptions allowable under state law. The section therefore applies to Kane's claimed homestead exemption. Finally, the bankruptcy court did not err in capping that exemption at $170,350, as Kane did not show that he acquired an interest in the property at issue before title was transferred to him the day before he filed his Chapter 7 petition.

## BACKGROUND

    Kane is a professional hockey player who, at the time he filed for bankruptcy and the underlying objection was decided, played for the San Jose Sharks. *See* Appellant's Opening Brief [Dkt. No. 6] 5. On January 9, 2021, he filed his Chapter 7 petition in the United States Bankruptcy Court for the Northern District of California, stating that he owned $10,224,743.65 in

property and owed $26,837,340 in liabilities. *See* Appellant's Excerpts of R. ("ER") [Dkt. No. 6-1] 004, 011.[1] Among the exemptions he claimed was a San Jose, California, home valued at $3,000,000, where Kane lived with his family. *See id*. at 020; Appellant's Opening Brief at 7. Kane and his wife purchased the San Jose residence for $3,030,000 in August 2020, through Lions Properties, LLC, a limited liability company ("LLC") that they jointly owned. *See* ER 232-233; Appellant's Opening Brief at 6. When he filed his Chapter 7 petition, Kane claimed a $600,000 exemption pursuant to the automatic homestead exemption under California Code of Civil Procedure section 704.730. *See* ER at 020.

The meeting of creditors required by the Bankruptcy Code concluded on February 23, 2021. Appellant's Opening Brief at 7. Thirty days after the meeting, on March 25, Zions filed an objection to the homestead exemption claim and noticed a hearing on May 4, 2021. ER at 201. Also on March 25, Zions served the objection by mail and electronically to Kane's attorney, the Chapter 7 trustee and his attorney, the United States trustee, and attorneys for another of Kane's creditors. ER at 198-200. Zions, however, "inadvertently" did not mail the objection to Kane that day; it did not do so until April 26, 2021, when it says that it realized the oversight and served Kane by mail and overnight mail. ER at 216. Three days later, on April 29, the bankruptcy court continued the hearing on the objection to June 9, 2021, and gave Kane additional time to respond. *Id*. at 229-230.

In its objection, Zions argued that Kane's homestead exemption either should be entirely disallowed or significantly reduced because the San Jose property was purchased with non-exempt assets and then transferred to Kane and his wife from their LLC via quitclaim deed the day before he filed his Chapter 7 petition. *See* ER at 110-126.[2] According to Zions, by doing this, Kane "actively concealed and converted available assets from his creditors." *Id*. at 124.

In response, Kane argued that the objection was procedurally improper because he was not

---

[1] The page numbers reference the three digits stamped on the upper right of each page in the Appellant's Excerpts of Record.

[2] Although Zions challenged the homestead exemption under sections 522(o) and 522(p) of the Bankruptcy Code, only the bankruptcy court's decision under section 522(p) is at issue in this appeal. *See* ER at 110; Appellant's Opening Brief at 4.

timely served; that section 522(p)'s limitation on homestead exemptions did not apply in California; and that even if it did, any cap only applied to the interest acquired when the San Jose property was purchased, not any appreciation subsequent to Kane's acquisition of that interest. *See* Appellee's Suppl. Excerpts of R. ("Suppl. ER") [Dkt. No. 11-1] 002-011.

On July 9, 2021, Judge Stephen L. Johnson of the United States Bankruptcy Court for the Northern District of California sustained in part and overruled in part Zions's objection. Order at 2:7.[3] He first determined that the objection was timely, reading Bankruptcy Rule 4003(b) as setting a 30-day deadline for filing such an objection, but not explicitly stating a deadline for serving one. *See id*. at 9:3-12. The court also concluded that Kane had sufficient notice of the objection and hearing date, and filed a "timely and comprehensive response." *Id*. at 9:21-10:2. Finally, the court held that overruling the objection on procedural grounds would amount to a "decision by default," and that instead, "[g]etting to the substance of a dispute is preferable." *Id*. at 10:3-4.

Relevant to this appeal, the court also held that section 522(p) of the Bankruptcy Code applied in California and limited Kane's homestead exemption to $170,350. *See id*. at 16:3-6, 17:23-25. The court noted the split in authority regarding whether section 522(p) applied in states like California that have opted out of the federal exemption scheme, and aligned with the majority approach, which holds that it does. *See id*. at 12:16-16:6.

The court then applied section 522(p) to Kane's exemption. *Id*. at 16:6. The court held that under California law, Kane was a separate entity from Lions Properties, the limited liability company that purchased the San Jose property in August 2020, and therefore Kane did not "gain possession or control" of the property until it was quitclaimed to him the day before he filed his Chapter 7 petition. *See* Order at 16:15-17:9. The court also held that Kane did not show "what interest he had in the San Jose Property when it was held by Lions Properties," and thus found that "he had none." *Id*. at 17:19-20. "So," the court wrote, "to the extent the San Jose Property

---

[3] The bankruptcy court's order can be found at pages 234-261 of the Appellant's Excerpts of Record. For ease of reference and readability, I will now cite to the order's native page and line numbers.

1  appreciated in value between the date of purchase and the date Lions Properties transferred it to
2  debtor, he 'acquired' such appreciation in the transfer, making that appreciation subject to §
3  522(p)." *Id*. at 17:7-9. Accordingly, the court held that under section 522(p), Kane's homestead
4  exemption was limited to $170,350. *Id*. at 17:23-25.

## LEGAL STANDARD

A district court has jurisdiction to hear appeals from a bankruptcy court's final judgments, orders, and decrees. 28 U.S.C. § 158(a)(1). The Ninth Circuit has held that an order denying an exemption is a final, appealable order. *Preblich v. Battley*, 181 F.3d 1048, 1056 (9th Cir. 1999); *In re Gilman*, 887 F.3d 956, 961-63 (9th Cir. 2018). The right of a debtor to claim an exemption is a question of law reviewed de novo. *In re Elliott*, 523 B.R. 188, 191 (9th Cir. BAP 2014). The bankruptcy court's factual findings regarding a claimed exemption, including a debtor's intent, are reviewed for clear error. *Id*. (citations omitted). Such findings are clearly erroneous if they are "illogical, implausible, or without support in the record." *Id*. at 192 (citation omitted).

## DISCUSSION

Kane raises three issues on appeal. Appellant's Opening Brief at 4. First, did the bankruptcy court erroneously sustain Zions's objection despite the fact that it was not served on Kane until more than 30 days after the meeting of creditors? *Id*. Next, did the court err in determining that Kane's homestead exemption was limited under section 522(p)? *Id*. Finally, did the court erroneously limit Kane's homestead exemption to $170,350 rather than allow him to exempt the increase in the San Jose property's value after its acquisition, which would have instead resulted in a $415,350 exemption? *Id*. I address each in turn.

### I. SERVICE

Federal Rule of Bankruptcy Procedure 4003(b) outlines the procedural requirements for objecting to claimed exemptions. The purpose of the rule is to "provide the debtor with timely notice that the trustee or other interested party objects to a debtor's claimed exemption." *In re Spenler*, 212 B.R. 625, 630 (9th Cir. BAP 1997); *In re Lee*, 889 F.3d 639, 642 (9th Cir. 2018).

Under Rule 4003(b)(1), a party in interest may file an objection to an exemption "within 30 days after the meeting of creditors . . . is concluded or within 30 days after any amendment to

the list or supplemental schedules is filed, whichever is later." Fed. R. Bankr. P. 4003(b)(1). If an objection is not timely made, and the court does not grant an extension, the property is exempted from the bankruptcy estate. *See* 11 U.S.C. § 522(l); *In re Gebhart*, 621 F.3d 1206, 1209 (9th Cir. 2010) (citing *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644 (1992)).

Rule 4003(b)(4) also requires that a copy of any objection "shall be delivered or mailed to the trustee, the debtor and the debtor's attorney, and the person filing the list and that person's attorney." Fed. R. Bankr. P. 4003(b)(4). Unlike subsection (b)(1), (b)(4) does not expressly articulate a deadline for service. *See id*.

Here, there is no dispute that: (1) Zions timely filed the objection; (2) Zions served the trustee and Kane's attorney notice of the objection 30 days after the meeting of creditors concluded on February 23, 2021; and (3) Zions did not serve Kane such notice until April 26, 2021. *See* Appellant's Opening Brief at 7-8; Appellee's Response Brief [Dkt. No. 11] 11-12. The critical question is whether Rule 4003(b) required Kane to be served with a copy of the objection within 30 days of the meeting of creditors.

Kane argues that the bankruptcy court erred in concluding that because 4003(b)(4) did not expressly state a deadline for service, Zions's objection was timely. Appellant's Opening Brief at 11. According to Kane, "separating the service of the objection from the thirty-day deadline" articulated in subsection (b)(1) "renders the deadline meaningless and is an illogical outcome." *Id*.

In support, Kane cites a string of cases where courts rejected the argument that actual notice is an adequate substitute for filing an objection with the court. *See id*. at 11-12 (citing in part *In re Boyd*, 243 B.R. 756, 760-61 (N.D. Cal. 2000)). Conversely, he argues, Rule 4003(b) "must be read such that the filing of an objection is insufficient to provide timely notice to a debtor without service of that objection to the debtor within thirty days after the meeting of creditors has concluded." *Id*. at 12.

Kane then relies on *In re Bush*, 346 B.R. 523, 524 (Bankr. E.D. Wash. 2006), where the court dismissed a trustee's objection that was filed 30 days after the meeting of creditors but not

5

served on the debtors' attorney until 87 days after the meeting concluded.[4] The court dismissed the objection as untimely, concluding that the 30-day time period articulated in Rule 4003(b) was "strict" and "meant to provide the debtor with timely notice that the trustee objects to the debtor's claimed exemption." *Id*. In so holding, the court rejected the trustee's argument that Rule 4003 did not specify a deadline for service and found that a bright-line deadline for service "provides finality for the parties," was consistent with the rule that preceded 4003(b), and would not "effectively undermine" the 30-day filing deadline. *Id*. at 526-27. Alternatively, the court noted, it could adopt a more flexible rule and interpret Rule 4003(b) as requiring service "within a reasonable period of time." *Id*. at 526. But that, it held, would "inject[] uncertainty into Rule 4003(b)" and "does not comport with Rule 4003(b)'s rigid 30-day time limit" for filing. *Id*. And if the purpose of Rule 4003(b) is to provide the debtor timely notice of an objection, the court wrote, that is "accomplished by serving the objection, not by filing it." *Id*.

Kane contends that in declining to follow *Bush*, the bankruptcy court "creates the same problem *Bush* sought to avoid" and leaves on the table the issue of determining a reasonable time for serving a debtor with an objection. Appellant's Opening Brief at 14. Accordingly, he argues, Zions's objection should have been overruled for its failure to timely serve Kane. *Id*. at 15.

In response, Zions argues that under the plain meaning of Rule 4003(b), although there is a 30-day deadline for filing an objection, there is no such deadline for service. Appellee's Response Brief at 21-22. According to Zions, Kane's argument that notice is not a substitute for filing is not relevant, as it "conflates filing with service." *Id*. at 26. Zions argues that the cases that Kane cites in support are inapplicable for the same reason. *Id*.

Zions further contends that *Bush* is also distinguishable because the court there "specifically declined" to address the precise issue at play here—i.e., whether service of an objection would be proper where the debtor's counsel was served within the 30-day filing deadline but the debtor was not. *Id*. at 23 (citing *Bush*, 346 B.R. at 525).

---

[4] It is worth noting that the trustee never served a copy of the objection on the debtors, and the court expressly did not decide "the consequence of the trustee's failure" to do so. *See* Bush, 346 B.R. at 525.

6

Instead, Zions points to *In re Fisher*, 63 B.R. 649 (Bankr. W.D. Ky. 1986), which it contends is the "only case which directly addresses whether Rule 4003(b) requires service on the debtor and debtor's attorney within the 30-day filing deadline." *Id*. at 23-24. The *Fisher* court analyzed an earlier version of Rule 4003(b), which had substantively similar language to the current rule, stating:

> The trustee or any creditor may file objections to the list of property claimed as exempt within thirty days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless, within such period further time is granted by the court. Copies of the objections shall be delivered or mailed to the trustee and to the person filing the list and his attorney.

63 B.R. at 650. The court rejected the argument that the objection must be mailed to both the debtor and his attorney, holding that service on the debtor's attorney "was obviously sufficient to give the debtor notice of the objections." *Id*. at 651. The court reasoned:

> Reading [Rule 4003(b)'s] language literally and carried to the extreme, one could conclude that "the person filing the list" means someone from the attorney's office who *physically* filed the same. We decline to read the rule so literally as to mandatorily require service on both the debtor and his attorney.

*Id*. (emphasis in original). Zions argues that although *Fisher* is more factually analogous to the instant matter than *Bush*, Zions did serve Kane with notice. Appellee's Response Brief at 24. And in doing so, Zions contends that it "met the letter and purpose of Rule 4003(b)'s filing and service requirements" by filing the objection within 30 days and serving Kane's attorney, giving Kane due notice of the objection and continued hearing date, and giving him the opportunity to file a comprehensive response. *See id*. at 24-27.

I agree with Zions that many of the cases that Kane cites are not applicable because they focus on whether actual notice satisfies the filing deadline. That is not the issue here.

*Bush* and *Fisher* provide helpful framework, but neither case is directly on point. *Fisher* considered an outdated version of Rule 4003(b); the operative version expressly requires notice to both "the debtor and the debtor's attorney." *See* 63 B.R. at 650; Fed. R. Bankr. P. 4003(b)(4). Whether a debtor must also be notified of an objection is not the question before me—instead, it is when a debtor must receive such notice. And there is a key factual distinction between *Bush* and

7

the matter at hand. In *Bush*, the debtors *never* received notice of the objection. 346 B.R. at 524. The court expressly declined to consider the consequence of this misstep. *Id*. at 525. Kane did receive notice, though it was after his attorney did.

In this case, I look to the language of Rule 4003(b) itself, along with the Ninth Circuit's instruction on its purpose: to "provide the debtor with timely notice that the trustee or other interested party objects to a debtor's claimed exemption." *See Spenler*, 212 B.R. at 630.

Subsections (b)(1), (b)(2), and (b)(3) each set forth some sort of deadline for filing an objection. As explained, subsection (b)(1) requires that any objection to claimed exemptions be filed within 30 days after the meeting of creditors concludes or any amendment to the list or supplemental schedules is filed, whichever is later, unless the court extends time. Fed. R. Bankr. P. 4003(b)(1). Under (b)(2), a trustee may file an objection "at any time prior to one year after the closing of the case if the debtor fraudulently asserted the claim of exemption." Fed. R. Bankr. P. 4003(b)(2). It also requires that the trustee deliver or mail any such objection to the debtor, the debtor's attorney, any person filing the list of exempt property, and that person's attorney. *Id*. Subsection (b)(3) requires that any objection based on section 522(q) be filed "before the closing of the case" or before a reopened case is closed. Fed. R. Bankr. P. 4003(b)(3).

Notably, subsection (b)(4) does not include any deadline for delivering or mailing a copy of the objection to the debtor and the debtor's attorney. Fed. R. Bankr. P. 4003(b)(4). Under Rule 4003(b)'s plain language, there are set deadlines for filing (as stated in (b)(1), (b)(2), (b)(3)), but not for providing notice. Subsection (b)(4) also covers "*any* objection"—not just those filed pursuant to (b)(1). *See id.* (emphasis added). If I were to adopt the strict interpretation used by the court in *Bush* and read the 30-day deadline into subsection (b)(4), what impact would that have on subsections (b)(2) and (b)(3)? Those subsections articulate different filing deadlines than (b)(1). Imposing a 30-day requirement under (b)(4)—which covers the service of *any* objection, not just those filed under (b)(1)—would yield an illogical result, which Kane argues that I should avoid.

Moreover, it would be inconsistent for me to strictly interpret subsection (b)(4) as requiring service on both the debtor and the debtor's attorney (rejecting the court's decision in *Fisher*) while simultaneously reading in language that is not present (adopting Kane's 30-day

8

deadline). Like the bankruptcy court, I do not see a reason to insert a deadline into Rule 4003(b)(4) when such language is absent from the rule itself. *See* Order at 9:8-12.

Moreover, if the purpose of Rule 4003(b) is to provide the debtor with timely notice of any objection to his claimed exemption, that was satisfied here. *See In re Lee*, 889 F.3d 639, 646 (9th Cir. 2018) (declining to "adopt a hypertechnical interpretation of Rule 4003 where its purpose to 'provide the debtor with timely notice' has been clearly satisfied"). Zions timely filed the objection 30 days after the meeting of the creditors concluded. ER at 105. Kane's counsel was notified. *Id*. at 198-200. When it became apparent that Kane had not been notified, Zions served Kane by mail and moved to continue the hearing, a request that the court granted. *Id*. at 216, 229-30. Kane then filed a comprehensive, 10-page opposition to the objection. Suppl. ER at 002-011. Kane might not have received notice at the same time his attorney did, but he did receive notice of the objection. That notice was also timely, considering the extension of the hearing date and briefing schedule, which gave Kane ample opportunity to substantively respond to the objection and be heard.

Finally, although I consider this question of law de novo, I agree with the bankruptcy court (and Ninth Circuit) that "[c]ases should be decided upon their merits whenever reasonably possible." Order at 10:6-7 (citing in part *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). Overruling Zions's objection on purely procedural grounds belies this.

For these reasons, I find that Zions timely delivered notice of its objection to Kane, as required by Rule 4003(b)(4). The bankruptcy court did not err in declining to overrule Zions's objection on these grounds.

**II.     SECTION 522(P)**

The next question is whether the bankruptcy court erred in determining that Kane's homestead exemption was limited to $170,350 under section 522(p) of the Bankruptcy Code. The answer implicates other provisions of section 522 but essentially boils down to this: Does the statutory cap provided for in section 522(p) apply in an "opt-out" state like California?

Under section 522, a debtor can "exempt certain property from the bankruptcy proceedings and protect that property from creditors." *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (citing

11 U.S.C. § 522(b)). The same section outlines the types of property a debtor can claim as exempt. *See* 11 U.S.C. § 522(b), (d). It also includes an "opt-out provision whereby the state can either require the debtor to exempt property under the state law exemptions or grant the debtor the option of choosing between state exemptions and the section 522(d) exemptions." *Greene*, 583 F.3d at 618 (citing 11 U.S.C. § 522(b)(2)). California is one of these opt-out states; it "permits its debtors only the exemptions allowable under state law." *In re Bhangoo*, 634 B.R. 80, 85 (9th Cir. BAP 2021) (citing Cal. Civ. Proc. Code § 703.130).

Section 552(p)(1) "limits a debtor's ability to take advantage of the state homestead exemptions." *Greene*, 583 F.3d at 618. Under this section,

> as a result of electing under subsection (b)(3)(A) to exempt property under state or local law, a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000[5] in value in real or personal property that the debtor or a dependent of the debtor uses as a residence.

11 U.S.C. § 522(p)(1)(A). As other courts have well-explained, section 522(p) was designed to "address the well-documented and often-expressed concern by members of Congress about the so-called 'mansion loophole' by which wealthy individuals could shield millions of dollars from creditors by filing bankruptcy after converting nonexempt assets into expensive and exempt homesteads" in states that did not limit homestead exemptions. *In re Kane*, 336 B.R. 477, 481-82 (Bankr. D. Nev. 2006).

But one particular phrase has become bothersome for courts applying section 522(p): "as a result of electing under subsection (b)(3)(A) to exempt property under state or local law." Some, relying on a strict interpretation of the provision, have held that section 522(p) does not apply in states which have opted out of federal exemptions because debtors in these states do not get to "elect" state exemptions. *See, e.g., In re McNabb*, 326 B.R. 785, 787-91 (Bankr. D. Ariz. 2005). Others, looking to legislative intent, have held that it does apply in these states as a debtor must still "elect" to exempt property and decide under which subsection. *See, e.g., Kane*, 336 B.R. at

---

[5] This value "is regularly adjusted to reflect changing economics" and is currently set at $170,350. Order at 16 n.10.

481-82; *In re Virissimo*, 332 B.R. 201, 207 (Bankr. D. Nev. 2005).  The two diverging views are at issue here.

Kane argues that the bankruptcy court erred in adopting the view articulated in *Virissimo* and finding that section 522(p) applies in California.  Appellant's Opening Brief at 19.  He contends that the plain language of section 522(p) "clearly provides that the statutory cap comes into effect only 'as a result of [a debtor's] *electing* . . . to exempt property under state or local law" and that a debtor in California cannot elect to exempt property under state law, "as California's exemptions are the only exemptions made available to the debtor."  *Id*. at 17.  According to Kane, *McNabb* is the correct approach.  *Id*. at 17-18.  He further points to differences in statutory language, namely in section 522(o), which makes no reference to an election, and 522(q)(1), which does, as evidence that had Congress intended for the 522(p)(1) statutory cap to apply to all state exemptions, Congress "presumably would have done so expressly."  *Id*. at 18-19.

*McNabb* is the backbone to Kane's arguments.  There, the court considered whether 522(p) applied in another opt-out state, Arizona.  *McNabb*, 326 B.R. at 788.  The court held that because the statutory cap "becomes applicable only 'as a result of electing,' then it can apply only in non-opt out states, i.e., those states where such an election is available."  *Id*.  The court further determined that legislative history was "virtually useless as an aid to understanding the language and intent," and provided "no clue to the intended significances of the 'as a result of electing' language."  *Id*. at 789.  Regardless, the court held, it was not necessary to "speculate on Congress's purposes when the language is clear and unambiguous."  *Id*.  The court determined that its conclusion was also supported by other provisions, including sections 522(o) and (q), indicating that Congress would have used different language had it intended for the statutory cap in section 522(p) to apply to all states.  *See id*. at 790-91.

Zions notes that *McNabb*'s interpretation "has been rejected by numerous courts and commentators alike who have pointed to other, more plausible, interpretations of the 'electing' phrase in section 522(p)."  Appellee's Response Brief at 28 (citing in part *In re Kaplan*, 331 B.R. 483, 486 (Bankr. S.D. Fla. 2005); *In re Landahl*, 338 B.R. 920, 923 (Bankr. M.D. Fla. 2006)). Zions argues that under the plain meaning rule, a court may consult the legislative history in

11

1 resolving "two plausible, yet mutually exclusive and conflicting, alternative meanings" of the
2 phrase—and that the history behind section 522(p) shows that Congress intended for the statutory
3 cap to close the so-called "mansion loophole" that allowed debtors to shield certain homesteads.
4 *See id*. at 29. Limiting section 522(p) only to non-opt-out states would defeat this purpose, Zions
5 contends, as the statutory cap "would be effectively nullified in all but two states." *Id*. at 29-30.

6 Zions has the better argument. After *McNabb*, many courts have considered section
7 522(p)'s application in opt-out states such as California. Most rejected *McNabb*'s reasoning,
8 holding that the statutory limit applied in these states either because debtors made an "election"
9 under section 522(p)'s plain language or because ambiguity in the language provided reason to
10 consider legislative intent, which reflected such a reading. *See, e.g., Virissimo*, 332 B.R. at 205-
11 08; *Kane*, 336 B.R. at 481; *Kaplan*, 331 B.R. at 484; *Landahl*, 338 B.R. at 922-23; *In re Summers*,
12 344 B.R. 108, 111 (Bankr. D. Ariz. 2006); *In re Rasmussen*, 349 B.R. 747, 752 (Bankr. M.D. Fla.
13 2006); *In re Buonopane*, 344 B.R. 675, 676-77 (Bankr. M.D. Fla. 2006). Though not binding,
14 these decisions are compelling, particularly those from within the Ninth Circuit.

15 In *Virissimo*, the question was whether section 522(p) applied in Nevada, yet another opt-
16 out state. 332 B.R. at 203. Focusing on "the mechanics of the statute and the language used in
17 setting forth the debtor's rights," the court held that the debtor technically made an election. *Id*. at
18 205. As the court stated:

19 The steps are as follows. Under 11 U.S.C. § 541 all property is property of the
20 estate. If the debtor wishes to exempt property he must engage in an act to do so.
11 U.S.C. § 522(l). Pursuant to § 522(b)(1), he may elect to choose property listed
21 in 11 U.S.C. § 522(b)(2) or (b)(3).

22 It is the *effect* of the election that is limited. Paragraph (b)(2) provides that the
property exempted is that specified under subsection (d) of 552 unless the state law
23 that is applicable specifically does not so authorize. Paragraph (b)(3) provides that
24 the property exempted is that property exempt under federal law (other than
subsection (d)) or state or local law applicable on the date of filing.

25 *Id*. The court concluded that, given this language, "[w]hether or not a state allows the property
26 which is set forth in 11 U.S.C. § 522(d) to be exempted, the debtor elects which exemptions to
27 claim." *Id*. at 206.
28

12

Alternatively, the *Virissimo* court determined that section 522(p) was ambiguous under either its own plain reading or that set forth in *McNabb*, because under either reading there was no election regarding the exemptions articulated subsection 522(d). *Id*. at 206. The court held that it was therefore necessary to "resort to legislative history," which it determined showed that Congress "intended to eliminate some of the anomalies created by the use of state homestead exemptions and create a more uniform, predictable set of exemptions." *Id*. at 206-07. Moreover, the court held, "Congress wanted to close what it perceived was the abuse of exemptions caused, in part, by the varying state laws and overly generous homesteads." *Id*. at 207.

The *Kane* court agreed with the conclusion in *Virissimo*—that section 522(p) applied in opt-out states—but proffered a different rationale. *See* 336 B.R. at 481. There, the court concluded that the "result of electing" phrase amounted to a scrivener's error. *See id*. at 485-89. It determined, based on what it described as an extensive legislative history, that it was "obvious that Congress intended to close the mansion loophole in opt-in states as well as opt-out states." *Id*. at 488. "Indeed," the court concluded, "strictly applying the words of section 522(p) would actually prevent Congress's goal from being achieved." *Id*. at 489.

I agree with the conclusions reached in *Virissimo*, *Kane*, and numerous other cases: the statutory cap set forth in section 522(p) applies to opt-out states such as California. At the least, there is ambiguity in the phrase "as a result of electing under subsection (b)(3)(A) to exempt property under state or local law." *See* 11 U.S.C. § 522(p)(1)(A). When there is ambiguity in a statute, courts look to legislative history or intent for guidance. And, as the above-cited courts have made clear, that legislative history indicates that Congress intended for section 522(p) to close loopholes allowing debtors to "shield their multi-million dollar homesteads" from reach. *See, e.g., Kane*, 336 B.R.at 483. Allowing debtors in opt-out states to continue to do, as would be permitted under *McNabb*, directly counters this goal.

It appears that the Ninth Circuit has also endorsed this approach. In *In re Caldwell*, 545 B.R. 605, 609 (9th Cir. BAP 2016), the Bankruptcy Appellate Panel wrote that "[s]ection 522(p)(1) imposes a limitation on the homestead exemption a debtor can claim regardless of the applicable state law exemptions." Although the court did not further elaborate, it did favorably

13

cite *Kane* and *Virissimo*. *See Caldwell*, 545 B.R. at 609.

For all of these reasons, I find that the bankruptcy court did not err in finding that, under *Virissimo* and its progeny, section 522(p) applies in California.

### III.     INCREASE IN PROPERTY VALUE

Finally, Kane argues that the bankruptcy court erred in limiting Kane's homestead exemption to $170,350 and that $245,000 that accrued after the San Jose residence was purchased in August 2020 should not be covered by the statutory cap. Appellant's Opening Brief at 21. This boils down to two primary questions: What interest did Kane acquire in the property and when?

Under section 552(p)(1)(A)

> a debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $125,000[6] in value in . . . real or personal property that the debtor or a dependent of the debtor claims as a homestead.

11 U.S.C. § 522(p)(1)(D). The Ninth Circuit has held that "it appears that Congress intended 'acquire' to mean 'gaining possession or control' by purchasing or gaining an ownership interest, either legal or equitable." *Greene*, 583 F.3d at 623; *see also In re Fontaine*, 2010 WL 6259993, at *10 (9th Cir. BAP 2010) ("A legal or equitable interest in the property must exist for a homestead exemption to attach to that property.").

The Ninth Circuit has held that courts must first look to state law to determine what interest a debtor acquired when he recorded a homestead declaration, then to section 522(p)(1) to determine whether that "qualifies as an 'any amount of interest that was acquired.'" *See Greene*, 583 F.3d at 620. California law provides for an "automatic" homestead exemption, which protects a debtor "who resides (or who is related to one who resides) in the homestead property at the time of a forced judicial sale of the dwelling." *Gilman*, 887 F.3d at 964 (citations omitted). "The filing of a bankruptcy petition constitutes such a 'forced sale' to trigger the application of the automatic homestead exemption." *Elliot*, 523 B.R. at 195 (citation omitted).

Under California law, a homestead is a dwelling where a person resides. *Id.* at 195-96

---

[6] As stated earlier, this value "is regularly adjusted to reflect changing economics" and is currently set at $170,350. Order at 16 n.10.

(citing in part Cal. Civ. Proc. Code § 704.710(c)).  Section 704.710(c) of the California Civil Procedure Code offers the following definition:

> "Homestead" means the principal dwelling (1) in which the judgment debtor or the judgment debtor's spouse resided on the date the judgment creditor's lien attached to the dwelling, and (2) in which the judgment debtor or the judgment debtor's spouse resided continuously thereafter until the date of the court determination that the dwelling is a homestead.

Accordingly, "California law rejects [the] argument that title to the property is necessary to claim a homestead exemption." *Gilman*, 887 F.3d at 965; *see also Elliot*, 523 B.R. at 196 ("Thus, based on the plain language of the statute, the automatic homestead exemption does not require that the judgment debtor continuously *own* the property.") (citation omitted).  "The factors a court should consider in determining whether the debtor has sufficient residency to establish an exemptible interest in the property and, thus, to qualify for the automatic homestead, are physical occupancy of the property and the intention with which the property is occupied." *Elliot*, 523 B.R. at 196 (citations omitted); *see also Gilman*, 887 F.3d at 965 ("To determine whether a debtor resides in a property for homestead purposes, courts consider the debtor's physical occupancy of the property and the intent to reside there.").  The debtor bears the burden of proving his entitlement to an automatic homestead exemption.  *In re Nolan*, 618 B.R. 860, 865 (Bankr. C.D. Cal. 2020).

The bankruptcy court leaned heavily on *In re Schaefers*, 623 B.R. 777, 782 (9th Cir. BAP 2020), which held that although Californians may claim a homestead exemption "without holding a fee simple interest in the subject real property," they still "must have *some* legal or equitable interest in the real property."  Order at 16:15-21.  The bankruptcy court also cited *Schaefers* for the proposition that "a limited liability company is a separate and distinct legal entity from its owners or members" and therefore "limited liability company members have no interest in the company's assets." *Id*. at 16:19-23 (citing *Schaefers*, 623 B.R. at 783).  In this vein, the bankruptcy court determined that Kane had not shown what interest he had in the San Jose property when it was held by Lions Properties, the LLC, and that because Kane and the LLC were separate entities, he did not "gain possession or control" of the property until it was quitclaimed to

15

1  him the day before he filed his Chapter 7 petition.  *Id*. at 17:3-25.  Accordingly, the court held,

2  Kane "acquired any pre-petition appreciation on that date," rendering it subject to the section

3  522(p) limit: $170,350.  *Id*. at 17:20-25.

4      *Schaefers* has since been vacated and therefore has "no precedential value authority

5  whatsoever."  *See In re Schaefers* (*"Schaefers II"*), 2022 WL 3973920, at *1 (9th Cir. Aug. 31,

6  2022) (vacating decision); *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1424 n.2 (9th Cir. 1991) ("A

7  decision may be *reversed* on other grounds, but a decision that has been *vacated* has no

8  precedential authority whatsoever.") (emphasis in original).  This means that *Schaefer* cannot be

9  relied upon for the propositions mentioned above.

10     Zions's argument is similarly unhelpful.  It asserts that in the Ninth Circuit, a debtor is

11 deemed to have acquired an interest in property (triggering the statutory cap) "the moment that the

12 debtor acquires title to and ownership of the property, even if the debtor could have claimed a

13 homestead exemption in such property at some other point in time."  Appellee's Response Brief at

14 32.  The only case that Zions cites in asserting this is *Greene*, which flatly contradicts the holding

15 in more recent Ninth Circuit cases, including *Gilman* and *Elliot*, which confirm that title to a

16 property is not required to claim a homestead exemption under California law.  *See Elliot*, 523

17 B.R. at 196; *see also Gilman*, 887 F.3d at 965 ("California law rejects Phillips' argument that title

18 to the property is necessary to claim a homestead exemption.").

19     Zions further argues (relying on *Schaefers*) that Kane's LLC is a separate legal entity and

20 that he and his wife did not own the LLC's assets by way of their membership interests.

21 Appellee's Response Brief at 34-35.  Taken together, Zions contends, "Kane has not demonstrated

22 that he, himself, acquired any form of title or ownership—equitable, beneficial, or otherwise—in

23 the San Jose Property at any point in time earlier than the day before he filed bankruptcy," when

24 Lions Properties transferred title to Kane and his wife.  *Id*. at 34-35.

25     Kane contends that the bankruptcy court improperly focused on the transfer of title

26 between the LLC and Kane, and that he "acquired a beneficial or equitable interest in the San Jose

27 residence when he and his wife used their LLC to purchase the property to be their home" in

28 August 2020.  Appellant's Opening Brief at 29-30.  He further argues that there is "no dispute that

Kane and his family resided continuously at the San Jose residence and intended to make it their home." *Id*. at 29. Accordingly, he contends, the acquisition at issue occurred when the LLC purchased the San Jose property, and Kane is entitled to an exemption of $415,350. *Id*. at 25.

I agree that some of the bankruptcy court's decision on this issue appears to focus on the title to the San Jose property, which is not necessary to claim a homestead exemption in California. *See* Order at 17:3-9. But Kane overlooks other portions of the opinion, particularly the bankruptcy court's findings that: (1) Kane and Lions Properties, the LLC, were separate entities; and (2) Kane "fail[ed] to show what interest he had in the San Jose property when it was held by Lions Properties." *See id*. at 17:3-20. This issues remain dispositive.

Setting aside the now-vacated decision in *Schaefers*, California law makes clear that a limited liability company's interests are separate from those of its members. *See Swart Enters., Inc. v. Franchise Tax Bd.*, 7 Cal. App. 5th 497, 510 (2017) ("Members in an LLC have limited liability for the company's debts and obligations, and members hold no direct ownership interest in the company's specific property.") (citations omitted); *Lombardi v. Pleasure Cove Resort Asset Mgmt. Grp.*, No. C-05-05219-RS , 2006 WL 1709723, at *2 (N.D. Cal. June 21, 2006) ("Under California law that governs the LLC, [complainant's] status as [a] member of the LLC does not give him any legal interest in the property of the LLC."). Therefore, in order to show an interest in the San Jose property prior to the transfer of title, Kane must show his own interest in the property, not that of the LLC's.

He failed to do so, as noted by the bankruptcy court. *See* Order at 17:19-20 ("Debtor fails to show what interest he had in the San Jose property when it was held by Lions Properties, so I find he has none."). Kane argues that there is no dispute that he "acquired a beneficial or equitable interest in the San Jose residence when he and his wife used their LLC to purchase the property to be their home." Appellant's Opening Brief at 29. He also contends that there is no dispute that he and his family "resided continuously at the San Jose residence and intended to make it their home." *Id*. But Zions *does* dispute whether Kane acquired an interest in the property when it was purchased in August 2020, arguing instead that it was the LLC that did. *See* Appellee's Response Brief at 33. Zions has disputed this assertion since the matter was before the bankruptcy court.

*See* Suppl. ER at 025 ("What is undisputed is that Kane's Florida limited liability company acquired the residence in August 2020 (not Kane)").

Moreover, Kane's other assertions are unsupported. He bears the burden of proving his entitlement to an automatic homestead exemption, and failed to do so both before the bankruptcy court and on this appeal. *See Nolan*, 618 B.R. at 865. Kane summarily argues that he acquired a beneficial or equitable interest, but does not explain how. *See* Appellant's Opening Brief at 29-30. He does not cite any evidence showing his intent to make the San Jose residence his home or that he and his family continuously lived there. *See id*. He references one case where the court held a debtor had an ownership interest by possessing, using, and paying the mortgage on the property, and another where the court held that the debtor's beneficial interest in the property through a trust, coupled with his residency, fell within the scope of the automatic homestead exemption. *See id*. at 23-25 (citing *Caldwell*, 545 B.R. at 612; *Nolan*, 618 B.R. at 869). But Kane does not expressly apply these findings to the facts of his own case. The most he references are two pages of his Chapter 7 petition, which only show that he claimed the residence as an exemption. *See id*. at 1 (citing ER at 020, 086). His opposition to Zions's objection in the underlying matter is similarly conclusory, asserting without support that "Kane and his wife acquired the residence in August 2020." *See* Suppl. ER at 008.

It is not until his reply brief in this appeal that Kane provides more detail, arguing that he had a "beneficial and equitable interest in the property since August 2020 through his complete ownership of Lions with his wife" and that he "retained all indicia of ownership by his possession and exclusive use of the property along with payment of all the expenses related to the property." Appellant's Reply Brief [Dkt. No. 14] 10. In support, he cites to his Chapter 7 petition, which states that he made mortgage payments, along with a transcript of his meeting with creditors, where he stated that he paid the mortgage on the property. *See id*. (citing ER at 024, 045-046, 051, 138).

But this only shows that Kane paid the mortgage on the San Jose property—not that he possessed or exclusively used it, continuously resided there, or intended to reside there. And a review of the record does not yield other evidence that could be construed as establishing these

facts. For example, Kane submitted a declaration in support of his opposition to Zions's objection, where he stated that he moved to California in February 2018 when he was traded to the Sharks and lived in rental housing until August 2020. *See* ER at 232. Kane states that he "did not move to California to avoid creditors or because of its exemption laws." *Id*. But this does not establish his intent to reside in the San Jose property. The remainder of the declaration details when the property was purchased (in August 2020) and how (using funds from Kane's salary and from a loan secured against property he owned in Canada), and clarifies that Kane and his wife "initially held title . . . in the name of Lions Properties LLC." *Id.* at 233. It is silent as to any intent regarding the property itself. *Id*. Similarly, Kane's opposition to the underlying objection states (without support) that he and his wife "wished to buy a home." Suppl. ER at 009. But that alone does not establish that Kane intended to reside in the San Jose property (or continuously resided there); indeed, at the time he filed his Chapter 7 petition, he owned two homes in Vancouver, Canada. *See* ER at 014. Kane told his creditors that he lived at the San Jose property prior to the LLC's purchase in August 2020, but did not further elaborate nor otherwise argue that this shows his intent to reside there or that he continuously did so. *See* ER at 181.

Moreover, the record shows other facts and allegations that could suggest an alternative intent regarding the San Jose property. According to his agreement with the Chapter 7 trustee, Kane formed Lions Properties "pre-petition for the sole purpose of taking title to the San Jose property." *Id*. at 090. The property was the only asset of the LLC, whose sole members were Kane and his wife. *Id*. And according to Zions, by the time Lions Properties purchased the San Jose property in August 2020, Kane had already begun restructuring his debts and had been sued for fraud and breach of contract in at least three cases. *See* ER 120-121. All this is to say that there are a variety of suppositions one could have regarding Kane's intent, and he does not answer that question in a dispositive manner.

Taking all of this into account, this case is distinguishable from *Caldwell*, where the record showed that the debtor "retained all the indicia of ownership by his possession and use of the property along with the payment of the mortgage, taxes, and insurance." *See* 545 B.R. at 612. The record here shows the latter, but nothing more.

19

Although Kane's interest in the San Jose property does not depend on whether he held title to it, he has not shown what interest he had in the property when his LLC held title. Kane failed to meet his burden, and I see no clear error in the court's factual findings regarding the claimed exemption. Although not detailed in the order, those findings are implicit in the court's holding that Kane "fails to show what interest he had in the San Jose property when it was held by Lions Properties," as that interest can be shown through facts including his intent and continued residency. *See* Order at 17:19-20; *see also Elliott*, 523 B.R. at 191 ("The bankruptcy court's findings of fact with respect to a claimed exemption, including a debtor's intent, are reviewed for clear error.").

Without such a showing, I conclude that Kane acquired an interest in the San Jose property when Lions Properties transferred the title to him the day before he filed his Chapter 7 petition. This means that Kane acquired any pre-petition appreciation on that date, requiring that his homestead exemption be limited to $170,350 under section 522(p).

## CONCLUSION

The bankruptcy court's order is AFFIRMED.

**IT IS SO ORDERED.**

Dated: September 29, 2022

William H. Orrick
United States District Judge